**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAROYA ROBERSON, CHRISTA HAMMOND, TONIKA SMITH, DAPHNE WILLIAMS, IDELLA HILL, OLABISI BODUNDE, VICTORIA BREWER, ALYSSA BENDERSKY, FELECIA WILLIAMS, ATTLA DUPREE, and JAMEEA BOYKIN, individually, and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>MAESTRO CONSULTING SERVICES LLC, INDIVIDUALLY AND D/B/A SYMPHONY POST ACUTE NETWORK; SYMPHONY SYCAMORE LLC; SYMPHONY HEALTHCARE LLC; SYMPHONY M.L. LLC; SYMPHONY MONARCH HOLDINGS, LLC; SYMPHONY HMG, LLC, SYMPHONY CRESTWOOD, LLC, SYMPHONY DEERBROOK, LLC, SYMPHONY COUNTRYSIDE, LLC, SYMPHONY BEVERLY, LLC, SYMPHONY BRONZEVILLE PARK, LLC, SYMCARE HMG, LLC, SYMPHONY JACKSON SQUARE, LLC, SYMPHONY OF EVANSTON HEALTHCARE, LLC, SYMPHONY LINCOLN PARK, LLC, SYMPHONY MIDWAY, LLC, SYMPHONY PARK SOUTH, LLC, SYMPHONY SOUTH SHORE, LLC, MONROE CORP., CALIFORNIA GARDENS CORP.; SYMPHONY OF CALIFORNIA GARDENS, LLC; and DOE DEFENDANTS 1-100,<br><br>      Defendants. | Case No. _____<br><br><br>REMOVED FROM THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT, ST. CLAIR COUNTY, ILLINOIS, LAW DIVISION, CASE NO. 2017-L-00733 |

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1453, and 1446, Defendants

Maestro Consulting Services LLC, Symphony Sycamore LLC, Symphony Healthcare LLC,

Symphony M.L. LLC, Symphony HMG, LLC, Symphony Crestwood, LLC, Symphony

-2-

Deerbrook, LLC, Symphony Countryside, LLC, Symphony Beverly, LLC, Symphony Bronzeville Park, LLC, Symcare HMG, LLC, Symphony Jackson Square, LLC, Symphony of Evanston Healthcare, LLC, Symphony Lincoln Park, LLC, Symphony Midway, LLC, Symphony Park South, LLC, Symphony South Shore, LLC, Monroe Corporation, California Gardens Corporation, and Symphony of California Gardens, LLC (collectively, the "Defendants") hereby remove the civil action pending in the Circuit Court for the Twentieth Circuit, St. Clair County, Illinois, Law Division, Case No. 2017-L-00733, to the United States District Court for the Southern District of Illinois.  In support of removal, Defendants state as follows:

1. On July 2, 2020, the original plaintiff to this case—Plaintiff Saroya Roberson—received leave to file an amended complaint adding ten new plaintiffs—Christa Hammond, Tonika Smith, Daphne Williams, Idella Hill, Olabisi Bodunde, Victoria Brewer, Alyssa Bendersky, Felecia Williams, Attla Dupree, and Jameea Boykin—and seventeen new Defendants—Maestro Consulting Services LLC, Symphony HMG, LLC, Symphony Crestwood, LLC, Symphony Deerbrook, LLC, Symphony Countryside, LLC, Symphony Beverly, LLC, Symphony Bronzeville Park, LLC, Symcare HMG, LLC, Symphony Jackson Square, LLC, Symphony of Evanston Healthcare, LLC, Symphony Lincoln Park, LLC, Symphony Midway, LLC, Symphony Park South, LLC, Symphony South Shore, LLC, Monroe Corporation, California Gardens Corporation, and Symphony of California Gardens, LLC (together, the "New Defendants")—to the four Defendants she originally named—Symphony Sycamore LLC, Symphony Healthcare, LLC, Symphony Healthcare LLC, and Symphony M.L. LLC (hereinafter the "Original Defendants"). (*See* Am. Compl., attached hereto as Exhibit A.)  The Amended Complaint now identifies *169* separate counts amid its *309* pages, and seeks relief under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.*, for damages of

$1,000 to $5,000 per violation, as well as injunctive and declaratory relief. (*See, e.g.,* Ex. A at ¶¶132, 140, 147, 154, 169, 176, 183). The Amended Complaint was purportedly served on the New Defendants on August 3, 2020. (*See* Affidavits of Service, attached collectively as Exhibit B.).

      2.      The Amended Complaint gives rise to subject matter jurisdiction on two separate bases. First, the Amended Complaint now presents a federal-question under 28 U.S.C. § 1331 because several of the new plaintiffs—but not the original plaintiff, Roberson, who is a former Symphony Sycamore employee—were union members during their tenures with their respective employers,[1] such that any issue regarding "how workers clock in and out" is preempted under the Labor Management Relations Act (the "LMRA"). *See Miller v. Sw. Airlines Co.*, 926 F.3d 898, 903 (7th Cir. 2019) ("if a dispute necessarily entails the interpretation or administration of a collective bargaining agreement, there's no room for individual employees to sue under state law") (RLA context; but acknowledging application of this principle in the LMRA context); 29 U.S.C. § 185(a); *see also Gray v. Univ. of Chicago Med. Ctr., Inc.*, No. 19-CV-04229, 2020 WL 1445608, at **3-5 (N.D. Ill. Mar. 25, 2020) ("The rule and reasoning of *Miller* apply to the LMRA because the RLA preemption standard is 'virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA.'" (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994))); *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19 C 2942, 2020 WL 919202, at *3 (N.D. Ill. Feb. 26, 2020) (same); *see generally Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408–09 (1988). In turn, this means that Defendants are [1] "entitled to remove the suit to federal court under the federal-question jurisdiction," regardless of whether plaintiffs "attempted to frame a complaint relying entirely on state law," *Miller*, 926 F.3d at 904-

---

[1] Of the new Plaintiffs, Attla Dupree, Jameea Boykin, Felecia Williams, Tonika Smith, Daphne Williams, Alyssa Bendersky, Idella Hill, Christa Hammond, and Victoria Brewer were union members during their tenure. These Plaintiffs will be referred to herein as the "Union Plaintiffs."

05, and [2] that all other aspects of the claims at issue fall within the Court's supplemental jurisdiction, *see* 28 U.S.C. § 1367.

3. Second, this Court has subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"). In short, while the class is purportedly limited to "Illinois citizens," that definition has to be tied to a particular moment in time—because the constituency of a class must be definite so that the class (and defendants) know whose claims are being adjudicated, *see* 1 NEWBERG ON CLASS ACTIONS § 3:5 (5th ed.) ("fundamental due process tenets of class action" require certainty as to "who should receive notice, who will be bound by the judgment, and who should receive any relief obtained from the defendant"); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657, 659-60 (7th Cir. 2015) (same; further noting "a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind"); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513, 515 (7th Cir. 2006) (similar)—which, for reasons stated more fully below, must either be when a putative class member allegedly had her biometric information captured or no later than when the original complaint was filed. *Cf. Brecher v. Republic of Argentina*, 806 F.3d 22, 25 (2d Cir. 2015) (noting that a class defined as "those wearing blue shirts," while "objective" would not be certifiable because it "could hardly be called sufficiently definite and readily identifiable; it has no limitation on time or context, and the ever-changing composition of the membership would make determining the identity of those wearing blue shirts impossible"). Plus, given that the original complaint was not removable, the citizenship of putative class members is determined as of the date of removal, *see* 28 U.S.C. § 1332(d)(7), which in turn means that the citizenship inquiry involves some persons who were included in the original class definition, but yet are no longer Illinois citizens. *See also In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380–81 (7th Cir. 2010) (the "well-

established general rule is that jurisdiction is determined at the time of removal"). And because, on information and belief, at least one class member is diverse to the Defendants, *see* 28 U.S.C. § 1332(d)(2)(A)—and because the amount-in-controversy is satisfied, *see* 28 U.S.C. § 1332(d)(2)—this Court also has jurisdiction under CAFA.

**I.     Because Certain Plaintiffs' Claims Are Preempted By The LMRA, This Court Has Federal-Question Jurisdiction (28 U.S.C. § 1331).**

4.     This Court has original jurisdiction under 28 U.S.C. § 1331, and the case may be removed in accordance with 28 U.S.C. § 1441 because the Union Plaintiffs' sought-after relief is preempted by Section 301 of the LMRA (29 U.S.C. § 185).

5.     Although the typical rule is that a court must examine the plaintiff's well-pleaded complaint to see if it raises an issue of federal law, *see Rice v. Panchal,* 65 F.3d 637, 639 (7th Cir. 1995), the "complete preemption" doctrine is an exception to this rule, *see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987), that exists because, when Congress completely preempts a particular area of law, any complaint raising claims in that area will be considered federal in character. *Id.* ("One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by § 301 of the LMRA for such special treatment."); *Douglas v. American Info. Technologies Corp.,* 877 F.2d 565, 569 (7th Cir. 1989) (same).

6.     Such is the case here. In particular, "Section 301 of the LMRA, [] provides that suits for violation of contracts between an employer and a labor organization confer original jurisdiction in federal district courts, has complete preemption force." *Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495, 498 (7th Cir. 1996); 29 U.S.C. § 185(a) (federal jurisdiction over "suits for violation of contracts between an employer and a labor organization"). Thus,

"[e]ven if a plaintiff makes no mention of [Section] 301 in a complaint, [Section] 301 nevertheless may displace entirely a state cause of action, allowing removal by the defendant under the complete preemption exception to the well-pleaded complaint rule." *Atchley*, 101 F.3d at 498.  Accordingly, if the resolution of a state-law claim is dependent on an interpretation of a collective bargaining agreement, the state-law claim will be preempted by Section 301 of the LMRA.  *See Baker v. Kingsley*, 387 F.3d 649, 657 (7th Cir. 2004); *see also Consolidated Rail Corp. v. Railway Labor Execs.' Ass'n*, 491 U.S. 299, 311 (1989) (implied terms based on the parties' practice, usage, and custom may also be considered part of the collective bargaining agreement).

7. This case is indistinguishable from recent Seventh Circuit authority, which holds that BIPA claims, just like the Union Plaintiffs' claims here, are removable on the basis of federal-question jurisdiction.  *See Miller*, 926 F.3d at 903-05; 29 U.S.C. § 185(a).  As the Seventh Circuit puts it, "there can be no doubt that how workers clock in and out is a proper subject of negotiation between unions and employers," such that the question of whether these unions "consent[ed] to the collection and use of biometric data, or perhaps grant authority through a management-rights clause" and whether the employer "may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management."  *Id*. (same regarding "the retention and destruction schedules for biometric data").  In other words, states simply "cannot bypass the mechanisms" of union bargaining to authorize direct negotiation or litigation between workers and management:

> It is not possible even in principle to litigate a dispute about how an air carrier acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf.  That's why this dispute must go to an adjustment board . . . if a dispute necessarily entails the interpretation or administration of a collective bargaining agreement, there's no room for individual employees to sue under state law—in other words, state law is

preempted to the extent that a state has tried to overrule the union's choices on behalf of the workers.

*Id.* at 904. In accordance with *Miller*, the BIPA claims asserted by the Union Plaintiffs here implicate a subject of bargaining and require interpretation of a collective bargaining agreement, and under the terms of each respective collective bargaining agreement, the dispute was also required to be resolved either through a grievance procedure or arbitration.

8. To be sure, the Union Plaintiffs' claims under BIPA are preempted because they require interpretation of the express and implied terms of a collective bargaining agreement. *See Miller*, 926 F.3d at 903; 29 U.S.C.A. § 185(a); *Lingle*, 486 U.S. at 408–09; *Gray*, 2020 WL 1445608 at *3; *Peatry*, 2020 WL 919202 at *3. The Union Plaintiffs allege that Defendants have violated BIPA by failing to establish, maintain, and make publicly available a biometric data retention and deletion policy; failing to provide proper notice and failing to obtain the proper written consent before capturing and using Plaintiffs' biometric information; and disclosing Plaintiffs' biometric identifiers without first obtaining proper written consent. But the terms and conditions of the Union Plaintiffs' employment were governed by a collective bargaining agreement between certain Defendants and the Plaintiffs' respective collective bargaining representatives, which, based on investigation to date, are the following:

❶ With respect to Symphony Crestwood, LLC, Plaintiff Felecia Williams was a member of UFCW (the relevant Collective Bargaining Agreements are attached hereto as Exhibits C and D);

❷ With respect to Symphony Deerbrook, LLC, Plaintiffs Tonika Smith and Daphne Williams were members of UFCW (the relevant Collective Bargaining Agreements are attached hereto as Exhibits E and F);

❸ With respect to Symphony Countryside, LLC, Plaintiff Alyssa Bendersky was a member of UFCW (the relevant Collective Bargaining Agreement is attached hereto as Exhibit G);

-7-

- ❹ With respect to Symphony of California Gardens, LLC, Plaintiffs Attla Dupree, and Jameea Boykin were members of SEIU (the relevant Collective Bargaining Agreements are attached hereto as Exhibits H, I, J);

- ❺ With respect to Symphony Bronzeville Park, LLC, Plaintiff Felicia Williams was a member of SEIU (the relevant Collective Bargaining Agreements are attached hereto as Exhibits H, I, J);

- ❻ With respect to Symphony Jackson Square, LLC, Plaintiffs Victoria Brewer and Idella Hill were members of SEIU (the relevant Collective Bargaining Agreement is attached hereto as Exhibit J);

- ❼ With respect to Symphony South Shore, LLC, Plaintiff Idella Hill was a member of SEIU (the relevant Collective Bargaining Agreements are attached hereto as Exhibits H, I, J); and

- ❽ With respect to Symphony Lincoln Park, LLC, Plaintiff Christa Hammond is a member of the Teamsters Union (the relevant Collective Bargaining Agreements are attached hereto as Exhibits K, L, M, and N).

And each respective collective bargaining agreement contains collectively bargained provisions that govern the processes, equipment, and operations of each the above Defendants. (*See* Ex. C at Art. VI; Ex. D at Art. VI; Ex. E at Art. VI; Ex. F at Art. VI; Ex. G at Art. VI; Ex. H at Art. 5; Ex. J at Art. 5; Ex. K at Art. III; Ex. L at Art. III; Ex. M at Art. III)

9. In addition, each respective collective bargaining agreement contains a grievance procedure applicable to disputes arising in connection with the application, interpretation, or alleged violation of any provision of the Agreement. (Ex. C at Art. XII; Ex. D at Art. XII, Ex. E at Art. XII; Ex. F at Art. XII; Ex. G at Art. XII; Ex. H at Art. 15; Ex. J at Art. 16; Ex. K at Art. XIX; Ex. L at Art. XIX; Ex. M at Art. XIX)  If the grievance procedure does not resolve the dispute, then, under each respective collective bargaining agreement, the dispute must be submitted to arbitration. (*Id.*)

10. In accordance with *Miller*, resolving the issue of whether consent and notice have properly been given under the BIPA necessarily requires analysis of the interpretation and administration of the Management Rights clause and other clauses of the collective bargaining

agreement, as well as the negotiations between the above Defendants and Plaintiffs' respective bargaining representatives. *See Miller*, 926 F.3d at 903-04. In other words, the Court cannot analyze Plaintiffs' claims without examining each collective bargaining agreement's language concerning the employer's rights to determine methods, procedures, and equipment, and to determine the nature of work to be performed by the employees and to implement rules and regulations. *See id.* Similarly, the analysis of whether Defendants obtained any required releases or consents, provided notices, or otherwise violated BIPA with respect to timekeeping practices, requires a determination of whether the collective bargaining agreements specification of the company's rights to manage and direct its workforce and determine the methods, procedures, equipment, and rules to be utilized by the employees constitute a sufficient written notice and release from Plaintiff's "legally authorized representative" under 740 ILCS § 14/15(b)(3). *See id.* As a result, the Union Plaintiffs' claims under the BIPA are preempted by the LMRA, this Court has federal-question jurisdiction, and this case is properly removed.

## II. The Court Maintains Supplemental Jurisdiction To Address Any Claims Beyond Those Involving Federal-Question Jurisdiction (28 U.S.C. § 1367)

11. Because all Plaintiffs are bringing all claims on behalf of one class against all Defendants, this Court maintains supplemental jurisdiction over the entire case. "District courts may exercise supplemental jurisdiction over state law claims that share a common nucleus of operative facts with a federal claim properly before the court." *Olson v. Bemis Co.*, 800 F.3d 296, 302-03 (7th Cir. 2015) (internal quotation omitted). Accordingly, it is entirely appropriate for a District Court to exercise supplemental jurisdiction in circumstances like those here. *Id.* (upon removal on complete-preemption under Section 301, the district court did not abuse its discretion by exercising supplemental jurisdiction over any remaining state law claims). Given the allegations in the Amended Complaint, which alleges the same facts in support of all the

separate courts (Ex. A at ¶¶66-114) and that Defendants share a "common liability" based on those facts (*id*. at ¶93), Plaintiffs' claims for alleged violations of BIPA all share a common nucleus. (*See* Ex. A at ¶120 (identifying purportedly common questions to the class)) And because federal question jurisdiction exists over the Union Plaintiffs' claims, this Court can properly exercise supplemental jurisdiction over Plaintiffs' remaining state law claims to the extent any are not preempted by the LMRA.

### III. This Matter Meets All The Requirements Of For Jurisdiction Under CAFA (28 U.S.C. § 1332(d)(2)).

12. Although the above-stated bases for jurisdiction are sufficient to sustain subject matter jurisdiction over the entire case, this Court also has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d). CAFA grants to the United States District Courts original jurisdiction over "any civil action" [1] in which the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" and [2] is a "class action" in which, among other things, "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C. § 1332(d); *see also Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 621 (7th Cir. 2012) (noting that the "language and structure of CAFA . . . indicate[ ] that Congress contemplated broad federal court jurisdiction with only narrow exceptions"). This case meets all the requirements for jurisdiction under CAFA.

13. First, this matter is a "class action" under CAFA because a "class action" for purposes of CAFA is defined as "any civil action filed in a district court of the United States under Rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class

action." 28 U.S.C. § 1332(d)(1)(B). The Amended Complaint purports to allege claims on behalf of a class of "[a]ll Illinois citizens whose biometric information or biometric identifiers were collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any Symphony Post Acute Network location, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*" (Ex. A at ¶115).[2] Therefore, this action is properly considered a "class action" under CAFA.

### A. Minimal Diversity Exists Because At Least One Member Of The Class Is Not A Citizen Of Illinois (28 U.S.C. § 1332(d)(2)(A))

14. Minimal diversity exists, as well. Defendants are alleged to be (Ex. A at ¶¶24-63, 95, 97)—and in fact are—citizens of Illinois in that they are organized under the laws of Illinois and maintain their respective principle places of business in Illinois. *See* 28 U.S.C. § 1332(c)(1); 28 U.S.C. § 1332(d)(10). And while the operative complaint defines the class to include only "Illinois citizens" whose biometrics Defendants captured (*id.* at ¶¶96, 115)—which is a definition that fails to include any "limitation on time or context," *Brecher*, 806 F.3d at 25—the citizenship of class members must still be determined at *some* specific point in time (like when the class members' biometrics were allegedly captured or the filing of the initial complaint). *See also Cleary v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011) (a "federal court's jurisdiction under CAFA is determined at the time of removal"); *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) (the "well-established general rule is that jurisdiction is determined at the time of removal").

---

[2] In the original complaint, Roberson defined the putative class as follows: "All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois by any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network [(SPAN)], as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*"

15.     This is true because of the confluence of two issues:  [1] citizenship is not static or indelible, but rather can change during litigation, *see generally Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993) (a party's citizenship for diversity jurisdiction turns on "domicile" which has two elements:  physical presence or residence in a state and an intent to remain in the state); *Dakuras v. Edwards,* 312 F.3d 256, 258 (7th Cir. 2002) (similar); *Galva Foundry Co. v. Heiden,* 924 F.2d 729, 729–30 (7th Cir. 1991) (similar); and yet [2] a class must be "definite" for the simple and fundamental reason that Defendants and potential class members alike need to know whose rights are being adjudicated by the Court, *see, e.g., Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 495 (7th Cir. 2012) (class definition suffered from "obvious defect" of "indefiniteness"); *see also Mullins,* 795 F.3d at 657 (7th Cir. 2015) (there is a need to know who is bound by class action judgment); *Oshana,* 472 F.3d at 513, 515 (7th Cir. 2006) (similar); 1 NEWBERG ON CLASS ACTIONS § 3:5 (5th ed.) (similar and noting definiteness is required to comport with Due Process); *Brecher*, 806 F.3d at 25.[3]

16.     This is not an idle point.  Since the initial pleading in this case was not removable, the citizenship of class members must be determined as of the amended pleading.  28 U.S.C. § 1332(d)(7).  Thus, if just one of the putative class members has changed citizenship since the initial pleading was filed, then minimal diversity exists under CAFA,  *See, e.g., Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009) ("Class actions, of course, often involve more parties than traditional bipolar litigation and thus a greater likelihood that some parties will change.  In fact, 28 U.S.C. § 1332(d)(7) accounts for this aspect of class actions by

---

[3] There is another, related difficulty with Plaintiffs' attempt to limit the class to Illinois citizens (in an obvious attempt to defeat CAFA jurisdiction).  The concept of "citizenship" involves an assessment of each class members' respective state of mind.  *See Perry*, 16 F.3d at 140; *Dakuras*, 312 F.3d at 258; *Galva Foundry*, 924 F.2d at 729–30.  But state-of-mind inquiries are generally inappropriate when defining a class because of the "indefiniteness" issues that inevitably ensue.  *See Mullins*, 795 F.3d at 657 ("a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind").

explicitly providing that class member citizenship may be determined even after the time-of-filing [of the initial pleading]."); *see also Adams v. W. Marine Prod., Inc*., 958 F.3d 1216, 1221 (9th Cir. 2020) (citizenship under CAFA is determined as of the date the case became removable). In this way, CAFA accords with the more general rule that if a plaintiff undertakes a voluntary act—like, for example, by changing domicile, or by adding new parties or claims—and thereby creates a basis for federal jurisdiction, then the case may be properly removed. *See, e.g., Powers v. Chesapeake & Ohio Ry.*, 169 U.S. 92, 101 (1898); *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1988); *DeBry v. Transamerica Corp.*, 601 F.2d 480, 486–87 (10th Cir. 1979); *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 754–55 (4th Cir. 1996); *Self v. Gen. Motors Corp.*, 588 F.2d 655, 657 (9th Cir. 1978); *see also Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir. 1992).[4]

17.     Applying these principles here, it appears the class includes persons who once were, but are no longer, Illinois citizens. During discovery in the state-court proceedings, Defendant Symphony Sycamore produced employee rosters comprising 552 persons who worked for Symphony Sycamore during the five-year period preceding the initial complaint. (*See* Excerpt from Pl.'s Class Cert. Br., attached as Exhibit O, at 4.) At least fourteen of these persons were later revealed to have last known addresses outside of Illinois—nine in Missouri, three in Michigan, one in Massachusetts, and one in Washington.[5] The presence of non-Illinois addresses demonstrates [1] that Illinois citizens (who lived near and worked at Symphony Sycamore's Illinois location) may have been within the class as of the initial pleading, but are no

---

[4] The rationale for this rule is that although a defendant should not be allowed to change domicile after the complaint is filed for the sole purpose of effectuating removal, there is no reason to protect the plaintiff against the adverse consequences of her own voluntary acts. *See Yarnevic*, 102 F.3d at 754–55.

[5] Following class certification, Symphony Sycamore produced the names and addresses for these employee rosters. After receiving that information, Roberson issued class notice, and then stated in an appellate court filing that the class includes "a minimum of 552 workers." (Excerpt from Pl.'s App. Br., Exhibit P, at 18-19)

longer Illinois citizens (like, especially, the employees who have addresses in Massachusetts, Michigan, and Washington), or [2] that the employee pool stretches across state lines such that a change of citizenship is likely to have occurred, *see also Miller*, 926 F.3d at 905 (noting that "[i]t seems likely to us that at least one person domiciled in southern Wisconsin or northwest Indiana works for United at O'Hare Airport, which is in commuting distance from both states"), or [3] that both of these things are true. In addition, many of the New Defendants operate facilities in the Chicagoland area, such that certain of those current or former employees may have been Illinois citizens when their biometrics were alleged collected, or as of the filing of the initial complaint, but who are no longer Illinois citizens. Thus, on information and belief, at least one putative class member—either all or some of the ones with non-Illinois addresses mentioned above, or an employee or former employee one of the other Defendants—is diverse from the Defendants, which at this stage of the proceedings is sufficient to satisfy minimum diversity. *See Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) (noting that an allegation "even if only 'on information and belief,' that a specific member of the putative class had 'a particular state of citizenship'" may be preliminarily accepted as a basis for subject matter jurisdiction); *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010); *see also* 28 U.S.C. § 1653.

      **B.**     **This Case Satisfies CAFA's Amount-In-Controversy Requirement.**

    18.    The "matter in controversy" across all the purported class members' claims satisfies CAFA. Under CAFA, "the matter in controversy" must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). For purposes of determining the amount in controversy in class actions, CAFA expressly requires that "the claims of the individual members shall be aggregated . . ." 28 U.S.C. § 1332(d)(6).

19.　For this amount in controversy to be satisfied, there need only be "a reasonable probability that the stakes exceed" $5,000,000. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). In this regard, the Seventh Circuit has acknowledged "the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011). Accordingly, "the party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id*. (citing *Brill*, 427 F.3d at 448 (7th Cir. 2005)). This burden thus "is a pleading requirement, not a demand for proof." *Id*. (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)).

20.　Defendants deny the validity and merit of the entirety of Plaintiffs' alleged claims, the legal theories upon which they are based, and the alleged claims for monetary and other relief that allegedly flow therefrom. But for purposes of setting forth grounds for this Court's jurisdiction—and without conceding that Plaintiffs or the putative class are entitled to damages or penalties or any relief whatsoever—it is apparent that although the complaint does not affirmatively specify a damages figure, the aggregated claims of the putative class exceeds CAFA's jurisdictional minimum. (*See also* Ex. A at ¶119 (alleging that the putative class could include thousands of persons)). Indeed, given that the Complaint is seeking "$1,000 to $5,000 in statutory damages" "per violation" of BIPA (*see, e.g.,* Ex. A at ¶1343), while also alleging 169 separate causes of action under BIPA (Ex. A), it is plausible that Plaintiffs seek to recover $5,000 in damages for each class member against each Defendant under each cause of action, which would far exceed CAFA's jurisdictional threshold. Other damages theories would exceed

the threshold, as well.⁶  *See also, e.g., Peatry v. Bimbo Bakeries USA, Inc.*, 19-cv-2942, 2019 WL 3824205 (N.D. Ill. Aug. 7, 2019) ("[T]he Court agrees with Bimbo that Peatry's complaint and BIPA together can plausibly be read to suggest that a violation of at least some of the BIPA provisions at issue allegedly occurred every time Peatry and the putative class members clocked in and out of work."); *see generally Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (a "removing party [ ] only must establish the amount in controversy by a good faith estimate that is plausible and adequately supported by the evidence") (internal quotation omitted).  Thus, while Defendants do ***not*** agree that Plaintiffs are entitled to that measure of damages under BIPA, for removal purposes, the question is not "what damages the plaintiff will recover, but only how much is *in controversy* between the parties."  *Id.* (emphasis in original; internal citation and quotation omitted).

21.    Moreover, Plaintiffs and the class are seeking injunctive relief and attorneys' fees, which also factor into evaluating the amount in controversy for jurisdictional purposes.  *See Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) (in a suit for injunctive relief, "the amount in controversy is measured by the value of the object of the litigation"); *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation"); *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001) (where state statute allowed recovery of attorney's fees, fees incurred as of the date of filing properly included in amount-in-controversy analysis); *see also Gardynski-Leschuck*

---

⁶ Defendants deny that Plaintiffs could recover any damages, much less astronomical damages that would could conflict with a plain language of the statute and would raise serious constitutional and policy concerns.  Nonetheless, for purposes of removal, Plaintiffs' allegations and requested relief, and the plausible inferences drawn therefrom, must be accepted as true for purposes of determining the amount in controversy.  *See generally CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000).

*v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998) (similar); *cf. Oshana*, 472 F.3d at 512 (similar). This requested relief further sustains that the amount-in-controversy is established under CAFA.

### III. Defendants Have Satisfied the Procedural Requirements for Removal.

22. Given that the Amended Complaint does not affirmatively and unambiguously allege the total amount of damages being sought and that Defendants have received no other pleading or other paper that does so either, and further given that Plaintiffs' union membership is not affirmatively and unambiguously alleged in the Amended Complaint, this Notice of Removal is timely because the 30-day removal clock has not started to run. *See Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (2103) ("The 30-day removal clock [under CAFA] does not begin to run until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present.") In any event, this Notice of Removal is being filed within 30 days of the service of the summons upon the New Defendants on August 3, 2020. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining the time for filing a notice of removal does not run until a party has been formally served with the summons and complaint under the applicable state law).

23. Because this action was brought in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, venue for purposes of removal is proper in this Court under 28 U.S.C. § 93(c): this District covers St. Clair County, Illinois, the place where the removed action has been pending. *See* 28 U.S.C. § 93(c); 28 U.S.C. § 1441(a).

24. In accordance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served on Defendants in the state trial court proceedings have been attached as Exhibit A, Exhibit B, Exhibit Q (which is the complete record on appeal, with an index, for the most recent

state-court appeal in this matter), and Exhibit R (which includes the state trial-court filings that have been filed since that appeal was taken).

25. In accordance with 28 U.S.C. § 1446(d), Defendants will promptly provide written notice to Plaintiffs and will promptly file a copy of this Notice of Removal with the Clerk of the Court for the Circuit Court of the Twentieth Judicial Court, St. Clair County, Illinois.

\* \* \*

For the foregoing reasons, Defendants hereby remove this case from the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois to the United States District Court for the Southern District of Illinois, and further requests that this Court accept this Notice of Removal and assume jurisdiction over this matter for all further proceedings.

DATED:  September 2, 2020                     Respectfully submitted,

                                                          SEYFARTH SHAW LLP

                                                           By:  */s/ Richard P. McArdle*

Richard P. McArdle
rmcardle@seyfarth.com
Joseph A. Donado (*pro hac vice* to be submitted)
jdonado@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

*Attorneys for Defendants*

65544548v.2

-19-

## CERTIFICATE OF SERVICE

I, Richard P. McArdle, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **NOTICE OF REMOVAL**, to be filed through the Court's CM/ECF system on September 2, 2020 and served on the below Counsel of Record in the state-court proceedings via email on September 2, 2020, and by overnight courier as promptly thereafter as possible:

John Driscoll
Paul Johnson
THE DRISCOLL FIRM, P.C.
211 North Broadway, Suite 4050
St. Louis, MO 63012

John Baricevic
Charles Baricevic
Chatham & Baricevic
107 W. Main Street
Belleville, IL 62220

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Richard P. McArdle*