**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAROYA ROBERSON, et al., individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MAESTRO CONSULTING SERVICES, LLC, Individually and d/b/a SYMPHONY POST ACUTE NETWORK, et al.<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)　Case No. 3:20-cv-895<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>PLAINTIFFS' MOTION TO REMAND</u>

COME NOW Plaintiffs, by and through their attorneys, The Driscoll Firm, P.C., and for their Motion to Remand, state as follows:

## <u>TABLE OF POINTS AND AUTHORITIES</u>

I.    **Introduction** ......................................................................................................... 1

         740 ILCS 14/1 ................................................................................................ 1

II.   **Defendants' Notice of Removal is Untimely** ................................................... 3

         28 U.S.C. §1446 ............................................................................................ 3

         *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546(2005) ...................... 4

         28 U.S.C. § 1441 .......................................................................................... 4

         *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752 (7th Cir. 2009) ..................... 4

         *Morris v. Nuzzo*, 718 F.3d 660 (7th Cir. 2013) ....................................................... 4

         *Graham v. Illinois Dept. of Corrections*, 2012 WL 5390056
            (C.D. Ill. Nov. 5, 2012) ................................................................................ 4

         *Walker v. Trailer Transit, Inc.*, 727 F.3d 819 (7th Cir. 2013) ............................... 5

         *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ............. 5

         *Douthitt v. Arvinmeritor*, 2013 WL 5255677 (S.D. Ill. Sept. 17, 2013) ............. 5, 6

         *Addison v. CBS Corp.*, 2013 WL 6199155 (S.D. Ill. Nov. 25, 2013) ................ 5, 6

III.  **Plaintiffs' § 15(a) BIPA Claims Must Be Remanded for Lack of
     Article III Standing** ......................................................................................... 6

         *Collier v. SP Plus Corp.*, 889 F.3d 894 (7th Cir. 2018) ........................................ 6

         *Lujan v. Defs. of Wildlife*, 504 U.S. 555; 112 S.Ct. 2130;
            119 L.Ed.2d 351 (1992) ................................................................................ 6

         *Stauffer v. Innovative Heights Fairview Heights, LLC*, 2020 WL 4815960
            (S.D. Ill. Aug. 19, 2020) ............................................................................. 7

         *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir. 2020) ..................... 7

         *Cothron v. White Castle System, Inc.*, 2020 WL 3250706
            (N.D. Ill. June 16, 2020) ............................................................................. 7

*Burlinski et al. v. Top Golf USA, Inc., et al.*, No. 19-C-06700
(N.D. Ill. Sept. 3, 2020) ......................................................................... 7

*Figueroa v. Kronos Inc.*, 2020 WL 4273995 (N.D. Ill. July 24, 2020) ................. 8

**IV.  Plaintiffs' State Law BIPA Claims are not Preempted by the National Labor Relations Act ("NLRA")** .................................................................. 8

**A.  Factual Background** ........................................................................... 8

**B.  There is no Federal Question Jurisdiction Under the "Well-Pleaded Complaint" Rule** ........................................................................... 10

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987) ................................. 10

**C.  *Miller v. Southwest Airlines* Is Distinguishable and not Dispositive Here** .......... 11

45 U.S.C. §§151-188 ......................................................................... 11

*Nat'l Fed'n of the Blind v. United Airlines*, 813 F.3d 718 9th Cir. 2016) ............. 11

*US Airways v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010) ................................. 11

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) ........................................ 11

*Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988) .................... 11

*Loewen Group International, Inc. v. Haberichter*, 65 F.3d 1417
(7th Cir. 1995) .................................................................................. 12

*Spoerle v. Kraft Foods Glob, Inc.*, 626 F. Supp. 2d 913 (W.D. Wis. 2009) ......... 12

*Livadas v. Bradshaw*, 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) ...... 12

*In re Bentz Metal Products Co.*, 253 F.3d 283 (7th Cir. 2001) ........................... 12

*Miller v. Southwest Airlines Co.*, 926 F.3d 898 (7th Cir. 2019) ........................... 12

*Frisby v. Sky Chefs, Inc.*, 2020 WL 4437805 (N.D. Ill. August 3, 2020) ............. 13

**D.  Plaintiffs' Claims are not Otherwise Preempted by the LMRA** ...................... 13

**1.  Because Plaintiffs Do Not Assert that Any Contract Has Been Violated, The Question of Whether Defendant Violated BIPA Is Not Dependent On Any Analysis of Any CBA** ........................................................... 13

*Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197;
    432 Ill.Dec. 654 (Ill. 2019) ............................................................... 14

740 ILCS 14/15 ................................................................................... 14

*Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176 (7th Cir. 1993) ........... 14

*Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70 (1998) .................................... 14

    **2.**   **There Is No Basis To Find That The Unions Provided "Written Releases" To Defendants** .................................................................................................... 15

*Spoerle v. Kraft Foods Glob, Inc.,* 626 F. Supp. 2d 913 (W.D. Wis. 2009) ... 15, 16

*Miller v. Southwest Airlines Co.,* 926 F.3d 898 (7th Cir. 2019) ...................... 15, 16

*Thomas v. KIK Custom Productions*, No. 19-CH-2471
    (Cir. Ct. Cook Cnty., Dec. 19, 2019) .............................................. 16

*Watson v. Legacy Healthcare*, No. 18-CH-03425
    (Cir. Ct. Cook Cnty., June 10, 2020) ............................................. 16

*Walton v. Roosevelt University*, No. 19-CH-04176
    (Cir. Ct. Cook Cnty., May 5, 2020) ............................................... 16

*Winters v. Aperion Care, Inc.*, No. 19-CH-06579
    (Cir. Ct. Cook Cnty. Feb. 11, 2020) .............................................. 16

*Beverly Health & Rehab. Servs. V. NLRB*, 297 F.3d 468 (6th Cir. 2002) .............. 16

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247; 129 S.Ct. 1456;
    173 L.Ed.2d 398 (2009) .............................................................. 16, 17

**V.**   **The "Home State" and "Local Controversy" Exceptions to CAFA Jurisdiction Clearly Indicate CAFA is Inapplicable to This Notice of Removal Proceeding** ...................... 17

28 U.S.C. §1332 ................................................................................. 17

    **A.**   **This Court Must Decline to Exercise CAFA Jurisdiction Even Assuming It Existed, Under the "Home State" Exception** ......................................................... 17

28 U.S.C. §1332 ................................................................................. 17

**B.**     **This Court Must Decline to Exercise CAFA Jurisdiction Even Assuming It Existed, Under the "Local Controversy" Exception** ............................................ 18

28 U.S.C. §1332 ................................................................................................ 19

**VI.     Conclusion** ....................................................................................................... 19

## I.  __INTRODUCTION__

This state law class action lawsuit should immediately be remanded to state court because Defendants' Notice of Removal was untimely.

Second, Plaintiffs lack *federal* Article III standing to assert Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, §15(a) claims in this Court, which represent 25% of all pleaded Counts in Plaintiffs' First Amended Complaint ("FAC"). The §15(a) Counts must be severed and remanded back to state court.

Third, this is not a "complete preemption" matter for the National Labor Relations Board ("NLRB"). Plaintiffs have exclusively pled violations of BIPA—an Illinois *state* law—in the FAC. The FAC does not reference any federal law, statute, or collective bargaining agreement ("CBA"). The resolution of Plaintiffs' BIPA allegations against these Symphony Post-Acute Network ("SPAN") nursing home Defendants does not require an interpretation of any CBA. This is consistent with numerous recent Illinois precedent on this precise issue.

Moreover, Defendant Maestro Consulting Services, LLC—which serves as the management company for and "related party" to *each* SPAN nursing facility, the contracting party for *all* SPAN facility biometric time clocks, and the entity identified by Symphony Sycamore, LLC, as the entity which manages the SPAN nursing facilities' payroll and biometric time clocks—is not a signatory to any CBA. There is a considerable portion of this lawsuit – all of the Plaintiffs' BIPA claims against Maestro and the seven SPAN nursing facilities for which there is no evidence of a CBA in place – where there is not even a contention for independent federal subject matter jurisdiction.  These claims and causes of action must be severed and remanded to the St. Clair County Circuit Court.

1

Fourth, the Defendants' invocation of the Class Action Fairness Act ("CAFA") as an alternative means to establish subject matter jurisdiction is totally inappropriate under these circumstances, as CAFA is objectively inapplicable here.

This *state law* class action lawsuit was originally filed on December 8, 2017 by Saroya Roberson, individually and on behalf of others similarly situated, against an assisted living facility, Symphony Sycamore, LLC, and several entities associated therewith, for alleged violations of BIPA, in that Defendants illegally captured, collected, stored and used Plaintiff's and other similarly-situated individuals' biometric identifiers and biometric information without informed written consent, among other alleged violations, in direct violation of BIPA. The parties agree that the initial Complaint was not removable to the federal court system. [ECF 10, ¶16].

On March 12, 2019, the trial Court certified the class as follows:

All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with the Symphony Post Acute Care Network a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Privacy Cat, 740 ILCS 14/5 *et seq.*

On that same date, the trial Court also certified the following subclass:

All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with the Symphony Post Acute Care Network a/k/a Symphony Post Acute Network location in Swansea, Illinois, as set forth in the Illinois Biometric Privacy Act, 740 ILCS 14/5 *et seq.*

[ECF 8-13, p.17 (Trial Court Order dated March 12, 2019)].

The original Defendants appealed the trial Court's Order to the Fifth District Court of Appeals. On November 25, 2019, the Fifth District issued its Order and Mandate, restricting the class to only those employees of the actual-named assisted living facility, Symphony Sycamore, LLC d/b/a Sycamore Village. *See* Fifth District Appellate Court Order dated November 25, 2019,

2

attached hereto as **Exhibit 1**.  The Fifth District noted that class certification may be amended "based on further discovery as to the relationship between [sic] the various Symphony locations…" [Exhibit 1, p. 11, fn. 3].

On May 21, 2020, Plaintiff filed her Superseding Motion for Leave to Amend, attaching as Exhibit A, a copy of the FAC and requesting that the Court enter its Order granting leave to file it *instanter* [ECF 10-18, p. 407].  On July 2, 2020, Plaintiffs received leave of Court for the official filing of their FAC, in which 10 additional Illinois Plaintiffs and 17 additional Illinois Defendants were added as parties. [ECF 10-18, p. 411 (FAC); ECF 10-18 p. 843 (July 2, 2020 Trial Court Order)].  The FAC was brought exclusively under the Illinois BIPA statute for alleged inappropriate capturing, collecting, and sharing of Plaintiffs' biometric information. The additional 17 Illinois-based Defendants were nursing facilities within SPAN and their management company, Maestro. [1,2]  On September 2, 2020, Defendants filed their Notice of Removal. [ECF 10].

## II.  **DEFENDANTS' NOTICE OF REMOVAL IS UNTIMELY**

28 U.S.C. §1446(b)(3) provides:

> "Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service *or otherwise*, of a copy of an *amended pleading*, motion, order or other paper from which it may first be *ascertained* that the case is one which is or has become removable." (italics supplied)

---

[1] In addition to Saroya Roberson, Christa Hammond, Tonika Smith, Daphne Williams, Idella Hill, Olabisi Bodunde, Victoria Brewer, Alyssa Bendersky, Felecia Williams, Attla Dupre, Jamea Boykin and Nicolle Headley were added as Plaintiffs. All are citizens and residents of the State of Illinois. (ECF 10-18, p. 3-10).

[2] Maestro Consulting Services, LLC; Symphony HMG, LLC; Symphony Crestwood, LLC; Symphony Deerbrook, LLC; Symphony Countryside, LLC; Symphony Beverly, LLC; Symphony Bronzeville Park, LLC; Symcare HMG, LLC; Symphony Jackson Square, LLC; Symphony of Evanston Healthcare, LLC; Symphony Lincoln Park, LLC; Symphony Midway, LLC; Symphony Park South, LLC; Symphony South Shore, LLC; Monroe Corp.; California Gardens Corp; and Symphony of California Gardens, LLC were added as Defendant parties. All are part of the so-called "Symphony Post-Acute Network" ("SPAN"), are Illinois citizens, and are represented by the same counsel [ECF 10-18, p. 411 [FAC]; ECF 10-18 p. 843 (July 2, 2020 Trial Court Order)].

As Defendants concede, Plaintiffs' original Complaint was not removable. [ECF 10, ¶16]. The same Defendants' counsel which represented all named Defendants in the original Complaint and which now represents all named Defendants in the FAC, was provided with a copy of the Plaintiffs' proposed FAC on May 21, 2020 [ECF 10-18, P. 411]. The trial Court deemed the FAC to be filed *instanter* in its July 2, 2020, Order. [ECF 10-18, p. 843].

Federal courts are courts of limited jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). A defendant may remove to federal court a case that was originally filed in state court if the case satisfies certain jurisdictional requirements as provided by statute. *See* 28 U.S.C. §§1441–55. "[A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States...." 28 U.S.C. § 1441(a). The party seeking removal bears the burden of demonstrating federal jurisdiction, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009); *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013) (noting the "long-established precedent that the removal statutes are to be strictly construed to preserve the limited jurisdiction of federal courts").

Here, the 30-day removal time clock began to run on July 2, 2020, as Defendants' counsel was in possession of a formally-approved amended pleading from which it could first *ascertain* alleged bases for removal. *See Graham v. Illinois Dept. of Corrections*, 2012 WL 5390056 at *1 (C.D. Ill. Nov. 5, 2012) ("Until Plaintiff's motion to amend his complaint was granted, the case was not removable.").[3] The Defendants, a network of Illinois nursing facilities and their

---

[3] The word "ascertain" means "to find something out *for sure*…" or "to find out or learn *with certainty*…" "*Ascertain.*" Merriam-Webster Online Dictionary. 2020. https://www.merriam-webster.com/dictionary/ascertain (Sept. 23, 2020) (*emphasis added*).

management company, knew the rosters of *their own employees* at *their own* Illinois-based facilities, whether those employees were in unions, and whether there were CBAs in place at times relevant to this lawsuit.

When the FAC became "officially filed" on July 2, 2020, Defendants were able to review that amended pleading to *ascertain*, or *make certain* the alleged applicability of their "complete preemption" argument comparing their roster of their employees at their nursing facilities (with CBAs in place), with the names of the newly-added Plaintiffs. Defendants had until August 3, 2020, to file any Notice of Removal. Because Defendants did not file their Notice of Removal until September 2, 2020, they are too late and Plaintiffs' Motion to Remand should be granted forthwith.

The Defendants cite only two cases to support their timeliness burden. First, they cite *Walker v. Trailer Transit, Inc.*, 727 F.3d 819 (7th Cir. 2013), a *CAFA diversity of citizenship* removal case where the *amount-in-controversy* requirement was unclear from the initial pleading (italics added). It is clear throughout *Walker* that the §1446(b)(3) "pleading, motion, order or other paper" requires a definitive statement on the part of a plaintiff as to the *amount-in-controversy* for *diversity of citizenship* removal purposes. *Walker*, 727 F.3d at 824-825.

Defendants then cite *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 345 (1999) to support their claim the removal clock starts to run after actual service of an *initial pleading*, not when a defense attorney receives a courtesy copy of same. This case and Defendants' argument have nothing to do with the timeliness issue before this Court: When does §1446(b)(3)'s removal clock start to run after the "initial pleading" was not removable? [ECF 10, ¶16].

Two Southern District removal cases, *Douthitt v. Arvinmeritor*, 2013 WL 5255677 (S.D. Ill. Sept. 17, 2013) and *Addison v. CBS Corp.*, 2013 WL 6199155 (S.D. Ill. Nov. 25, 2013), provide some context as to how to approach §1446(b)(3)'s removal clock. In both matters, Judge Murphy

used the "benefit of hindsight" to assess the government contractors' "knowledge" at the time the asbestos exposure cases became "removable": *they knew they could avail themselves of a legal defense;* they knew their products were manufactured in accordance with government specifications; and they *should have known* that a *reasonable* and *commonsense* reading of the complaints would have indicated the actions were immediately removable. *Douthitt*, 2013 WL 5255677 at \*2-\*3; *Addison*, 2013 WL 6169155 at \*2-\*3. (italics supplied). Consistent with these opinions, as detailed above, because Defendants failed to file their Notice of Removal within 30 days of when they could first ascertain from the FAC the applicability of their preemption arguments forming the basis for their removal, remand is warranted.

### III.   PLAINTIFFS' §15(a) BIPA CLAIMS MUST BE REMANDED FOR LACK OF ARTICLE III STANDING

As the parties invoking federal jurisdiction, Defendants bear the burden of establishing each Plaintiff's Article III standing. See *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (*per curiam*). For Plaintiffs to have Article III standing, three requirements must be satisfied: (1) they must have suffered an actual or imminent, concrete and particularized injury-in-fact; (2) there must be a causal connection between their injuries and the conduct complained of; and (3) there must be a likelihood that these injuries will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Only the first of those criteria is at issue here.

6

Fully one-fourth of the BIPA Counts in the FAC are brought under §15(a).[4] Thus, 42 of the 169 Counts in the FAC need to be remanded to state court because Plaintiffs do not have federal Article III standing to pursue such claims in federal court.[5] The Plaintiffs' general allegation to each Defendant's §15(a) violations[6] as having "aggrieved each plaintiff and class member as provided in BIPA…" does not at this time allege a "particularized harm…" with which to confer federal Article III standing. *Stauffer v. Innovative Heights Fairview Heights, LLC,* 2020 WL 4815960 at *5-*8 (S.D. Ill. Aug. 19, 2020), analyzing *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020).

As the Seventh Circuit has held, and other district courts have since followed, Plaintiffs lack federal court Article III standing to pursue claims for violations of BIPA's §15(a). *Bryant*, 958 F.3d at 626; *Stauffer,* 2020 WL 4815960 at *8; *Cothron v. White Castle System, Inc.*, 2020 WL 3250706 at *4 (N.D. Ill. June 16, 2020); *Burlinski et al. v. Top Golf USA, Inc., et al.*, No. 19

---

[4] Sec. 15 provides:
 (a) A private entity in possession of biometric identifiers or biometric information must develop a written policy, *made available to the public*, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

[5] Counts I, II; IX, X; XVII, XVIII; XXVI, XXVII; XXXIII, XXXIV; XLI, XLII; XLIX, L; LVII, LVIII; LXV, LXVI; LXXIII, LXXIV; LXXXI, LXXXII; LXXXIX, XC; XCVII, XCVIII; CV, CVI; CXIII-CXIV; CXXI, CXXII; CXXIX, CXXX; CXXXVII, CXXXVIII; CXLV, CXLVI; CLIII, CLIV; CLXI, and CLXII of the First Amended Complaint.

[6] The identical language was used for all §15(a) allegations in the First Amended Complaint:
[Defendant] did not properly develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information was satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurred first.

[Defendant's]collection, storage and use of the plaintiffs' and class members' biometric identifiers, information or data as described herein, aggrieved each plaintiff and class member as provided in BIPA and further violated the rights of each plaintiff and class member to control this information.

C 06700 (N.D. Ill. Sept. 3, 2020) (Chang, J.) (severing and remanding §15(a) claims in light of *Bryant*) (Ex. 3); *Figueroa v. Kronos Inc.*, 2020 WL 4273995, at *5 (N.D. Ill. July 24, 2020) (following *Bryant*: 1:20-cv-02362 Document #: 23 Filed: 09/04/20 Page 9 of 29 and remanding plaintiff's §15(a) BIPA claims for lack of standing).

"When a case is filed in state court and removed to federal court, and when the federal court finds that it lacks subject matter jurisdiction, the appropriate disposition (with narrow exceptions not pertinent here) is a remand to state court under 28 U.S.C. § 1447(c)." *Figueroa*, 2020 WL 4273995 at *5. Accordingly, Plaintiffs' §15(a) claims must be severed and remanded back to state court, where they were originally brought.

## IV.   PLAINTIFFS' STATE LAW "BIPA" CLAIMS ARE NOT "PREEMPTED" BY THE NATIONAL LABOR RELATIONS ACT ("NLRA")

### A.   FACTUAL BACKGROUND

Defendants posit that because nine of the 11[7] named Plaintiffs in the FAC were union employees at various SPAN nursing facilities[8] with CBAs in place, any issues regarding "how workers clock in and clock out" are preempted. [ECF 10, ¶¶ 7-10; ECF 10-4 – 10-15].

The FAC was filed exclusively pursuant to BIPA in state court on behalf of 11 Illinois citizens against 21 Illinois limited liability companies in part comprising SPAN. It makes no reference to any federal statute, law, collective bargaining agreement, or union affiliation. Moreover, none of the 12 CBAs makes any reference to BIPA, biometrics, fingerprinting, clocking

---

[7] According to Defendants, Plaintiffs Dupree, Boykin, F. Williams, Smith, D. Williams, Bendersky, Hill, Hammond, and Brewer were union members during their tenure at SPAN facilities. Plaintiffs Roberson and Bodunde were apparently non-union workers and thus their claims and causes of action are unaffected by Defendants' "complete preemption" arguments [ECF 10, Section I].

[8] Maestro Consulting Services, LLC and seven SPAN nursing facilities---Symphony Sycamore, LLC; Symphony of South Park, LLC; Symphony of Evanston Healthcare, LLC; Symphony Midway, LLC; Symphony Beverly, LLC; Monroe Corp., and California Gardens Corp.---were apparently not signatories to any CBA and thus are unaffected by Defendants' "complete preemption" arguments [ECF 10, Section I].

in or clocking out. Finally, Defendants presented no evidence that the concepts of BIPA, biometrics, fingerprinting, or clocking in or clocking out ever became the subject of any bargaining discussions or grievance proceedings between the Plaintiffs' unions and any of the SPAN facilities. [ECF 10-4 – 10-15].

Before the FAC was filed, the single facility Defendant sued, Symphony Sycamore, LLC d/b/a Sycamore Village, indicated that it (and thus presumably the additionally-joined SPAN facility Defendants as well) did not collect any employees' biometric information, but stated it contracted with Maestro Consulting Services, LLC, the management company for all of the SPAN entities, to administer its payroll system software and hardware, including its timeclocks. [ECF 9, p. 56-66 (Symphony Sycamore's Third Supplemental Answers to Plaintiffs' First Interrogatories, dated April 29, 2019)].

Maestro, the SPAN management company which Defendants acknowledge captures and collects the SPAN employees' biometric information, is not and never has been a signatory to any CBA and is unaffected by Defendants' "complete preemption" arguments in Section I of the Removal. [ECF 10, Section I]. There is no question but that Maestro, the first-named Defendant in the FAC, is the Plaintiffs' "hub of the wheel"[9] for purposes of coordination of the capturing, collecting, and storing of Plaintiffs' biometric information throughout the SPAN.

Based on the original Defendants' discovery responses, the SPAN nursing entities used the Health Data Systems, Inc. ("HDSI") "HandPunch 3000" time clocks for clocking in and clocking out from early 2012 to approximately November 20, 2017; and time clocks provided by Kronos known as "InTouch" from approximately November 20, 2017 to the present. *See* Symphony

---

[9] *See* State of Illinois Department of Healthcare and Family Services Financial and Statistical Report (Cost Report) for Long-Term Care Facilities (Fiscal Years 2015-2018), attached hereto as **Exhibit 2**.

Sycamore's Fourth Supplemental Answers to Plaintiffs' First Interrogatories, dated May 20, 2019, attached hereto as **Exhibit 3.**[10] Against this factual background, Defendants seek to convince this Court that this lawsuit is "completely preempted" by the NLRA.

### B.   THERE IS NO FEDERAL QUESTION JURISDICTION UNDER THE "WELL-PLEADED COMPLAINT" RULE

Federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists when a federal question appears on the face of the plaintiff's properly-pleaded complaint. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). The "well-pleaded complaint rule" makes the plaintiff the master of the claim and generally permits the plaintiff to avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar*, 482 U.S. at 392. As the Supreme Court stated:

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a §301 question, in a defensive argument does not overcome the paramount policies embodied in the well pleaded complaint rule---that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.

*Id.* at 392.

The Plaintiffs have appropriately chosen the Illinois BIPA statute as the *exclusive* basis for their state law class action lawsuit. None of the alleged statutory BIPA violations is created by any CBA; on the contrary, BIPA was created by the Illinois legislature as part of its police powers. Plaintiffs do not allege that any provision of any CBA has been violated or breached. The Defendants' obligations under BIPA exist independently of both employment and any given CBA

---

[10] Upon information and belief, Maestro was the contracting party with Kronos for the purchase of the InTouch time clocks, along with the accompanying software and maintenance contracts for each under Kronos Account No.: 6128594. Maestro owns or at the very least arranged for the purchase of the Kronos time clocks.

and resolution of Plaintiffs' BIPA allegations does not require the court to interpret any CBA. Under the well-pleaded complaint rule, there is no federal question jurisdiction here and Plaintiffs' Motion to Remand should be granted forthwith.

**C.**      ***MILLER V. SOUTHWEST AIRLINES* IS DISTINGUISHABLE AND NOT DISPOSITIVE HERE**

In key transportation industries, such as air and rail, Congress imposes mandatory collectively bargaining requirements. *See generally*, 45 U.S.C. §151-152, part of the so-called Railway Labor Act ("RLA"), 45 U.S.C. §151-88. The RLA governs the relationship between management and labor in the air and rail industries.

As a matter of federal law, unions in the air transportation business are the workers' exclusive bargaining agents, 45 U.S.C. §152, in order to keep to keep these parties' disputes out of the courts by imposing mandatory grievance procedures. A preemptive intent tends to be more readily inferred in aviation because it is clearly an area of the law where federal interest is dominant. *Nat'l Fed'n of the Blind v. United Airlines*, 813 F.3d 718, 724 (9th Cir. 2016); *see US Airways v. O'Donnell*, 627 F.3d 1318, 1325 (10th Cir. 2010). *There is no such mandatory bargaining statute applicable to the nine union Plaintiffs who are Illinois nursing home employees, not national air carrier employees, a key distinction for purposes of Plaintiffs' Motion to Remand.*

§301[11] of the LMRA grants federal district courts exclusive jurisdiction over a state law claim when resolution depends on interpreting the terms of a CBA. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-211 (1985); *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399,

---

[11] "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." This BIPA state class action lawsuit is not in any way a lawsuit for violations of a contract between an employer and a labor organization – it implicates privacy interests, rights, and responsibilities entirely outside any CBA at issue here.

403 (1988) (state law is not preempted if it does not require interpretation of the CBA even if it may require reference to the CBA); *see also Loewen Group International, Inc. v. Haberichter*, 65 F.3d 1417, 1421 (7th Cir. 1995).

§301 "complete preemption" applies with force where state laws create a risk of *taking away* employee rights provided by collective bargaining or becoming entangled in the collective bargaining process, *not* when state laws *add* rights that are independent of the agreement, such as the biometric information privacy protection afforded by BIPA. *See Spoerle v. Kraft Foods Glob, Inc.,* 626 F. Supp. 2d 913, 921 (W.D. Wis. 2009); *see also Livadas v. Bradshaw,* 512 U.S. 107, 118, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (preemption appropriate when law imposes "penalty on those who complete the collective-bargaining process" or "those who participate in the process").

The LMRA does not automatically preempt Plaintiffs' state law BIPA claims just because some Plaintiffs were union members employed by SPAN facilities operating under a CBA with management rights clauses and grievances procedures contained therein.  Whether §301 preempts a state law claim entails a "case-by-case factual analysis." *In re Bentz Metal Products Co*., 253 F.3d 283, 285 (7th Cir. 2001).

In *Miller v. Southwest Airlines Co.*, the Seventh Circuit held that airline workers subject to a federal statute compelling mandatory collective bargaining could not assert state court BIPA claims regarding the collection of their biometric information, as such claims were completely preempted and thus should have been submitted to the RLA Adjustment Board rather than asserted in a state court class action lawsuit. 926 F.3d 898, 903-04 (7th Cir. 2019). The Seventh Circuit found the mandatory nature of 45 U.S.C. §152, compelling—noting that unions in the air transportation business are workers' exclusive bargaining agents under the RLA, and therefore

12

"notice" from the airlines to the union workers regarding biometric information gathering was either expressly made to the union, or implicitly made through a "management rights clause" set forth in the operative CBAs. *Id.*[12]

In the present case, there are no "common carrier" issues with federal statutes mandating collective bargaining by union organizations as the operative CBAs are not "common carrier" ones. Plaintiffs are nine ostensible former union employees who worked for various SPAN nursing facilities. There is no evidence that written notice was given to them by their unions regarding the capturing or collecting of their biometric information. This case requires no interpretation of any CBAs because Plaintiffs' BIPA claims are totally independent of any CBA.

There is no federal question jurisdiction here because there is no preemption here: the mere existence of CBAs with management rights clauses and grievance procedures outlined therein outside of the air carrier employee context does not in any way preempt Plaintiffs' BIPA claims.[13]

### D.     PLAINTIFFS' CLAIMS ARE NOT OTHERWISE PREEMPTED BY THE LMRA

#### 1.     Because Plaintiffs Do Not Assert That Any Contract Has Been Violated, The Question of Whether Defendant Violated BIPA Is Not Dependent On Any Analysis of Any CBA.

Here, Plaintiffs do not allege any contract provision between their labor unions and facility management has been breached.  BIPA does not take away any right granted by any allegedly applicable CBA. Rather, BIPA *adds* statutory rights that apply to both the employment

---

[12] Similarly, the significance of being a carrier employee, and thus having federally-mandated collective bargaining through a designated union, was not lost on the plaintiffs and the court in *Frisby v. Sky Chefs, Inc.*, 2020 WL 4437805 at *2-*4 (N.D. Ill. August 3, 2020), where the court found that the operative CBA was drafted in accordance with the RLA, thus preempting plaintiff's BIPA-related claims to the extent that interpretation of a CBA was required.

[13] Defendants have presented no evidence as to how these "management rights clauses" present "clear and unmistakable" evidence that the unions, on behalf of their employees, have waived any BIPA rights or received any sort of releases regarding the capturing of their biometric information.

relationship and outside the employment relationship, and which are entirely independent from

the CBA. *See Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197; 432 Ill.Dec. 654 (Ill. 2019).

> The issues to be decided in resolving Plaintiffs' claims for BIPA violations include:
>
> (1)  Whether Defendants established a written policy, available to the public, establishing its retention schedule and guidelines for permanently destroying biometric identifiers and information under various conditions? [§15(a)];
> (2)  Whether Defendants complied with their own retention and destruction guidelines? [§15(a)];
> (3)  Whether Defendants informed Plaintiffs in writing that they were capturing and collecting their biometric identifiers, the purpose and duration of such capturing and collecting, and whether Plaintiffs executed any form of written release for same? [§15(b)(1)(2) and (3)];
> (4)  Whether Defendants appropriately disclosed, redisclosed, or disseminated any of Plaintiffs' biometric identifiers? [§15(d)].

740 ILCS 14/15. If the answer to any of these questions is "no," then the Plaintiffs have appropriate

BIPA claims. Defendants h a v e offered *no evidence* as to how *any interpretation* of the allegedly

applicable CBAs[14] even arguably answers one of those four questions above, but instead point out

that, just as in *Miller*, they too have management rights clauses in their operative CBAs.

It is well-established that §301 preemption turns on whether a party to a labor agreement

can make out a "non-frivolous" argument that the challenged conduct is either authorized or

prohibited by some clause in the agreement. *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d

1176, 1179 (7th Cir. 1993). Defendants fail to provide a non-frivolous interpretation of their

contract that a factfinder could make that would be relevant to any of Plaintiffs' claims—or

Defendants' defenses—they are seeking to preempt or invoke. *See Wright v. Universal Mar. Serv.*

*Corp.*, 525 U.S. 70, 79-81 (1998) (waiver of judicial forum should not be inferred from "less-than-

---

[14] Agreements between United Food and Commercial Workers Union ("UFCW") Local 1546 and Symphony Crestwood Care Center; Agreements between UFCW Local 1546 and Symphony of Joliet, LLC; Agreements between UFCW Local 1546 and Symphony Countryside Care Center, LLC; Agreements between SEIU Healthcare Illinois & Indiana and Illinois Association of Health Care Facilities; Agreements between Imperial Convalescent & Geriatric Center and Health Care, Professional, Technical, Office, Warehouse, and Mail Order Employ Union ("HCPTOWMO") Local 743;  and Agreement between HCPTOWMO Local 743 and Symphony of Lincoln Park. [ECF 10-4 – 10-15].

explicit union waiver in a CBA."). Here, the CBAs are silent as to biometric-based timekeeping, BIPA, and Plaintiffs' rights and Defendant's obligations under it. Defendants indisputably offer *no* contract interpretation or textual analysis *of their own contracts*, and fail to identify any CBA language that relates to the four aforementioned BIPA dispositive issues. Plaintiffs' Motion to Remand should be granted forthwith.

### 2. There Is No Basis To Find that the Unions Provided "Written Releases" to Defendants.

Defendants have presented *no evidence* that they received BIPA-compliant "written releases" from the Unions as ostensible agents of their members. If any of the elements of BIPA are violated, the Defendants are liable. Whether the CBAs secured for SPAN facilities "management rights" to implement biometric timekeeping systems is not the issue. There is no contractual basis for Defendants to argue that the management rights clauses constitute "written releases" as required by BIPA.

Defendants, all private entities and Plaintiffs' former employers, have failed to identify any terms in any of the CBAs that even arguably constitute "written releases" under BIPA. Accordingly, there is no interpretation of the CBAs that has been put forth, or that could in principle be interpreted to constitute, written releases of Plaintiffs' or other union employees' BIPA rights by the Unions. Nor could the Unions have contracted for something less than a "written release," as BIPA is a law of general application. *Spoerle*, 614 F.3d at 430 ("Nothing that labor and management put in a collective bargaining agreement exempts them from state laws of general application.").

*Miller* does not resolve this. There, the Seventh Circuit reasoned: "Southwest asserts that the union assented to the use of fingerprints, either expressly on being notified before the practice was instituted or through a management-rights clause." *Miller*, 926 F.3d at 903. But for BIPA

purposes, it does not matter if a union "assent[s]" through a management rights clause, because "assent" is *not* the same as a BIPA-compliant written release.

A written release is what BIPA requires and is what should form the background of the collective bargaining. The plain language of BIPA makes clear that the Illinois legislature intended to require private entities capturing or collecting biometric data to receive written consent prior to doing so. There is no authority for a federal court to rewrite the statute to accept something less than a "written release." And there is no basis to argue that a labor union's purported "assent" to the implementation of a biometric-based time-keeping system, via a broad management rights clause, also satisfies the "written release" requirement for collecting or obtaining biometrics that was written into law by Illinois legislature. *Spoerle,* 614 F.3d 430.

Here, as demonstrated, the CBAs are absolutely silent as to the topics of BIPA, and otherwise provide no textual support whatsoever for Defendants' position.[15] All that management rights clauses release is a union's right to demand bargaining over wages, hours, and working conditions. *Beverly Health & Rehab. Servs. V. NLRB*, 297 F.3d 468, 480 (6th Cir. 2002). Accordingly, the Unions do not waive or release any of *their members'* state law rights simply by virtue of agreeing to management rights clauses. This is also completely in alignment with the federal law governing waiver of statutory rights in CBAs in general. *14 Penn Plaza*

---

[15] While Plaintiffs maintain that *Miller* is distinguishable, they also maintain that there is a reasonable argument for modification or reversal of *Miller*. For example, Illinois State Courts have rejected a broad reading of *Miller*, noting that the relevant passage "was written without any citation to the record before the court or any decisional authority." *See Thomas v. KIK Custom Productions*, No. 19-CH-2471 (Cir. Ct. Cook Cnty., Dec. 19, 2019) (Ex. 4); *see also Watson v. Legacy Healthcare*, No. 18-CH-03425 (Cir. Ct. Cook Cnty., June 10, 2020) (Ex. 5); *Walton v. Roosevelt University*, No. 19-CH-04176 (Cir. Ct. Cook Cnty., May 5, 2020) (Ex. 6); and *Winters v. Aperion Care, Inc.*, No. 19-CH-06579 (Cir. Ct. Cook Cnty. Feb. 11, 2020) (Ex. 7). It appears that Illinois state courts give greater weight to the interest of the legislature in passing laws, while the Federal district courts, post-*Miller*, have given greater weight to the need for uniform interpretation of labor contracts. On the facts before this Court, where Defendants have not engaged with the text of their own labor contracts, there is no bar to this Court extending greater comity to the State of Illinois and its trial courts in the enforcement of a law of general application that does not, on its face, infringe upon any federally-regulated labor contract.

*LLC v. Pyett*, 556 U.S. 247, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009) (a CBA may require that statutory claims be resolved in arbitration, but only if the union clearly and unmistakably bargained for that position).

Accordingly, neither the conduct of the parties nor the management rights clauses themselves can provide a basis to claim that Defendants received the required "written releases," or that their state law claims are based on the CBAs. Thus, there is no §301 preemption under these facts and circumstances and Plaintiffs' Motion to Remand should be granted forthwith.

**V.      THE "HOME STATE" AND "LOCAL CONTROVERSY" EXCEPTIONS TO CAFA JURISDICTION CLEARLY INDICATE CAFA IS INAPPLICABLE TO THIS NOTICE OF REMOVAL PROCEEDING**

The statutory bases for both the "home state" and "local controversy" exceptions to CAFA jurisdiction are set forth right in the body of 28 U.S.C. §1332(d).  CAFA does not apply here.

**A.      THIS COURT MUST DECLINE TO EXERCISE CAFA JURISDICTION, EVEN ASSUMING IT EXISTED, UNDER THE "HOME STATE" EXCEPTION**

While not conceding that Defendants have established the minimal requirements for CAFA diversity of citizenship jurisdiction here, as Defendants speculate as to what effect possible changes in citizenship of a handful of Plaintiffs might or could have had, the Plaintiffs argue the obvious applicability of the "home controversy exception" to CAFA jurisdiction: A district court *shall decline* to exercise jurisdiction…where two-thirds or more of the members of the proposed classes in the aggregate, and the primary Defendants, are citizens of the State in which the action was originally filed.  28 U.S.C. §1332(d)(B). It is undisputed here that the overwhelming number of actual and potential class members are citizens of the State of Illinois. Plaintiffs defined their class in this manner. Defendants were aware of and acknowledged this in their Notice of Removal. Defendants acknowledged they were all Illinois citizens. [ECF 10, ¶14].

17

While attempting to establish the minimal requirements for CAFA diversity jurisdiction by arguing that predominantly Illinois class members may or may not include a handful of persons who had lived in Illinois but who have since moved out-of-state, Defendants demonstrated an awareness that at least 95% (and certainly greater than two-thirds) of the class members (their own employees) and all of the Defendant parties were Illinois citizens and that, therefore, this Court cannot accept jurisdiction under the CAFA "home controversy exception."  *See* HDSI and Kronos time system employee data produced by Defendant Symphony Sycamore, LLC, attached hereto as **Exhibits 8 and 9**.

B.      **THIS COURT MUST DECLINE TO EXERCISE CAFA JURISDICTION, EVEN ASSUMING IT EXISTED, UNDER THE "LOCAL CONTROVERSY" EXCEPTION**

For very similar reasons, Plaintiffs argue the obvious applicability of the "local controversy exception" to CAFA jurisdiction. Under the local controversy exception, a district court *shall decline* to exercise jurisdiction:

(i) over a class action in which–

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant–

(aa) from whom significant relief is sought by members of the plaintiff class;
(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3–year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.] (italics added).

28 U.S.C. § 1332(d)(4)(A)(i)(I)-(III).

At least 95% of the Plaintiffs' class are Illinois citizens and all of the Defendants are by admission Illinois citizens from which significant legal relief is being sought by all members of the Plaintiffs' class for Defendants' capturing, collecting, and use of the Plaintiffs' biometric information and identifiers in the State of Illinois.  The "local controversy" exception to CAFA jurisdiction applies and this Court cannot accept jurisdiction.

## VI.    **CONCLUSION**

The substantial majority of the causes of action that comprise this matter are not in any way subject to federal preemption or otherwise implicated by Defendant's removal motion, to wit: (1) all Plaintiffs' causes of action pursuant to §15(a) of BIPA (42 counts); (2) all claims brought against Maestro (8 counts); (3) all claims against the seven other non-CBA facility Defendants (56 counts); (4) all claims of the non-union Plaintiffs against all Defendants (169 counts); and (4) all those claims of the CBA Plaintiffs during times when a CBA was not in place (169 counts). At bottom, this BIPA class action—which asserts Illinois statutory claims involving statutory rights of Illinois citizens against Illinois corporations—rightfully belongs in an Illinois state court. Defendants' arguments in support of preemption distort the substance of Plaintiffs' state law claims and should be rejected by the Court. Finally, Defendants' untimely filing of their notice of removal provides a separate and independent basis for remanding this matter. For the reasons set forth herein, Plaintiffs respectfully move this Court to grant their Motion for Remand in its entirety.

Dated: September 30, 2020                    **THE DRISCOLL FIRM, P.C.**

                                   By:    */s/ Paul W. Johnson*
                                          John J. Driscoll, #6276464
                                          Paul W. Johnson, #6193774
                                          211 N. Broadway, Suite 4050
                                          St. Louis, Missouri 63012
                                          Phone: (314) 932-3232
                                          Fax: (314) 932-3233
                                          john@thedriscollfirm.com
                                          paul@thedriscollfirm.com

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that on September 30, 2020, the foregoing document was electronically filed with the Clerk of Court to be served by operation of the Court's CM/ECF system upon all counsel of record.


*/s/ Paul W. Johnson*