IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SAROYA ROBERSON, *et al.*,
Individually, and on Behalf of
All Others Similarly Situated,

      Plaintiffs,

v.

      Case No. 20-CV-00895-NJR

MAESTRO CONSULTING SERVICES
LLC, Individually and d/b/a Symphony
Post Acute Network, *et al.*,

      Defendants.

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Remand filed by Plaintiffs Saroya Roberson, Christa Hammond, Tonika Smith, Daphne Williams, Idella Hill, Olabisi Bodunde, Victoria Brewer, Alyssa Bendersky, Felecia Williams, Attla Dupree, and Jameea Boykin ("Plaintiffs") (Doc. 23). Also pending is Defendants' Motion to Dismiss (Doc. 18). For the reasons set forth below, Plaintiffs' Motion to Remand is denied, and Defendants' Motion to Dismiss is granted in part and denied in part.

## FACTUAL & PROCEDURAL BACKGROUND

On December 8, 2017, Plaintiff Roberson filed a Class Action Complaint against Symphony Sycamore LLC, and several related entities, in the Circuit Court for the Twentieth Judicial Circuit of St. Clair County, Illinois. Plaintiffs were employed by Defendants, a network of various nursing homes (Doc. 10-2). To track Plaintiffs' time and

attendance, Defendants collected, and Plaintiffs scanned, fingerprints or handprints for time and attendance purposes (Doc. 10-2, at ¶ 113).

On July 2, 2020, Plaintiff Roberson was granted leave to amend her complaint, adding ten new plaintiffs and seventeen new defendants. Nine of the new plaintiffs were union members during their respective tenures. The new defendants are allegedly part of the network of various nursing homes employed by named Plaintiffs and class members. Plaintiffs allege Defendants violated the Illinois Biometric Information Privacy Act (BIPA), 740 ILL. COMP. STAT. § 14/1 *et seq*. Specifically, Plaintiffs allege Defendants violated sections 15(a), 15(b)(1), 15(b)(2), 15(b)(3), 15(d), 15(e)(1), and 15(e)(2) of BIPA (Doc. 10-2).

Under BIPA, a private entity must establish and make publicly available a protocol for retaining and handling biometric data. 740 ILCS 14/15(a). This data must be destroyed "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." *Id*. A "private entity" must first inform the subject or "the subject's legally authorized representative" in writing about the purpose of collecting the data, how long the data will be kept, and obtain consent of the subject or authorized representative. 740 ILCS 14/15(b). Sales, leases, trades, or further actions in which a private entity may profit from a person's biometric information are prohibited. 740 ILCS 14/15(c). Disclosures, redisclosures, or other dissemination of a person's biometric information are statutorily limited. 740 ILCS 14/15(d). Finally, private entities must protect biometric information from disclosure using "the reasonable standard of

care within the private entity's industry . . . . [and] in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." 740 ILCS 14/15(e).

On September 2, 2020, Defendants removed the case to this Court, asserting that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1367 (Doc. 10). Specifically, Defendants assert that this Court has federal-question jurisdiction under 28 U.S.C. § 1331 because certain Plaintiffs' claims are preempted by the Labor Management Relations Act ("LMRA") (*Id*. at p. 3). Defendants also allege that because Plaintiffs are alleging the same facts in support of all the separate counts and that Defendants share a "common liability" based on those facts, Plaintiffs' claims for the alleged BIPA violations share a common nucleus, and this Court can properly exercise supplemental jurisdiction over Plaintiffs' non-union claims (*Id*. at p. 10). Defendants further allege that this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d).

On September 30, 2020, Plaintiffs moved to remand the case back to state court (Doc. 23). Defendants filed a memorandum in opposition to Plaintiffs' Motion to Remand on October 30, 2020 (Doc. 48). Defendants also filed a timely Motion to Dismiss, arguing that the First Amended Complaint fails to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 18).

## ANALYSIS

### I.    Plaintiffs' Motion to Remand

A defendant may remove any case from state court that a plaintiff could have filed

originally in federal court. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of demonstrating federal jurisdiction, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

A plaintiff may challenge removal by moving to remand the case back to state court. Remanding to state court is appropriate for (1) lack of district court subject matter jurisdiction or (2) a defect in the removal process. 28 U.S.C. §§ 1446, 1447(c); *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 625–26 (7th Cir. 2013).

**A.  *Timeliness***

Pursuant to 28 U.S.C. § 1446, a notice of removal of a civil action must be filed within thirty days after the defendant's receipt, through service or otherwise, of a copy of the initial pleading. Section (b)(3) further provides:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). The time limits in Section 1446 are mandatory, and the failure to comply with those limits bars removal. *N. Ill. Gas Co. v. Airco Indus. Gases, a Div. of Airco, Inc.*, 676 F.2d 270, 273 (7th Cir. 1982).

Plaintiffs contend that the thirty-day removal clock began to run on July 2, 2020, when Defendants' counsel was in possession of a formally approved amended pleading. The thirty-day removal clock does not begin to run, however, until a defendant is formally served with the complaint. *See Dultra v. U.S. Med. Home, Inc.*, 2014 WL 1347107,

at *3 (N.D. Ill. Apr. 4, 2014) ("[f]ormal service is required to trigger the 30–day clock, as the Supreme Court held 15 years ago in *Murphy Brothers v. Michetti Pipe Stringing*, 526 U.S. 344 (1999))"; *Dent v. Renaissance Mktg. Corp.*, 2014 WL 5465006, at *6 (N.D. Ill. Oct. 28, 2014) (same).

Here, the thirty-day clock began when Defendants were formally served with the First Amended Complaint on August 3, 2020. The Notice of Removal was filed on September 2, 2020, just within the thirty-day period. Accordingly, Defendants' Notice of Removal was timely.

## B. *Standing*

Article III of the Constitution limits the judicial power of federal courts to adjudicating "cases" and "controversies." *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 597 (2007). "One of the controlling elements in the definition of a case or controversy under Article III is standing." *Id.* (internal quotations, citations, and alterations omitted). "[T]he irreducible constitutional minimum of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). A plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) is redressable by the Court. *Id.*

"[T]he Supreme Court made [it] 'crystal clear' in *Spokeo*, 'Article III standing requires a concrete injury even in the context of a statutory violation.'" *Fox v. Dakkota Integrated Sys., LLC*, 2020 WL 6738112, at *4 (7th Cir. Nov. 17, 2020) (quoting *Spokeo*, 136 S. Ct. at 1549). A statutory violation, with an intangible harm, satisfies the injury-in-fact requirement, when it presents "an 'appreciable risk of harm' to the underlying concrete

interest [the legislature] sought to protect by enacting the statute." *Bryant v. Compass Grp.*

*USA, Inc.*, 958 F.3d 617, 621 (7th Cir. 2020) (quoting *Groshek v. Time Warner Cable, Inc.*, 865

F.3d 884, 887 (7th Cir. 2017)); *see also Fox*, 2020 WL 6738112 at *4 ("[t]o determine whether

an intangible harm satisfies the injury-in-fact requirement in a statutory case, both the

legislature's judgment and historical judicial practice 'play important roles'").

    i.      *Article III Standing for Plaintiffs' Section 15(a) Claims*

        Plaintiffs assert that their section 15(a) claims must be remanded for lack of Article

III standing. Four recent BIPA cases hold the keys to this question. *See Fox*, 2020 WL

6738112 at *4 (noting "[t]hree recent BIPA cases hold the keys to the standing question").

In the first case, *Miller v. Sw. Airlines Co.*, 926 F.3d 898 (7th Cir. 2019), the Court concluded

that the union employees' sections 15(a) and 15(b) claims were concrete injuries sufficient

to confer Article III standing because the collection and use of biometrics for employee

timekeeping is a subject of collective bargaining. *Id.* at 902. In the second case, *Patel v.*

*Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019), the Ninth Circuit recognized that the Illinois

statute gives individuals the "right not to be subject to the collection and use of [his or

her] biometric data." *Id.* at 1274. As a result, the section 15(a) claims, the failure to

maintain data retention and destruction protocols of users' biometric data, and section

15(b) claims, the failure to obtain informed consent before collecting users' biometric

data, were sufficient to confer Article III standing because the BIPA claims "actually

harm[ed] or pose a material risk of harm to those privacy interests." *Id.* at 1275.

        The third case, *Bryant*, 958 F.3d 617, unlike *Miller*, did not involve a unionized

employee or even an employee suing her employer. Additionally, unlike the section 15(a)

claims in *Patel*, the section 15(a) claims in *Bryant* were limited to defendants not making their data-retention schedule and data-destruction guidelines publicly available. *Bryant*, 958 F.3d at 619. The Court held that this type of 15(a) violation was insufficiently particularized to support Article III standing because "[it] is owed to the public generally, not to particular persons whose biometric information the entity collects." *Id*. at 626.

The fourth case, *Fox*, 2020 WL 6738112 at *6-7, further clarified when section 15(a) claims have standing under Article III. In *Fox*, a plaintiff filed a proposed class action in state court alleging that "her former employer, collected, used, retained, and disclosed her handprint for its timekeeping system." *Id*. at *1. The defendants removed the case under CAFA. *Id*. Relying on *Bryant*, the district court held the section 15(a) claims lacked Article III standing and remanded the section 15(a) claims to state court. *Id*.

On appeal, the Seventh Circuit pointed out that unlike *Bryant*, "[plaintiff's] section 15(a) claim does not allege a mere procedural failure to publicly disclose a data-retention policy." *Id*. The Seventh Circuit explored the legislature's judgment to expressly condition lawful *collection* of biometric data on informed consent in section 15(b) and the legislature's judgment to expressly condition lawful *retention* of biometric data on the continuation of the initial purpose for which the data was collected in section 15(a). *Id*. at *7. By exploring the legislature's judgment in sections 15(a) and 15(b), and three recent BIPA cases—*Miller, Patel*, and *Bryant*—the Court concluded "an unlawful *retention* of a person's biometric data is as concrete and particularized an injury as an unlawful *collection* of a person's biometric data." *Id*. "If the latter qualifies as an invasion of a 'private domain, much like an act of trespass would be,'[ ] then so does the former." *Id*.

(quoting *Bryant*, 958 F.3d at 624). Accordingly, the Court in *Fox* held that the plaintiff's section 15(a) claims were sufficient to plead an injury in fact for purposes of Article III standing.

Although *Fox* is distinguishable on multiple fronts, *Fox* controls the Court's decision with respect to Plaintiffs' section 15(a) claims. One difference is the complaint in *Fox* contained all the section 15(a) claims in the same count, but Plaintiffs' section 15(a) claims are in separate counts. Another difference is the named plaintiff in *Fox* was represented by a union. Here, a few of the named Plaintiffs were not union members during their tenure with Defendants.

Plaintiffs' separate counts for the section 15(a) claims both plead an injury in fact for purposes of Article III standing. Plaintiffs' first count against each Defendant is titled "Violation of 740 ILCS 14/15(a) Failure to Properly Establish Publicly-Available Policy" (Doc. 10-2). Plaintiffs allege "[Defendants] did not properly develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information was satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurred first" (Doc. 10-2 ¶¶ 131, 139, 189, 197, 247, 255, 305, 313, 363, 371, 421, 429, 479, 487, 537, 545, 595, 603, 653, 661, 711, 719, 769, 777, 827, 835, 885, 893, 943, 951, 1001, 1009, 1059, 1067, 1117, 1125, 1175, 1183, 1233, 1241, 1291, 1299). This is more than the mere procedural failure to publicly disclose a data-retention policy in *Bryant*. Instead, it is more like the

section 15(a) claims alleged in *Patel*.[1] Plaintiffs' second count against each Defendant is titled "Violation of 740 ILCS 14/15(a) Failure to Comply with Established Retention Schedule and Destruction Guidelines"(Doc. 10-2). Specifically, Plaintiffs allege that "[Defendants] did not *comply with* its established retention schedule and destruction guidelines" (Doc. 10-2) (emphasis added). This is also more than the mere procedural failure to publicly disclose a data-retention policy.

The straightforward application of *Fox* is not impacted because two of the eleven named Plaintiffs were non-union members during their tenure with Defendants. In *Fox*, the Court did not merely rely on *Miller* to determine standing. Rather, the Court discussed *Miller* and other nonemployment cases to clarify when section 15(a) claims have standing under Article III. The Court confirmed that the plaintiffs in *Fox* had Article III standing aside from a "straightforward application of *Miller*." *Id*. at *7-8.

The critical issue in *Fox* is the same here. In *Fox*, the Court explained that "[t]he BIPA requirement to implement data retention and destruction protocols protects a person's biometric privacy just as concretely as the statute's informed-consent regime." *Id*. at *7. As a result, a "[plaintiff] alleges a concrete and particularized invasion of her privacy interest in her biometric data stemming from [defendant's] violation of the full panoply of its section 15(a) duties—the duties to develop, publicly disclose, *and comply with* data retention and destruction policies—resulting in the wrongful retention of her

---

[1] In *Patel*, the section 15(a) claims were the failure to maintain data retention and destruction protocols of users' biometric data. *Patel*, 932 F.3d at 1274. Of course, *Patel* is not binding. In *Fox*, however, the Seventh Circuit not only analyzed *Patel*, but also recognized it as one of the "[t]hree recent BIPA cases [that] hold the keys to the standing question." *Fox*, 2020 WL 6738112 at *4.

biometric data after her employment ended, beyond the time authorized by law." *Id*. at *1 (emphasis added). Similarly, Plaintiffs allege a concrete and particularized invasion of their privacy interests in their biometric data stemming from Defendants' violation of the full range of its section 15(a) duties resulting in the wrongful retention of their biometric data after Plaintiffs' employment ended.

Accordingly, Plaintiffs' section 15(a) claims are sufficient to plead an injury in fact for Article III standing.

    ii.    *Article III Standing for Plaintiffs' Sections 15(b)(1), (b)(2), (b)(3), (d), (e)(1), (e)(2) Claims*

"As a jurisdictional issue, the Court has a responsibility to address standing *sua sponte*." *Snider v. Heartland Beef, Inc.*, 2020 WL 4880163, at *2 (C.D. Ill. Aug. 14, 2020) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)).

The Seventh Circuit has already assessed standing for section 15(b) claims. In *Bryant*, 958 F.3d at 626, the Court reasoned that "the informed-consent regime laid out in section 15(b) is the heart of BIPA" and that "its purpose is to ensure that consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." As a result, failure to adhere to section 15(b)'s informed-consent regime inflicts a concrete injury because the relevant information is "substantive and personal" and, "[e]quipped with the missing information," a person might opt to forgo use of the relevant device. *Id*.

Plaintiffs have Article III standing to pursue their section 15(b) claims under a straightforward application of *Bryant*. Plaintiffs' alleged section 15(b) injury is concrete

and particularized for the reasons summarized above: Defendants allegedly failed to provide Plaintiffs with information about the collection, storage, and use of their fingerprint data, and armed with this information, Plaintiffs may have chosen to forgo the timekeeping system.

The Seventh Circuit has not addressed Article III standing for claims under section 15(d), but at least two district courts in this circuit have found that a plaintiff's claims under section 15(d) satisfy Article III's injury-in-fact requirement. In *Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 613 (N.D. Ill. 2020), the court reasoned that "[s]ection 15(d) requires entities to obtain a person's consent when disclosing or disseminating an individual's biometric data." The court continued acknowledging that "[s]ection 15(d) forms a piece of the 'informed-consent regime' at the heart of BIPA." *Id.* As a result, the court held that informational injury the plaintiff suffered was concrete because "the relevant information—that [plaintiff's employer] planned to disseminate [plaintiff's] data to third parties—is personal and substantive and would have provided [plaintiff] an opportunity to object to the way her data was being handled or to opt out of the system entirely." *Id.*; *see also Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 781–83 (N.D. Ill. 2020) ("[w]ith both [section 15(b) and section 15(d)] claims, Plaintiffs were denied an opportunity to withhold their consent to the collection or dissemination of their data . . . . Under *Crabtree*, the denial of that opportunity is sufficiently concrete to confer standing. . . .").

Here, Plaintiffs allege Defendants are private entities that collect biometric information from employees, and Defendants "disclosed, redisclosed, or disseminated

the biometric information of plaintiffs and the class members to, through, and/or among others, including but not limited to other [Defendants'] entities or persons associated with [Defendants]" (Doc. 10-2). Applying the reasoning and analysis of *Cothron*, Plaintiffs have Article III standing to pursue their section 15(d) claims.

Plaintiffs also have Article III standing to pursue their section 15(e) claims. The analysis provided in *Fox* suggests that Plaintiffs' alleged injuries from section 15(e) violations satisfy Article III's injury-in-fact requirement. In *Fox*, the Court explored the legislature's judgment in sections 15(a) and 15(b), and three recent BIPA cases—*Miller*, *Patel*, and *Bryant*—and concluded "an unlawful *retention* of a person's biometric data is as concrete and particularized an injury as an unlawful *collection* of a person's biometric data." *Id*. at *7. Section 15(e) requires private entities *retaining* a person's biometric data to protect biometric information from disclosure using "the reasonable standard of care within the private entity's industry . . . [and] in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." 740 ILCS 14/15(e). Framed this way, section 15(e) forms a piece of the *retention* regime. Like their section 15(a) claims, the concrete injury suffered by Plaintiffs was the unlawful *retention* of their biometric data by Defendants because Defendants allegedly failed to *comply* with the standard of care within their industry and in a manner that is the same or more protective than the manner in which Defendants store, transmit, and protect other confidential and sensitive information. 740 ILCS 14/15(e).

## C. *Subject Matter Jurisdiction*

Federal courts "possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (7th Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). District courts have subject matter jurisdiction only in cases that raise a federal-question and cases in which there is diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331–32. Unless Plaintiffs' case falls into one of these two categories, this Court must remand.

### i. *Jurisdiction Under Class Action Fairness Act*

Defendants removed this case under 28 U.S.C. § 1332(d), alleging that this Court has subject matter jurisdiction under CAFA. "[T]he party asserting federal jurisdiction under CAFA must establish that the requirements of § 1332(d) are satisfied." *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). "To meet this burden, a defendant seeking to remove to federal court must file in the district court a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Id.* (quoting 28 U.S.C. § 1446(a)). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). The Supreme Court explained that "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the 'pleading' requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'" *Id.* (alteration in original) (quoting H.R. Rep. No. 100–889, p. 71 (1988)).

"A federal court's jurisdiction under CAFA is determined at the time of removal." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011) (citing *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010)). Under CAFA, federal courts have jurisdiction over cases in which (1) the class consists of 100 or more members, *see* 28 U.S.C. § 1332(d)(5)(B); (2) any plaintiff is a citizen of a state different from that of any defendant, 28 U.S.C. § 1332(d)(2)(A); and (3) the aggregate amount of the plaintiffs' claims exceeds $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(6).

Defendants established, at the time of removal, the requirements for jurisdiction under CAFA. Minimal diversity exists because Defendants are organized under the laws of Illinois and maintain their principle places of business in Illinois (Doc. 10, p. 11),[2] and Defendants allege "at least one putative class member—either all or some of the ones with non-Illinois addresses mentioned [ ], or an employee or former employee [of] one of the other Defendants—is diverse from the Defendants, which at this stage of the proceedings is sufficient to satisfy minimum diversity" (*Id*. at p. 14).[3] The proposed class involves more than the requisite 100 members, as Plaintiffs allege that the putative class

---

[2] CAFA states that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).

[3] Residency is not equivalent to citizenship. *See Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014) ("[c]itizenship means domicile (the person's long-term plan for a state of habitation) rather than just current residence"). Here, however, Defendants did not merely allege residency. Defendants used addresses to explain why they believed class members were citizens outside of Illinois. *See* Doc. 10, pp. 13-14. Defendants did not need to explain why they believed class members were citizens outside of Illinois. A defendant's allegations of citizenship may be based solely on information and belief. *See Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) (noting that an allegation "even if only 'on information and belief,' that a specific member of the putative class had 'a particular state of citizenship'" may be preliminarily accepted as a basis for subject matter jurisdiction).

includes "hundreds or thousands of members" (Doc. 10-2, p. 32). As to the amount in controversy, Plaintiffs allege "an amount less than $75,000.00" for each member (Doc. 10-2, p. 27). At the same time, Plaintiffs are seeking statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2) and damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1). Given the size of the class (more than 552 workers),[4] the number of causes of action under BIPA (169 counts), and the penalties provided by state law—the amount in controversy meets the required threshold.

Instead of contesting that the parties to this action are minimally diverse or that the amount in controversy exceeds $5 million, Plaintiffs argue that the "home-state controversy" and "local controversy" exceptions apply. Under both exceptions, Plaintiffs have the burden of persuasion on whether two-thirds or more of the members of the proposed class and the primary defendants are citizens of the original filing state. *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 681 (7th Cir. 2006); 28 U.S.C. § 1332(d)(4)(A)-(B).[5]

Defining the class to include only "Illinois citizens" whose biometric data was captured by Defendants is not helpful. *See Myrick v. WellPoint, Inc.*, 764 F.3d 662, 665 (7th

---

[4] Plaintiffs stated in a state appellate court filing that the class includes "a minimum of 552 workers" (Doc. 10-17, p. 4).

[5] Under the "local controversy" exception, a plaintiff has the burden of persuasion on three additional requirements: (1) at least one defendant is a defendant from whom members of the proposed plaintiff class seek significant relief, whose alleged conduct forms a significant basis of the asserted claims, and who is a citizen of the original filing state; (2) the principal injuries were incurred in the original filing state; and (3) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of the case. 28 U.S.C. § 1332(d)(4)(A); *Hart*, 457 F.3d at 681.

Cir. 2014) (noting "plaintiffs needed to produce some evidence that would allow the court to determine the class members' citizenships on the date the case was removed"); *but see In re Sprint Nextel Corp.*, 593 F.3d 669, 676 (7th Cir. 2010) (acknowledging that "plaintiffs could have guaranteed that the suit would remain in state court" if "the plaintiffs might have defined their class as all Kansas citizens who purchased text messaging from Sprint Nextel or an alleged coconspirator").

Plaintiffs fail to meet their burden for this Court to find that two-thirds of the class members are Illinois citizens. Plaintiffs only provide time system employee data produced by **one defendant** and claim that "[a]t least 95% of the Plaintiffs' class are Illinois citizens and all of the Defendants are by admission Illinois citizens from which significant legal relief is being sought by all members of the Plaintiffs' class for Defendants' capturing, collecting, and use of the Plaintiffs' biometric information and identifiers in the State of Illinois" (Doc. 23, p. 24). Plaintiffs "ignore the potential non-Illinois citizens employed by the newly named Defendants with facilities in the Chicagoland area" (Doc. 48, p. 22). The number of class members also remains unclear.

Accordingly, jurisdiction exists by way of CAFA because Plaintiffs fail to carry their burden of persuasion on whether two-thirds or more of the members of the proposed plaintiff class and the primary defendants are citizens of the original filing state.

 ii.  *Jurisdiction as to Union Members' Claims Under Federal-Question Jurisdiction*

Defendants also removed this case under 28 U.S.C. § 1331, arguing that Plaintiffs' claims regarding union members are preempted by Section 301 of the LMRA. Plaintiffs counter that their state law BIPA claims are neither preempted by the NLRA nor the

LMRA because their complaint makes no reference to any federal statute, law, collective bargaining agreement, or union affiliation (Doc. 23).

Section 301 preempts "claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Gray v. University of Chicago Medical Center, Inc.*, 2020 WL 1445608, at *2 (N.D. Ill. Mar. 25, 2020) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). "If the resolution of a state law claim depends on the meaning of, or requires interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996).

Plaintiffs' claims regarding union members are preempted by Section 301 of the LMRA under a straightforward application of *Miller*. To be sure, the Seventh Circuit explained:

> [T]here can be no doubt that how workers clock in and out is a proper subject of negotiations between unions and employers — is, indeed, a mandatory subject of bargaining.
>
> * * *
>
> A state cannot remove a topic from the union's purview and require direct bargaining between individual workers and management. And Illinois did not try. Its statute provides that a worker *or an authorized agent* may receive necessary notices and consent to the collection of biometric information.
>
> * * *
>
> [O]ur plaintiffs assert a right in common with all other employees, dealing with a mandatory subject of bargaining. *It is not possible even in principle to litigate a dispute about how an air carrier acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf* . . . . [I]f a dispute necessarily entails interpretation or administration of a collective bargaining agreement, there's no room for individual employees to sue under state law — in other words, state law is preempted to the extent that a state has tried to overrule the union's choices on behalf of the workers.

*Id.* at 903-4 (emphasis added) (concluding "[defendant] was entitled to remove the suit to federal court under federal-question jurisdiction").

Here, Plaintiffs allege that Defendants violated BIPA when they utilized "a finger or hand print reader/scanner for the purposes of measuring workers' time and attendance" as "a primary method to 'clock-in' at one or more of the subject Illinois locations" (Doc. 10-2, ¶ 113). Plaintiffs further allege that Defendants "are not first informing employees in writing that their biometric information is or will be collected and stored; they are not first informing employees in writing of the specific purpose and length of term for which their respective biometric identifiers or biometric information will be collected, stored, and/or used; nor are they first securing written releases from each respective employee." (*Id.* at ¶ 114).

Plaintiffs attempt to distinguish *Miller* and argue that it does not apply because *Miller* involved the RLA which solely governs the relationship between management and labor in the air and rail industries. This misses the critical issue. The fact that *Miller* addressed "common carriers" or analyzed the RLA is insignificant. Rather, "[t]he rule and reasoning of *Miller* apply to the LMRA because the RLA preemption standard is 'virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA.'" *Gray*, 2020 WL 1445608 at *3 (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994)).[6]

---

[6] Indeed, the Seventh Circuit in *Fox*, 2020 WL 6738112, suggested that *Miller* leads to a straightforward conclusion regarding preemption. *See id.* at *8 (remanding the issue of whether a union member's BIPA claim was preempted by the LMRA because the district judge did not address the issue and the parties did not brief it, but acknowledging that "the answer appears to flow directly from *Miller*").

Plaintiffs also argue that "§ 301 'complete preemption' applies with force where state laws create a risk of *taking away* employee rights provided by collective bargaining or becoming entangled in the collective bargaining process, *not* when state laws *add* rights that are independent of the agreement, such as the biometric information privacy protection afforded by BIPA" (Doc. 23, p. 17). This argument is unpersuasive, as district courts within this circuit have consistently found that BIPA claims from unionized employees are preempted by federal labor law. *See e.g., Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202, at *3 (N.D. Ill. Feb. 26, 2020) (concluding that under *Miller,* a union member's BIPA claims from its timekeeping system "require interpretation of the CBA so that § 301 preempts her post-May 8, 2018 claims"); *Gray*, 2020 WL 1445608, at *4 (noting "Seventh Circuit's guidance makes clear" that union member's BIPA claims from a medication dispensing machine "require interpretation of the CBA—at the very least its management rights clause"); *Darty v. Columbia Rehab. & Nursing Ctr., LLC*, 468 F. Supp. 3d 992, 995 (N.D. Ill. 2020) (acknowledging that "courts in this district have consistently found federal preemption by Section 301 of the LMRA in similar BIPA cases"); *Williams v. Jackson Park SLF, LLC*, 2020 WL 5702294, at *3 (N.D. Ill. Sept. 24, 2020) (disagreeing with plaintiff's contention "that his claim should not be preempted because the union cannot waive his statutory privacy rights under BIPA" and acknowledging that this was directly addressed in *Miller* "when it held that BIPA's text allows authorized agents, such as unions, to act on members' privacy rights"); *Hernandez v. True World Foods Chicago, LLC*, 2020 WL 7027727, at *2 (N.D. Ill. Nov. 30, 2020) ("[d]istrict courts within this circuit have uniformly followed *Miller* and have found that BIPA claims from unionized employees

are preempted by federal labor law"); *Fernandez v. Kerry*, Inc., 2020 WL 7027587, at *4-5 (N.D. Ill. Nov. 30, 2020) (applying *Miller* and noting that "at least three courts within this District have examined the similarity of the RLA and LMRA preemption standards and have held that *Miller* applies to nearly identical BIPA claims, which are preempted by the LMRA").

Plaintiffs also note that there is no basis to find that the unions provided "written releases" to Defendants and the "CBAs are silent as to biometric-based timekeeping, BIPA, and Plaintiffs' rights and Defendant's obligations under it" (Doc. 23, pp. 18-22). These arguments are likewise unavailing. As explained in *Hernandez*, 2020 WL 7027727 at *3, "plaintiffs' arguments regarding whether the union provided a waiver or a written release necessarily require interpretation of the CBA and the union's authority thereunder, thus leading to preemption." In fact, *Miller* addressed the impact of CBAs being silent as to biometric information and held that "[w]hether [defendant's] unions *did* consent to the collection and use of biometric data, or perhaps grant authority through a management-rights clause, is a question for an adjustment board." *Miller*, 926 F.3d at 903; *see Williams*, 2020 WL 5702294 at *3 (acknowledging that "neither the CBA in the present case or the *Miller* case mentioned biometric information. But the *Miller* Court also addressed this question when it determined that whether the CBA management rights clause gave rise to consent regarding biometric data is a question for an adjustment board").

Rather than following binding precedent and persuasive authority from district courts within this circuit, Plaintiffs ask the Court to adopt the reasoning of four state court

decisions. *See* Doc. 23, p. 21 (citing *Thomas v. KIK Custom Productions,* No. 19-CH-2471 (Cir. Ct. Cook Cnty., Dec. 19, 2019); *Winters v. Aperion Care Inc.*, 19-CH-6579 (Ill. Cir. Ct. Feb. 11, 2020); *Walton v. Roosevelt University*, 19-CH-04176 (Ill. Cir. Ct. May 5, 2020); *Watson v. Legacy Healthcare*, No. 18-CH-03425 (Cir. Ct. Cook Cnty., June 10, 2020)). Of course, unlike this Court, Illinois state courts are not bound by Seventh Circuit precedent. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (district judges must follow the decisions of the Seventh Circuit whether or not they agree).

Significantly, two of the state court decisions, *Thomas* and *Winters*, were decided before *Williams*, *Gray*, or *Peatry* were issued. This is significant, because the state courts "did not have the benefit of the district courts' application of *Miller*'s holding to preemption under the LMRA." *Fernandez*, 2020 WL 7027587 at *6. "In distinguishing *Miller*, *Walton* merely adopted the reasoning of *Winters*." *Id*. As for *Watson*, the most recent case, it merely reinforces the fact that Illinois state courts are not bound by Seventh Circuit precedent. *See Watson*, No. 18-CH-03425 at *7 (holding that "the Court respectfully declines to follow the nonbinding Seventh Circuit case of *Miller*" and "the Northern District of Illinois cases that followed it . . . .").

Accordingly, this Court finds that there is subject matter jurisdiction over the union claims.

iii.   *Jurisdiction as to Non-Union Claims Under Supplemental Jurisdiction*

Plaintiffs do not contest or note any issue of supplemental jurisdiction over the non-union claims. District courts "may exercise supplemental jurisdiction over state law claims that share 'a common nucleus of operative facts' with a federal claim properly

before the court." *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015); 28 U.S.C. § 1367.

Here, the claims of all non-union class members are based on a common nucleus of operative facts as the union class members. Both focus on Defendants using a fingerprint scanner for the purposes of measuring time and attendance and Defendants failing to inform employees in writing that their biometric information was being collected or stored (Doc. 10-2, ¶¶ 113-114). Because this Court has subject matter jurisdiction over the union class members claims, the Court finds it appropriate to exercise supplemental jurisdiction over the remaining non-union claims.

## I.    Defendants' Motion to Dismiss for Lack of Jurisdiction

To survive a motion seeking dismissal under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must "'clearly . . . allege facts demonstrating' each element" required to establish he or she has standing. *See Spokeo*, 136 S.Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). The "irreducible constitutional minimum" of standing requires a showing that a plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*.

Whether a defendant argues that a complaint fails to (1) properly state a claim, or (2) properly plead the elements of standing, courts apply the same analysis. *See Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015). The factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted); *see also Warth*, 422 U.S. at 501 ("trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party"). Complaints that contain only "naked assertion[s] devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Further, courts "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). On the other hand, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [during the pleading stage] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 889 (1990)).

Defendants seek dismissal of the union members' claims under 12(b)(1) because they are preempted by the LMRA. Section 301, as discussed above, preempts the union members' claims. Accordingly, Defendants' 12(b)(1) Motion to Dismiss the union members' claims is granted.

## II.    Defendants' Motion to Dismiss for Failure to State a Claim

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule

12(b)(6) motion to dismiss, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570. A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

### A.  *BIPA Consent Forms*

Defendants argue that Plaintiffs Tonika Smith, Daphne Williams, Olabisi Bodunde, Victoria Brewer, and Alyssa Bendersky ("Consenting Plaintiffs") have no claim because each of these Plaintiffs signed a BIPA Consent Form. This Court disagrees.

A district court may consider documents attached to the pleadings without converting a motion to dismiss into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *see Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 504 (7th Cir. 1998) (noting that "[defendant's] [a]ffidavits are not properly considered in deciding upon a motion under Rule 12(b)(6) unless the district court converts the motion into one for summary judgment under Rule 56"). The BIPA Consent Forms provided by Defendants are not attached to the Complaint. Defendants argue, however, that these BIPA Consent Forms are central to Plaintiffs' claims because the First Amended Complaint squarely references Defendants' time-keeping policy, "[b]ut yet the Amended Complaint fails to attach the time-keeping policy that the Consenting Plaintiffs

acknowledged receiving, even though it is central to their claims" (Doc. 19, p. 19). *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) (noting that "[a] motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice").

Besides the First Amended Complaint referencing Defendants' time-keeping policy, the Complaint alleges the following:

> At no time during [their] employment [were] [Plaintiffs] informed in writing that [their] biometric information was being collected or stored or of the specific purpose and length of term for which [their] biometric information was being collected, stored, and used. At no time did [Plaintiffs] execute a writing releasing or permitting Maestro or the other Defendants to utilize [their] biometric information. [Plaintiffs] [were] never provided with a publicly available written policy regarding a schedule or guideline for the retention and permanent destruction of [their] biometric information.

(Doc. 10-2). Plaintiffs further allege that Defendants' "collection and storage of the plaintiffs' and class member's biometric data was done without *properly informing* the plaintiffs and class members in writing that a biometric identifier or biometric information was being collected or stored" (Doc. 10-2) (emphasis added). Plaintiffs are also alleging that Defendants "collection and storage of the Plaintiffs' and class members' biometric data was systematic and done without first obtaining the written release required by 740 ILCS 14/15(b)(3)" (Doc. 10-2).

To properly inform, *before* collecting, capturing, purchasing, receiving through trade, or otherwise obtaining the subject's biometric information, Defendants must *first* inform the subject or the subject's legally authorized representative in writing that

biometric information is being collected or stored, the specific purpose, and the length in which the biometric information is being collected, stored, and used. 740 ILCS 14/15 (b)(1)-(2). Additionally, *before* collecting, capturing, purchasing, receiving through trade, or otherwise obtaining the subject's biometric information, Defendants must *first* obtain a written release. 740 ILCS 14/15 (b)(3).

The Consenting Plaintiffs' section 15(b) claims are not rendered false by the signed BIPA Consent Forms. While the BIPA Consent Forms are dated, Defendants have not shown that Plaintiffs were informed and consented before their biometric information was collected (Doc. 19-1, pp. 179, 181, 260, 299, 330). Even if Defendants provided appropriate documents showing that Plaintiffs were informed and consented before their biometric information was collected, this would potentially only impact the Consenting Plaintiffs' claims regarding their sections 15(b) and 15(d) claims. Defendants fail to show how the Consenting Plaintiffs' remaining BIPA claims would be impacted.

Accordingly, Defendants' Motion to Dismiss the Consenting Plaintiffs' claims is denied.

## B. *Plaintiffs' Pleadings*

Defendants assert that all of Plaintiffs' claims must be dismissed because the "substantive allegations are directed against all 'Defendants' *en masse* . . . and, in any event, none of the substantive allegations identifies what each particular Defendant did to plausibly warrant liability as to each particular Plaintiff" (Doc. 19).

Under BIPA, however, "[a]ny person aggrieved by a violation" has a private right of action. 740 ILCS § 14/20. In *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1206

(Ill. 2019), the Illinois Supreme Court explained "when a private entity fails to comply with one of [s]ection 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." "The violation, in itself, is sufficient to support the individual's or customer's statutory cause of action." *Id.*

Illinois Supreme Court precedent binds this Court. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) ("the task of the federal court sitting in diversity is to ascertain the substantive content of state law as it [] has been determined by the highest court of the state"). Plaintiffs need not allege anything "beyond violation of his or her rights under the Act, in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief[.]" *Rosenbach*, 129 N.E.3d at 1207. Indeed, all Plaintiffs must do is allege that Defendants collected, captured, purchased, received or obtained their fingerprints without complying with BIPA's requirements. Accordingly, for purposes of a 12(b)(6) motion, Plaintiffs pled sufficient facts to state a cause of action against Defendants.

**C.  *Plaintiffs' Claims for Statutory Damages***

Defendants also argue that the Illinois Workers' Compensation Act ("IWCA") bars employees from recovering statutory damages against their employers under BIPA for their workplace injuries. Defendants rely on a 62-year-old Illinois Supreme Court case, *Gannon v. Chicago, M., St. P. & P. Ry. Co.*, 150 N.E.2d 141 (Ill. 1958), for this point. The Court in *Gannon* held "Section 5(a) bars a common-law action by an employee against his employer for injuries received in the cause of his employment, and it also bars a statutory

action against his employer . . . ." *Id.* at 143.

Significantly, *Gannon* does not touch on the four exceptions to the IWCA's exclusivity bar. IWCA is not the exclusive remedy when the employee establishes that the injury "(1) was not accidental, (2) did not arise from his or her employment, (3) was not received during the course of employment or (4) was noncompensable under the Act." *Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 202 (Ill. 1980). Defendants argue that Plaintiffs' alleged injuries are "accidental" for purposes of determining whether the IWCA bars Plaintiffs' BIPA claims (Doc. 19, p. 23). Defendants explain that courts construe the term "accidental" broadly (*Id.*). Defendants also argue that Plaintiffs' BIPA injuries are compensable under the IWCA (*Id.*). As a result, Defendants assert that the IWCA bars Plaintiffs' statutory damages simply because Plaintiffs' alleged injuries arose out of their employment. To support this argument, Defendants point out that the Illinois Supreme Court did not limit or narrow IWCA's exclusivity bar in *Pathfinder Co. v. Indus. Comm'n*, 343 N.E.2d 913 (Ill. 1976), *Collier*, 408 N.E.2d 198, *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222 (Ill. 1990), and *Folta v. Ferro Eng'g*, 43 N.E.3d 108 (Ill. 2015).

Defendants fail to point out that more than 50 years after *Gannon*, in *Folta*, the Illinois Supreme Court explained that the inquiry of whether an injury is exclusively compensable under the IWCA is not simply whether "[a] plaintiff's injuries arose out of or in the course of his [or] [her] employment." *Folta*, 43 N.E.3d at 114. Rather, the Court "refined [its] inquiry as to what is meant by compensable by considering whether an employee was covered under the Act where the essence of the harm was a psychological disability, and not a traditional physical injury." *Id*. In other words, Illinois courts

consider the character of the injury when determining whether the compensability exception applies.

Contrary to Defendants' assertions, recent state court rulings are not attempting to create a new exception from the IWCA. Rather, the Illinois Supreme Court in *Folta* summarized the development of the compensability exception and explained that "*Pathfinder*, *Collier* and *Meerbrey* stand for the proposition that whether an injury is compensable is related to whether the type of injury categorically fits within the purview of the [IWCA]." *Id*. at 114.

Blindly applying *Gannon* and relying on the rulings in *Pathfinder*, *Collier* and *Meerbrey* — which held psychological injuries were exclusively compensable under the IWCA — would be imprecise. Psychological injuries can be exclusively compensable under the IWCA, but "courts have generally required that the psychological injury stem from 'a sudden, severe emotional shock traceable to a definite time, place and cause.'" *Cothron*, 467 F. Supp. 3d at 616 (quoting *Pathfinder Co.*, 343 N.E.2d at 917).[7]

The Supreme Court of Illinois proposed a more general "test for whether an employee suffered a compensable injury" — "'whether there was a harmful change in the *human organism* — not just its bones and muscles, but its brain and nerves as well.'"

_____

[7] *Gannon* and the other cases cited by Defendants all involved physical injuries to a plaintiff's body. *See Vacos v. La Salle Madison Hotel Co.*, 159 N.E.2d 24 (Ill. App. Ct. 1959) (declining to allow a claim under the Dram Shop Act when two patrons became "so intoxicated, engaged in a scuffle, fight or brawl and fell against [plaintiff], causing severe injuries); *Copass v. Illinois Power Co.*, 569 N.E.2d 1211 (Ill. App. Ct. 1991) (injury was a result of the explosion); *Carey v. Coca-Cola Bottling Co. of Chicago*, 363 N.E.2d 400, 402 (Ill. App. Ct. 1977) (holding that the employee, who fell when a ladder slid out from under him, may not recover under the Structural Work Act because the "employee is covered by the Workmen's Compensation Act and recovery is had thereunder").

*Treadwell v. Power Sols. Int'l, Inc.*, 427 F.Supp.3d 984 (N.D. Ill. 2019) (emphasis in original) (quoting *Pathfinder*, 343 N.E.2d at 918). Multiple district courts in this circuit have used the test in *Pathfinder* to find that BIPA injuries are not compensable under the IWCA—even when employees' alleged injuries originate from their employment. *See Peatry,* 2020 WL 919202 at *6 ("adopt[ing] the reasoning from *Treadwell* and agree[ing] that, under the current case law, the IWCA does not cover the injury [a] [former] [employee] alleges—the invasion of her privacy rights"); *Cothron*, 467 F. Supp. 3d at 616 (concluding that "[employee's] injuries stemming from alleged BIPA violations are not preempted by the IWCA"); *Lenoir v. Little Caesar Enterprises, Inc.*, 2020 WL 4569695, at *4 (N.D. Ill. Aug. 7, 2020) (denying argument that former employees where "'necessarily claiming a workplace injury' by alleging that they experienced emotional distress as a result of Defendant's BIPA violations, and therefore their 'exclusive remedy' is through the IWCA"); *Sherman v. Brandt Indus. USA Ltd.*, 2020 WL 6685701, at *7 (C.D. Ill. Nov. 12, 2020) (rejecting defendant's argument that the IWCA might preempt former employee's BIPA claims and acknowledging "the unanimous rejection of arguments that [the] [IWCA] might otherwise preempt privacy claims . . . ."). "Similarly, numerous trial courts in Illinois have found that privacy injuries are distinct from those preempted by the IWCA." *Cothron*, 467 F. Supp. 3d at 616.

The Seventh Circuit has repeatedly reminded courts and counsel that district court opinions have no precedential value. *See, e.g., Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457–58 (7th Cir. 2005). Rather than relying on district court cases for their precedential value, the Court acknowledges these cases because they recognize the

development of the Illinois Supreme Court's compensability exception and the test in *Pathfinder*.

Here, Plaintiffs' alleged BIPA injuries are non-physical and non-psychological. Applying the *Pathfinder* test, Plaintiffs' alleged injuries are not compensable under the IWCA. Accordingly, the compensability exception applies, and Defendants' Motion to Dismiss is denied.

## CONCLUSION

For these reasons, the Motion to Remand (Doc. 23) filed by Plaintiffs Saroya Roberson, Christa Hammond, Tonika Smith, Daphne Williams, Idella Hill, Olabisi Bodunde, Victoria Brewer, Alyssa Bendersky, Felecia, Williams, Attla Dupree, and Jameea Boykin ("Plaintiffs"), individually, and on behalf of all others similarly situated is **DENIED**.[8] The Motion to Dismiss filed by Defendants (Doc. 18) is **GRANTED in part and DENIED in part**.

---

[8] In *Hart*, 457 F.3d at 682, the Seventh Circuit explained that in a CAFA case, defendants and plaintiffs both "have the right, through appropriate discovery, to explore the facts relevant to the court's jurisdiction as the case progresses." Denying Plaintiffs' Motion to Remand without prejudice and directing Plaintiffs to conduct discovery to explore the question of whether a CAFA exception exists is unnecessary given this Court's conclusion that federal-question jurisdiction supports removal. *See Miller*, 926 F.3d at 905 ("[g]iven our conclusion that the federal-question jurisdiction supports removal, we need not remand for the district court to explore the question whether, on the date the case was removed, one class member was a citizen of Wisconsin or Indiana, or conceivably some third state other than Illinois or Delaware—say, a citizen of California temporarily detailed to work at O'Hare").

The Court dismisses Plaintiffs' union members claims without prejudice.[9] Plaintiffs have until **January 4, 2021,** to file a Second Amended Complaint consistent with Rule 11.

    **IT IS SO ORDERED.**

    **DATED:  December 14, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

[9] A preempted state law claim "must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Unless certain exceptions apply, employees must exhaust administrative remedies before bringing suit in federal court. *See McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616 (7th Cir. 2001). The First Amended Complaint does not contain allegations that allow the Court to treat Plaintiffs' claims as § 301 claims, nor does it allege that Plaintiffs properly exhausted their administrative remedies. Based on the information currently before it, the Court cannot conclude that there are no other facts Plaintiffs can plead that establish a non-preempted claim. *See Gray*, 2020 WL 1445608 at *5 (dismissing complaint without prejudice); *Peatry*, 2020 WL 919202 at *7 (dismissing certain claims without prejudice); *Fernandez*, 2020 WL 7027587 at *8 (dismissing complaint without prejudice and allowing plaintiff to amend complaint).