**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SAROYA ROBERSON, et al., individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:20-cv-895 |
| v. | ) ) | |
| MAESTRO CONSULTING SERVICES, LLC, Individually and d/b/a SYMPHONY POST ACUTE NETWORK, et al. | ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

**THE DRISCOLL FIRM, LLC**

**THE DRISCOLL FIRM, PC**

John J. Driscoll, IL# 6276464
1311 Avenida Ponce de Leon
Suite 501
San Juan, Puerto Rico 00907
john@jjlegal.com

Paul W. Johnson, IL# 6193774
211 North Broadway
Suite 4050
St. Louis, Missouri 63102
paul@thedriscollfirm.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

        A.      Plaintiff's Claims Against the Symphony Defendants ............................ 2

        B.      The Course of This Litigation .................................................................. 5

                1.      Procedural history ......................................................................... 5

                2.      Discovery ....................................................................................... 8

                3.      Mediation ....................................................................................... 9

III.    THE SETTLEMENT AGREEMENT ................................................................... 9

        A.      The Settlement Class and Relief .............................................................. 9

        B.      Waivers and Release of Claims ............................................................. 12

        C.      The Notice of Proposed Class Action Settlement Process ..................... 14

        D.      Settlement Administration ...................................................................... 15

        E.      Attorneys' Fees and Costs and Class Representative Service Awards ... 15

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
        PURPOSES OF SETTLEMENT .......................................................................... 16

        A.      Objective Class Definition ..................................................................... 17

        B.      Numerosity .............................................................................................. 18

        C.      Commonality and predominance ............................................................ 18

        D.      Typicality ................................................................................................ 20

        E.      Adequacy ................................................................................................. 20

        F.      Superiority ............................................................................................... 21

V.      COUNSEL FOR PLAINTIFF SHOULD BE APPOINTED AS CLASS
        COUNSEL ........................................................................................................... 24

VI.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............. 24

        A.      The Class Representative and Class Counsel have adequately represented
                the Settlement Class ................................................................................ 25

        B.      The Settlement was negotiated at arm's length under the supervision of an

experienced mediator ........................................................................... 27

C.    The relief provided to Settlement Class Members is adequate ............................. 28

      1.    The costs, risks, and delay of trial and appeal............................ 28

      2.    The effectiveness of any proposed method of distributing relief to
            the class, including the method of processing class-member claims ........ 32

      3.    The terms of any proposed award of attorney's fees, including
            timing of payment ....................................................................... 32

      4.    No agreements required to be identified under Rule 23(e)(3) ................. 33

D.    The proposed Settlement treats class members equitably relative to each
      other ....................................................................................................... 33

VII.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD
        OF CLASS NOTIFICATION ............................................................................. 34

VIII.   CONCLUSION .................................................................................................... 36

# TABLE OF AUTHORITIES

**Cases**                                                                                          Page(s)

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................................. 18

*Armstrong v. Bd. of Sch. Dirs.,*
   616 F.2d 305 (7th Cir. 1980) ............................................................................. 16

*Bernal v. NRA Grp., LLC,*
   318 F.R.D. 64 (N.D. Ill. 2016) ......................................................................... 23

*Bhattacharya v. Capgemini N. Am., Inc.,*
   324 F.R.D. 353 (N.D. Ill. 2018) ....................................................................... 22

*Breslow v. Prudential-Bache Props.,*
   1995 U.S. Dist. LEXIS 13617 (N.D. Ill. Sep. 13, 1995) .................................. 34

*Chambers v. Together Credit Union,*
   2021 U.S. Dist. LEXIS 92150 (S.D. Ill. May 14, 2021) ................................... 25

*Charvat v. Valente,*
   2019 U.S. Dist. LEXIS 187225 (N.D. Ill. Oct. 28, 2019) ................................. 31

*Cothron v. White Castle Sys.,*
   2023 IL 128004 (Feb. 17, 2023) ......................................................................... 8

*De La Fuente v. Stokely-Van Camp., Inc.,*
   713 F.2d 225, 232 (7th Cir. 1983). .................................................................... 19

*E.E.O.C. v. Hiram Walker & Sons,*
   768 F.2d 884, 889 (7th Cir. 1985) ..................................................................... 16

*Figueroa v. Kronos Inc.,*
   No. 19-cv-01306 (N.D. Ill.) ............................................................................... 28

*Gautreaux v. Pierce,*
   690 F.2d 616, 621 n. 3 (7th Cir. 1982). ............................................................. 16

*Hale v. State Farm Mut. Auto. Ins. Co.,*
   2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018) ................................. 25

*Harris v. Sheriff of Cook County,*
   581 F.3d 511, 513 (7th Cir. 2009) ..................................................................... 17

*Hyderi v. Washington Mut. Bank, FA,*
   235 F.R.D. 390, 396 (N.D.Ill.2006). ................................................................. 20

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ............................................................ 25

*Kleen Prods. LLC v. Int'l Paper Co.*,
   831 F.3d 919 (7th Cir. 2016) ............................................................ 18

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ............................................................ 18

*Miller v. Southwest Airlines Co.*,
   926 F.3d 898, 903 (7th Cir. 2019) ...................................................... 7

*Mullins v. Direct Dig., LLC*,
   795 F.3d 654 (7th Cir. 2015) ............................................................ 17

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ........................................................................ 33

*Osada v. Experian Info. Sols., Inc.*,
   290 F.R.D. 485 (N.D. Ill. 2012) ........................................................ 20

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
   252 F.R.D. 438 (N.D. Ill. 2008) ........................................................ 21

*Retired Chi. Police Ass'n v. City of Chi.*,
   7 F.3d 584 (7th Cir. 1993) .............................................................. 19

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................ 29

*Snyder v. Ocwen Loan Servicing, LLC*,
   2018 U.S. Dist. LEXIS 167471 (N.D. Ill. Sep. 28, 2018) ................... 27

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ............................................................ 17

*Swift v. Direct Buy, Inc.*,
   2013 U.S. Dist. LEXIS 152618 (N.D. Ind. Oct. 24, 2013) ................... 30

*T.K. v. Bytedance Tech. Co., Ltd.*,
   2022 U.S. Dist. LEXIS 65322 (N.D. Ill. Mar. 25, 2022) ..................... 33

*Van Lith v. iHeartMedia + Entm't, Inc.*,
   2017 U.S. Dist. LEXIS 162838 (E.D. Cal. Sept. 29, 2017) ................. 31

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................ 18

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859  (7th Cir. 2014) ............................................................... 2, 27

*Wright v. Nationstar Mortg. LLC*,
    2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016) ................................. 27

*Young v. Rolling in the Dough, Inc.*,
    2020 U.S. Dist. LEXIS 35941 (N.D. Ill. Feb. 26, 2020) ................................... 27

**Statutes & Rules**

740 ILCS 14/1, *et seq* ........................................................................ 1, 2

740 ILCS 14/15(a) .............................................................................. 3

740 ILCS 14/15(b) .............................................................................. 3

Fed. R. Civ. P. 23 ................................................................................ 2

Fed. R. Civ. P. 23(a) ........................................................................ 17, 21

Fed. R. Civ. P. 23(b) ...................................................................... 18, 21, 22

Fed. R. Civ. P. 23(c) ........................................................................ 34

Fed. R. Civ. P. 23(e) .................................................................... *passim*

Fed. R. Civ. P. 23(g) ........................................................................ 23

**Other Authorities**

Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment .............. 25, 26

Manual for Complex Litig. (4th ed. 2004) ............................................... 21

Newberg on Class Actions (5th ed.) ...................................................... 23, 35

## I.    <u>INTRODUCTION</u>

Plaintiff, Saroya Roberson, originally brought this action against Defendants, Symphony Post Acute Network; Symphony Sycamore LLC; Symphony Healthcare LLC; Symphony M.L. LLC and Symphony Monarch Holdings, LLC, on December 8, 2017, in the St. Clair County Circuit Court, alleging that the Maestro Defendants[1] violated her (and others similarly situated) rights under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. On behalf of herself, the two other named Plaintiffs, Nicholle Headley and Olabisi Bodunde, and the proposed Settlement Class, Plaintiffs respectfully submit this Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. As set forth herein, the proposed Class Settlement Agreement and Release Agreement ("Settlement Agreement" or "Agreement") with the Maestro Defendants, attached hereto as Exhibit A, is fair, reasonable, and adequate, and preliminary approval is warranted.

This Agreement is the result of extensive, lengthy, contentious litigation and arm's length negotiations between Plaintiffs' counsel ("Class Counsel") and the Maestro Defendants' counsel, with the assistance of a respected third-party mediator, the Honorable Wayne Andersen (Ret.), a former federal district court judge with the Northern District of Illinois for almost 20 years and a judge on the Circuit Court of Cook County bench for another seven. Judge Andersen has experience mediating hundreds of cases, including cases brought under BIPA. The Settlement, if approved, will provide substantial monetary relief to the Settlement Class Members, based on a common, non-reversionary, settlement fund in the amount of $2,800,000.00, while avoiding the inherent risks, delay, and expenses associated with continued litigation. It therefore satisfies all applicable criteria for preliminary approval. *See* Fed. R. Civ. P. 23(e); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014). The settlement provides for a no-claim, automatic payment to approximately 12,141 known settlement class members (unless they opt-

---

[1] Although the parties have changed since the initial filing of the state court Complaint in this matter, for purposes of this Motion the Defendants will be referred to collectively as "the Maestro Defendants."

out). Further, the Settlement Fund is limited to $2,800,000.00 because that is the amount of demonstrated and verified insurance policy coverage(s) for the Maestro Defendants. Finally, all requirements under Fed. R. Civ. P. 23 are met for this Court to preliminarily certify the Settlement Class for purposes of this Settlement, as required for this Court to be able to grant preliminary approval.

Accordingly, this Settlement Agreement is well within the range of possible approval, and Plaintiffs respectfully request that the Court grant preliminary approval of the Agreement, direct notice to the Class, and schedule a final Fairness Hearing to determine whether to grant final approval of the Agreement.

## II.    BACKGROUND

### A.    Plaintiffs' Claims Against the Maestro Defendants

Plaintiffs brought this lawsuit against the Maestro Defendants based on their alleged violations of BIPA, an Illinois statute that regulates companies' collection, use, safeguarding, handling, storage, retention, and destruction of biometric data, including fingerprints. 740 ILCS 14/1 *et seq*. They allege that the Maestro Defendants violated multiple BIPA provisions, specifically BIPA §§ 15(a); 15(b)(1); 15(b)(2); 15(b)(3); 15(d); 15(e)(1); and 15(e)(2). [Doc. 54, ¶¶ 74-472].

Plaintiffs allege that the Maestro Defendants are managed and directed by Maestro Consulting Services, LLC, a management company which manages and operates an ever-changing number of long term and rehabilitation facilities owned and operated by the Symphony Post Acute Network, or "SPAN."[2] [Doc. 54, ¶¶ 1-7; 11-20]. They allege a unity of control, action, and/or ownership among the various Maestro Defendants, or SPAN, as dictated by Maestro. They allege that the SPAN is "an integrated post-

---

[2] Although there were greater than 25 total facilities listed on the https://symphonynetwork.com/about/ website at or about the original filing of the state court complaint in December 2017, there are now only eight facilities listed on https://symphonynetwork.com/about/, and only two of them located in the State of Illinois. (Last visited: June 10, 2024). Upon information and belief, even these two Illinois based Symphony facilities are not currently owned by the same ownership involved in this case.

acute care network and senior housing provider in the midwestern United States." They further allege that there were shared officers, directors, managers, members, and/or employees among the various owners of the various SPAN facilities and Maestro. [Doc. 54, ¶¶ 21-44].

Pursuant to BIPA § 15(a), each "private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). Additionally, ". . . a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines." *Id.*

BIPA § 15(b) provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" unless it first (1) informs that person in writing that such an identifier or information is being collected or stored; (2) informs that person in writing of the "specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used;" and (3) "receives a written release" executed by the person who is the subject of the biometric identifier or information. 740 ILCS 14/15(b)(1)-(3).

BIPA § 15(d) provides that a private entity in possession of biometric identifiers or biometric information may not disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information except under specific enumerated circumstances. 740 ILCS 14/15(d).

BIPA § 15(e)(1) and (2) provide that a private entity in possession of biometric identifiers or biometric information shall (1) store, transmit, and protect that data from disclosure using the reasonable standard of care within the private entity's industry; and (2) store, transmit, and protect from disclosure all that data in a manner that is the same as or more protective than the manner in which the private entity

stores, transmits, and protects other confidential and sensitive information. 740 ILCS 14/15(e)(1) and (2).

The named Plaintiffs, Saroya Roberson, Nicholle Headley, and Olabisi Bodunde, on behalf of themselves and others similarly situated, allege they were employed as non-union employees at various Maestro or SPAN facilities located throughout the State of Illinois. [Doc. 54, ¶¶ 8; 9; and 10]. They allege that all the Maestro Defendants are "offending parties" within BIPA, 740 ILCS 14/20, in that they required all their non-union employees to utilize biometric timeclocks to clock into and out of work at the various SPAN facilities without first complying with BIPA's provisions. [Doc. 54, ¶¶ 21; 37; 61-63].

Thus, Plaintiffs allege that the Maestro Defendants violated BIPA § 15(a) in that all were in possession of the Plaintiffs' biometric identifiers and information without having developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying such identifiers and information when the initial purpose for collecting or obtaining such has been satisfied or within three years of the interaction between the individual and the SPAN entity. [Doc. 54, ¶¶ 50-52; 59-60; 61-62; 74-80; 81-87; 131-137; 138-144; 188-194; 195-201; 245-251; 252-258; 302-308; 309-315; 359-365; 366-372; 416-422; 423-429].

Plaintiffs further allege that the Maestro Defendants violated BIPA § 15(b)(1)-(3) in that all collected, captured, or otherwise obtained the Plaintiffs' biometric identifiers and information without first (1) informing the SPAN employees in writing that biometric identifiers and information were being collected or stored, or (2) of the specific purpose and length of term for which the identifiers and information were being collected, stored, or used; or (3) receiving a written release from the SPAN employees. [Doc. 54, ¶¶ 48; 59-60; 61-62; 88-108; 145-165; 202-222; 259-279; 316-336; 373-393; 430-450].

Plaintiffs further allege that the Maestro Defendants violated BIPA § 15(d) in that they disclosed, redisclosed, or otherwise disseminated the Plaintiffs' (and others similarly situated) biometric identifiers or information. [Doc. 54, ¶¶ 53-54; 109-116; 166-173; 223-230; 280-287; 337-344; 394-401; 451-458].

Finally, Plaintiffs allege that the Maestro Defendants violated BIPA § 15(e)(1) and (2) by failing to store, transmit, and protect the Plaintiffs' (and others similarly situated) biometric identifiers and information in a manner which equals or exceeds the reasonable standard of care for storing confidential and/or sensitive information within their industry. [Doc. 54, ¶¶ 55-58; 117-130; 174-187; 231-244; 288-301; 345-358; 402-415].

**B.    The Course of This Litigation**

**1.    Procedural history**

Plaintiff, Saroya Roberson, initially filed this lawsuit in the Circuit Court for St. Clair County, Illinois, on December 8, 2017, against Defendants, Symphony Post Acute Network; Symphony Sycamore LLC; Symphony Healthcare LLC; Symphony Monarch Holdings, LLC; and various "John Doe" Defendants. A copy of the Plaintiff's original Complaint is attached hereto and incorporated herein by reference as Exhibit B. On March 12, 2019, the St. Clair County Circuit Court entered its Memorandum and Order on Class Certification, finding that:

> "[T]he Court hereby certifies the following class:
>
> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at any location associated with the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 15/5 et seq.
>
> The Court also finds it appropriate to certify the following subclass:
>
> All Illinois citizens whose biometric information was collected, captured, purchased, received through trade, or otherwise obtained in Illinois at the Symphony Post Acute Care Network, a/k/a Symphony Post Acute Network location in Swansea, Illinois, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 et seq.
>
> Excluded from the proposed Class are employees, officers, directors, subsidiaries and affiliates of any person or business associated with the Symphony Post Acute Care Network, a/k/a Symphony Post

Acute Network, the judge or any officer of the court presiding over
this action."

A copy of the St. Clair County Circuit Court's March 12, 2019, Memorandum and Order is attached

hereto and incorporated herein by reference as Exhibit C.

On April 11, 2019, the Maestro Defendants filed their Petition for Leave to Appeal to the Fifth

District Appellate Court. They argued that the trial court committed error: in certifying a class and subclass

to include various SPAN [then] non-party entities which did not collect, capture, or obtain Plaintiff's

biometric identifiers and information; in purporting to adjudicate claims as to non-party entities which

[then] had not been served with process; and in concluding that Plaintiff had established the various

statutory prerequisites to class certification. The Maestro Defendants' Petition for Leave to Appeal to the

Fifth District Appellate Court is attached hereto and incorporated herein by reference as Exhibit D. On

November 25, 2019, the Fifth District entered its Order limiting the class to only current or former

employees at Plaintiff's employer's facility and otherwise remanded the case back to the St. Clair County

Circuit Court. A copy of the Fifth District's November 25, 2019, Order is attached hereto and incorporated

herein by reference as Exhibit E.

On July 2, 2020, Plaintiffs filed their First Amended Complaint in the St. Clair County Circuit

Court. In addition to Saroya Roberson, Christa Hammond; Tonika Smith; Daphne Williams; Idella Hill;

Olabisi Bodunde; Victoria Brewer; Alyssa Bendersky; Felecia Williams; Attla Dupree; and Jameea

Boykin were added as additional named Plaintiffs. Maestro Consulting Services and several additional

SPAN Facilities were added as named Defendants. [Doc. 10-2].

On September 2, 2020, the Maestro Defendants filed their Notice of Removal to this Court under

purported federal question jurisdiction under 28 U.S.C. § 1331, arguing that any issue involving "how

workers clock in and out" is preempted under the Labor Management Relations Act ("LMRA"), and the

means to the resolution of which must come from a collective bargaining agreement. *See Miller v.*

*Southwest Airlines Co.*, 926 F.3d 898, 903 (7th Cir. 2019) ("if a dispute necessarily entails the interpretation or administration of a collective bargaining agreement, there is no room for individual employees to sue under state law"). Alternatively, Maestro argued that this Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA") in that at least one class member is diverse to them. [Doc. 10, ¶¶ 1-25]. After fully briefing the legal issues raised in the Notice of Removal and in the Maestro Defendants' Motion to Dismiss [Doc. 18] and Memorandum of Law in Support [Doc. 19], and after Plaintiffs filed their Motion to Remand [Doc. 23], this Court granted the Motion to Dismiss in part, dismissing union member claims without prejudice, denying the Motion to Remand to state court, and granting Plaintiffs leave to file a Second Amended Complaint. [Doc. 52].

On January 4, 2021, Plaintiffs filed their currently operative Second Amended Complaint. In deference to this Court's prior ruling dismissing union members' claims without prejudice, Plaintiffs defined their new class as follows:

> "All Illinois non-union citizens whose biometric information or biometric Identifiers were collected, captured, purchased, received through trade, or Otherwise obtained in Illinois at any Symphony Post Acute Network Location, as set forth in the Illinois Biometric Information Privacy Act, 740 ILCS 14/5 *et seq.*"

[Doc. 54, ¶ 63].

On January 19, 2021, the Maestro Defendants filed their Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint and Memorandum in support, alleging that Plaintiffs' claims were time-barred by an alleged one-year statute of limitations and that Plaintiffs impermissibly lumped their claims together in violation of Fed. R. Civ. Proc. 8. [Docs. 56, ¶¶ 1-2; 57].

On February 12, 2021, the Maestro Defendants filed their Motion to Stay Proceedings, arguing that several Illinois BIPA cases on appeal at that time suggested that a stay of case proceedings was in order: *McDonald v. Symphony, et al.,* 2017-C-11311 (Cir. Ct. Cook Cty. Jan.. 29, 2021) for the Worker's Compensation exclusivity remedy argument; *Tims v. Black Horse Carriers, Inc.*, 2019-CH-03522 (Cir.

Ct. Cook Cty. Jan 28, 2020); No. 1-20-0562, for the one-year statute of limitations argument; and *In re: White Castle System, Inc*., No. 20-8029, and *Cothron v. White Castle Sys., Inc.*, 477 F.Supp. 3d 723, 731 (N.D. Ill. 2020), for the determination of what constitutes a separate "injury" under BIPA. [Doc. 65]. On March 17, 2021, this Court stayed all further case proceedings pending appellate court resolutions to the Illinois BIPA cases noted above. [Doc. 76].

On November 7, 2022, Plaintiffs filed their Motion to Lift Stay and Memorandum of Law in Support. [Doc. 89].  On February 24, 2023, this Court entered its Order lifting the previous stay order. [Doc. 93]. But just one month later, on March 24, 2023, the Maestro Defendants filed yet another Motion to Stay Proceedings, arguing that a similar state court BIPA case in Cook County should be resolved first and that this case should be stayed in the meantime. [Doc. 96]. On March 31, 2023, this Court denied the Motion to Stay Proceedings. [Doc. 100].

On May 1, 2023, the Maestro Defendants filed their Renewed Rule 12(b)(6) Motion to Dismiss and Memorandum in support, alleging that Plaintiffs impermissibly lumped all Defendants together for all their substantive allegations. [Docs. 109-110]. On June 8, 2023, this Court denied the Motion to Dismiss. [Doc. 115]. On June 22, 2023, the Maestro Defendants filed their Answer to Plaintiffs' Second Amended Complaint, which included 27 affirmative defenses. [Doc. 130, pp. 154-161].

On August 14, 2023, this Court granted Plaintiffs' Motion for Settlement Conference and referred the Settlement Conference to Magistrate Gilbert C. Sison. [Docs. 137 and 138].  On September 6, 2023, Magistrate Sison conducted a teleconference with the parties' attorneys and determined that a Settlement Conference would not be productive at that time. The referral to Sison was terminated. [Docs. 143 and 144].

## 2.    Discovery

The parties conducted substantial written discovery both while the case was in state court and in this Court as well. The written discovery in this federal case included sets of Interrogatories, Requests for

Production of Documents, and Requests for Admissions to each of the Maestro and Symphony Facility Defendants. On June 16, 2023, and after appropriate meet and confer sessions, Plaintiffs had to file separate Motions to Compel against the Symphony Facility Defendants and Maestro, respectively, to fully respond to the written discovery noted above. [Docs. 121 and 122]. Defendants responded to the Motions to Compel. [Docs. 131 and 132].

Each of the three named Plaintiffs were deposed by the Maestro Defendants' counsel during the pendency of this case. Plaintiff Roberson was deposed in October 2018, and Plaintiffs Headley and Bodunde were deposed in early July 2023.

### 3.    Mediation

The parties participated in a successful mediation of this lawsuit with the Honorable Judge Wayne Andersen of JAMS Mediation, Arbitration and ADR Services on February 22, 2024. Judge Andersen joined JAMS in 2010 after a distinguished legal career in which he served for almost 20 years as a district court judge for the Northern District of Illinois and as a Cook County Circuit Court judge for another seven years. Judge Andersen has assisted in the resolution of hundreds of high profile and high value settlements in various niches of civil litigation. https://www.jamsadr.com/andersen/ (last visited: June 11, 2024). As a result of that mediation, the parties reached a settlement agreement in principle. [Doc. 156]. By April 22, 2024, the parties had agreed to and signed off on a Term Sheet, a copy of which is attached hereto and incorporated herein by reference as Exhibit F.

## III.    THE SETTLEMENT AGREEMENT

Plaintiffs provide the following summary of the Settlement and Release Agreement's material terms:

### A.    The Settlement Class and Relief

"Settlement Class" is defined as follows for purposes of certification under Federal Rule of Civil

Procedure ("Rule") 23, and for settlement purposes only:

"All persons who were non-union persons at the time they used a finger or hand scan timekeeping device at one of the following Symphony Facilities located in Illinois from August 17, 2012, to present but did not execute a release and receive notice pursuant to the Illinois Biometric Information Privacy Act on or before their first date of use, including at the following locations:

- *Maestro Consulting Services*
- *Symphony Sycamore a/k/a Symphony Sycamore Village*
- *Symphony Beverly a/k/a Symphony at 87th Street a/k/a Renaissance at 87th Street*
- *Symphony of Bronzeville Park a/k/a Bronzeville Park Skilled Nursing and Living Center*
- *Symphony Crestwood a/k/a Crestwood Care Centre*
- *Symphony Deerbrook a/k/a Deerbrook Care Centre*
- *Symphony of Evanston Healthcare a/k/a Symphony Evanston*
- *Symphony Park South a/k/a Symphony of Morgan Park a/k/a Renaissance at Halstead a/k/a Renaissance Park South*
- *Symphony South Shore a/k/a Symphony of South Shore a/k/a Renaissance at South Shore*
- *Symphony Midway a/k/a Renaissance at Midway*
- *Symphony Encore*
- *Symphony Oswego a/k/a Symphony The Tillers*
- *Symphony Chicago West*
- *Symphony Lincoln Park a/k/a The Imperial Convalescent and Nursing Center a/k/a Claridge Imperial a/k/a The Imperial of Lincoln Park*
- *Symphony Hanover Park*
- *Symphony Buffalo Grove*
- *Symphony Northwoods*
- *Symphony Maple Crest*
- *Symphony Orchard Valley*
- *Symphony Palos Park*
- *California Gardens a/k/a California Gardens Nursing and Rehabilitation Center*
- *Monroe a/k/a Monroe Pavilion Health and Treatment Center*
- *Symphony Aspen Ridge a/k/a Aspen Ridge Care Centre a/k/a Symphony of Decatur*
- *Symphony Maple Ridge a/k/a Maple Ridge Care Centre and Maple Ridge Retirement Centre a/k/a Symphony of Lincoln*
- *Symphony McKinley*
- *Aria Post Acute Care Center a/k/a Aria Post Acute Care Center a/k/a Renaissance at Hillside*
- *Jackson Square Nursing and Rehabilitation Center*
- *Claremont Extended Healthcare a/k/a Claremont Rehabilitation and Living Center*
- *Claridge Ivy a/k/a The Ivy Apartments at the Imperial*
- *Church Street Station Nursing and Living Center a/k/a Claremont of Hanover Park.*"

10

[Exhibit A, pp. 9-10].

The Maestro Defendants estimate that there are approximately 12,141 Settlement Class Members. These individuals who are known to have scanned a fingerprint will not be required to file any claim and will automatically receive a settlement payment, unless they opt out. Excluded from the Settlement Class will be any person who executed a release and received notice pursuant to BIPA on or before their first use of a finger or hand scan timekeeping device at one of the SPAN or Symphony Facilities; any person who is a member of a collective bargaining agreement during their employment and at the time they used a finger or hand scan timekeeping device at any one of the Symphony Facilities; and any person who submits a valid exclusion to opt-out of the Settlement Class. A full list of eligible persons will be provided and incorporated into the Settlement Agreement. [Exhibit A, p. 10].

The Class Settlement Payments will be made through a qualified Settlement Administrator, in this case, Analytics Consulting, LLC. The Maestro Defendants agree to pay the Gross Settlement Amount of $2,800,000.00 (Two Million Eight Hundred Thousand Dollars) to the Settlement Administrator. The Administrator will establish a Qualified Settlement Fund ("QSF") pursuant to Section 1.468B-1, *et seq.* of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended. The "First Installment" from the Maestro Defendants to the Administrator is $250,000.00 of the Gross Settlement Fund to set aside for administrative expenses appropriate and necessary to effectuate notice and administrative costs. Maestro will deposit the remaining $2,550,000.00 of the Gross Settlement Amount within times prescribed in Exhibit A. [Exhibit A, pp. 12-13].

Class Settlement Payments will be disbursed to the Settlement Class from the QSF as follows: The

Gross Settlement Fund less any Fee Award,[3] Service Award,[4] and Administrative Expenses[5] approved by the Court is the Net Settlement Fund. The Net Settlement Fund shall be divided equally among the Settlement Class Members who do not exclude themselves from the Settlement Class. Settlement Class Members shall receive their *pro rata* shares of the Net Settlement Fund automatically, by direct checks, without having to submit a claim form or otherwise "opt in" to the Settlement Class. [Exhibit A, pp. 13-16].

The Parties agree to a common fund settlement structure with no reversionary component. Payment to the Settlement Class shall occur in two phases. For the first phase, an initial pro rata payment of the Net Settlement Fund shall be issued to each member of the Settlement Class (the "First Payment"). The First Payment shall be issued within forty-five (45) days following final approval of the Settlement by the Court. Following expiration of the First Payment (75 days after issuance), a second pro rata payment in an amount equal to or less than the First Payment shall be issued to each member of the Settlement Class who timely cashed the First Payment (the "Second Payment"). Following expiration of the Second Payment (75 days after issuance), any remaining amount of the Net Settlement Fund shall be distributed to a *cy pres* that is agreed upon by the Parties within 90 days thereafter. [Exhibit A, p. 17].

### B.    Waiver and Release of Claims

In addition to the effect of any final judgment entered in accordance with the Settlement and

---

[3] In consideration for the work already performed in this matter and all work remaining to be performed regarding the Settlement and Release Agreement, including securing Court approval, administering and implementing the Settlement Agreement, and in conjunction with the filing of a motion for final approval, Class Counsel will move the Court for a Fee Award to include attorney's fees and reimbursement of litigation related costs and expenses. [Exhibit A, pp. 13-14].

[4] Class Counsel will move the Court for Service Awards for the three named Plaintiffs in an amount not to exceed $10,000.00 (Ten Thousand Dollars), and the Defendants have agreed to not oppose this request. [Exhibit A, p. 14].

[5] Administrative Expenses include all appropriate expenses associated with the Settlement Administrator's effectuating of the Settlement and Release Agreement. [Exhibit A, p. 4].

Release Agreement, and upon final approval of same, the Released Parties shall be completely released, acquitted, and forever discharged from all Released Claims. "Released Parties" means the named Defendants in this lawsuit and each of the following:

- *Maestro Consulting Services LLC*
- *Symphony Sycamore LLC*
- *Symphony Beverly, LLC*
- *Symphony Bronzeville Park, LLC*
- *Symphony of Evanston Healthcare, LLC*
- *Symphony Park South, LLC*
- *Symphony South Shore, LLC*
- *Symcare Healthcare, LLC*
- *Symphony HMG LLC*
- *Symcare HMG LLC*
- *Symphony Crestwood LLC*
- *Symphony Deerbrook LLC*
- *Renaissance at Hillside, Inc.*
- *Claridge Imperial Ltd.*
- *Symphony Maple Ridge LLC*
- *Symphony Dialysis LLC*
- *Symphony Aspen Ridge, LLC*
- *Renaissance at 87th Street, Inc.*
- *Aria Post Acute Care Center, LLC*
- *Renaissance at Midway, Inc.*
- *Renaissance at South Shore, Inc.*
- *Renaissance at Halsted, LLC*
- *Chevy Chase Corp.*
- *Jackson Corp.*
- *Claremont Extended Healthcare, LLC*
- *Claridge Ivy, Ltd.*
- *Concerto Dialysis LLC*
- *Church Street Station Nursing and Living Center, LLC*
- *California Gardens Corp.*
- *Symphony of California Gardens LLC*
- *Monroe Corp.*
- *Symphony McKinley LLC*
- *Symphony Oswego LLC*
- *Symphony Lincoln Park LLC*
- *Symphony Midway LLC*
- *Symphony Jackson Square LLC*
- *Symphony Hanover Park LLC*
- *Symphony Buffalo Grove LLC*
- *Symphony Northwoods LLC*

- *Symphony Maple Crest LLC*
- *Symphony Countryside LLC*

and each of their respective predecessors, attorneys, representatives, current and former employees, agents, accountants, officers, directors, members, limited liability companies, owners, principals, managers, managing members, managing agents, or insurers (and anyone whom any of them may have an obligation to indemnify regarding the subject matter of the Litigation), coinsurers, and reinsurers. [Exhibit A, pp. 7-9; 17].

As of the Effective Date,[6] and with the approval of the Court, all Releasing Parties will fully, finally, and forever release, waive, discharge, surrender, forego, give up, abandon, and cancel all Released Claims against the Released Parties through the date of Preliminary Approval. As of the Effective Date, all Releasing Parties will be forever barred and enjoined from prosecuting any action against the Released Parties asserting any and all Released Claims. [Exhibit A, p. 17].

### C.    The Notice of Proposed Class Action Settlement Process

The Settlement Administrator will send each Settlement Class Member a copy of the Court-approved Notice of Proposed Class Action Settlement ("Notice") by First Class U.S. Mail. The proposed Notice is attached hereto and incorporated herein by reference as Exhibit G. Prior to mailing, the Administrator will run the Class Members' addresses through the U.S. Postal Service's National Change of Address database and mail the Notice using the most current mailing address information. For any Class Member whose Notice is returned as undeliverable without a forwarding address, the Settlement Administrator shall promptly conduct a firm level skip trace and re-send the Notice to the address (if

---

[6] "Effective Date" means the date on which the Settlement and Release Agreement becomes effective, that is, when the last date when all of the following events have occurred: (i) the Settlement and Release Agreement has been executed by the Parties; (ii) the Court has entered a Preliminary Approval Order; (iii) Notice has been given to the Settlement Class Members; (iv) the Court has held a Final Approval Hearing and entered a Final Approval Order; and (v) when all possible time limitations for any would-be appeals to the approval of this Settlement and Release Agreement have expired. [Exhibit A, pp. 4-5].

any) determined by the skip trace. [Exhibit A, pp. 18-19].

The proposed Notice is for the purpose of informing proposed Settlement Class Members, prior to the Final Approval Hearing, that there is a pending settlement, and to inform them as to how they may (a) protect their rights regarding the Settlement; (b) request exclusion from the Settlement Class and the proposed Settlement, if desired; (c) object to any aspect of the proposed settlement, if desired; and (d) participate in the Final Approval Hearing, if desired. The proposed Notice makes clear the binding effect of the Settlement Agreement on all persons who do not timely request exclusion ("opt out") from the Settlement Class. [Exhibit A, p. 19; Exhibit G].  Persons who qualify as "Settlement Class Members" but who do not wish to participate in the Settlement Agreement must appropriately [send] "a letter to the Settlement Administrator…" which includes the name, the Social Security number, a statement stating that he/she opts out of and does not wish to participate in the Settlement Agreement, and the person's signature, all within dates specified. [Exhibit A, p. 19]

### D.    Settlement Administration

The parties propose that Analytics Consulting, LLC be appointed by the Court as the Settlement Administrator. Pursuant to the Agreement, the Settlement Administrator will administer the Notice plan set forth in the Settlement; the Opt-Out and Objection process; the Claims Process; and the receipt and distribution of payments required by the Agreement. [Exhibit A, pp. 10; 18-20].

### E.    Attorneys' Fees and Costs and Class Representative Service Awards

In consideration for the work already performed in this matter and all work remaining to be performed regarding the Settlement and Release Agreement, including securing Court approval, administering and implementing the Settlement Agreement, and in conjunction with the filing of a motion for final approval, Class Counsel will move the Court for a Fee Award to include attorney's fees up to 39% of the Gross Settlement Fund, plus reimbursement of litigation related costs and expenses. [Exhibit

15

A, p. 14; Exhibit F, p. 4; Exhibit G, p. 5].

Moreover, Class Counsel shall move the Court for Service Awards for each of the three named Plaintiffs in an amount not to exceed Ten Thousand Dollars ($10,000.00) each for their time, effort, and service in this matter, and Defendants agree that they will not oppose such a request. [Exhibit A, p. 14; Exhibit F, p. 5; Exhibit G, p. 4].

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR PURPOSES OF SETTLEMENT

For this Court to be able to preliminarily approve this proposed Settlement Agreement and direct that notice be sent to the Class Members, it must find that the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). Accordingly, Plaintiffs request preliminary certification of the Settlement Class, for purposes of this Settlement Agreement.

The procedure for review of a proposed class action settlement is a well-established three-step process. First, the district court must issue a "preliminary order" following a pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979). Second, notice of the proposed settlement must be sent to all class members. Third, the district court must issue a "final approval" order after notice of the settlement is provided to the class and a hearing to consider the fairness of the settlement is held. *Stull v. YTB International, Inc.*, Cause No.: 08-cv-0565, 2015 WL 13631334, at *2 (S.D. Ill. June 8, 2015); *Stewart v. Marshall Etc, Inc.*, Cause No.: 14-cv-1002, 2015 WL 5120817, at *1.

At this preliminary stage, the Court need only determine whether the settlement is " 'within the range of possible approval.' " *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982). This does not require the Court to answer the ultimate question of whether the proposed settlement is "fair, reasonable, and adequate." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently

16

to rule on whether the proposed settlement is 'fair, reasonable, and adequate'"). At "preliminary approval," the court's role is not "resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985) (collecting cases). *Stull v. YTB International, Inc.*, Cause No.: 08-cv-0565, 2015 WL 13631334, at *2 (S.D. Ill. June 8, 2015); *Stewart v. Marshall Etc, Inc.*, Cause No.: 14-cv-1002, 2015 WL 5120817, at *2.

First, the Seventh Circuit has "long recognized an implicit requirement under Rule 23" that a class must be ascertainable, meaning "the class must be defined clearly and that membership be defined by objective criteria." Defining the class here as:

> "*All persons who were non-union persons at the time they used a finger or hand scan timekeeping device at one of the following Symphony Facilities located in Illinois from August 17, 2012, to present but did not execute a release and receive notice pursuant to the Illinois Biometric Information Privacy Act on or before their first date of use…*"

assures this Court that the Settlement Class is "defined clearly" with "objective criteria." *Mullins*, 795 F.3d at 657 (7th Cir. 2015), cited in *Suchanek v. Sturn Foods, Inc*. 311 F.R.D. 239, 260 (S.D. Ill. 2015).

The Settlement Class must also satisfy the elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ.P. 23(a) and (b); *see also Stull v. YTB International, Inc.*, Cause No.: 08-cv-0565, 2015 WL 13631334, at *2 (S.D. Ill. June 8, 2015); *Harris v. Sheriff of Cook County,* 581 F.3d 511, 513 (7th Cir. 2009). Furthermore, pursuant to Rule 23(b)(3), questions of law or fact common among class members must predominate over questions affecting only individual members ("predominance"), and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("superiority"). Fed. R. Civ. P. 23(a) and (b); *Stull v. YTB International, Inc.*, Cause No.: 08-cv-0565, 2015 WL 13631334, at *3-4 (S.D. Ill. June 8, 2015).

## A.    Objective Class Definition

Membership in the Settlement Class is defined clearly and based on objective, rather than

17

subjective, criteria—namely, non-union persons who used a hand or finger scan timekeeping device at an Illinois-based Symphony Facility from August 17, 2012, to the present but who did not execute a release and receive notice pursuant to the Illinois BIPA on or before their first date of use. That is all that is required for a class definition. *See Mullins*, 795 F.3d at 657. [Exhibit A, p. 9].

### B.    Numerosity

To satisfy the numerosity requirement, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *Stull v. YTB International, Inc.*, Cause No.: 08-cv-0565, 2015 WL 13631334, at *3. (S.D. Ill. June 8, 2015); *Stewart v. Marshall Etc, Inc.*, Cause No.: 14-cv-1002, 2015 WL 5120817, at *2 (S.D. Ill. Aug. 28, 2015).

Here, the Settlement Class consists of approximately 12,141 Class Members, thus preliminarily satisfying Rule 23(a)(1) because joinder is impracticable. Accordingly, the numerosity requirement is satisfied.

### C.    Commonality and Predominance

Under Rule 23(a)'s commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Because the Class is seeking monetary relief, Rule 23(b)(3) also applies, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The requirements of commonality and predominance may overlap, thus Plaintiffs address them together herein. *See Stull*, 2015 WL 13631334, at *3; *Stewart*, 2015 WL 5120817, at *3.

As for commonality, even a single common question will do. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014). Furthermore, "[w]hat matters to class certification ... [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Suchanek*

*v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question. *Suchanek*, 764 F.3d at 756.

The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "Predominance is satisfied when 'common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication.'" *Kleen Prods. LLC*, 831 F.3d at 925 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012))

Common issues of law and fact undoubtedly predominate here. The core factual and legal questions at issue in this lawsuit—whether the Maestro Defendants possessed, collected, captured, received through trade, or otherwise obtained the Settlement Class Members' biometric data and whether they complied with the requirements of BIPA §§ 15(a); (b)(1)-(3); (d); and (e)(1)-(2)—are common to the Settlement Class Members and predominate over any individual questions. As set forth above, the Maestro Defendants are alleged to have engaged in the same course of conduct with respect to all Settlement Class Members: requiring non-union personnel to check into and out of work by using biometric hand and/or finger scanning devices within a specific time period. Determining whether the Maestro Defendants possessed, collected, captured, received through trade, and/or otherwise obtained Settlement Class Members' biometric data within the meaning of BIPA therefore depends upon a common contention capable of classwide resolution. And the resolution of this question will generate a common answer and resolve a central issue to the validity of the claims of each Settlement Class Member. Furthermore, the Maestro Defendants' alleged failure to comply with the notice and consent; disclosure, redisclosure, and dissemination; and storage, transmission, and protection provisions of BIPA §§ 15(a); (b)(1)-(3); (d); and (e)(1)-(2) is also alleged to be common as to all Settlement Class Members.

19

Commonality and predominance are therefore satisfied here.

### D.    Typicality

The typicality requirement of Rule 23(a)(3) primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large, *Stull,* 2015 WL 13631334, at *3 (S.D. Ill. June 8, 2015), citing *De La Fuente v. Stokely-Van Camp., Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Typicality is therefore satisfied where "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993). That is certainly true here. Plaintiffs' claims and the claims of all Settlement Class Members arise out of the same course of conduct—the alleged scanning of non-union persons' hand or fingerprints at Illinois-based Symphony Facilities without BIPA disclosures and retention/destruction policies and within specifically defined time frames. There is nothing that separates the three representative Plaintiffs' BIPA claims from those of other Settlement Class Members, and typicality is satisfied.

### E.    Adequacy

Federal Rule of Civil Procedure 23(a)(4) requires that the class representatives be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P 23(a)(4). Adequacy of representation is composed of two parts: (a) the adequacy of the named plaintiffs' counsel and (b) the adequacy of representation provided by the putative named plaintiffs in protecting the different, separate, and distinct interests of the class members. *Stewart*, 2015 WL 5120817, at *3, citing *Sec'y of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986) (*en banc*). "The adequacy of representation prong is often concerned with avoiding conflicts of interest between the class representative(s) and the rest of the class." *Hyderi v. Washington Mut. Bank, FA,* 235 F.R.D. 390, 396 (N.D.Ill.2006).

Federal Rule of Civil Procedure 23(a)(4) is preliminarily satisfied because Plaintiffs' claims are

not antagonistic to, nor do they conflict with, the class. Instead, Plaintiffs have represented the class cooperatively and effectively from the stages of initial investigation through the course of the litigation. Class Counsel, John J. Driscoll, The Driscoll Firm, P.C., and The Driscoll Firm, LLC meet Rule 23(a)(4)'s adequacy requirement with their experience in handling sophisticated BIPA class action lawsuits. Class Counsel have invested substantial time and resources in this case by investigating the facts and the applicable law and negotiating a comprehensive settlement. *Stull,* 2015 WL 13631334, at *4 (S.D. Ill. June 8, 2015), citing *In re AT&T Mobility Wireless Data Services Sales Litigation,* 270 F.R.D. 330, 343 (N.D. Ill. 2010). Courts also look to whether the named plaintiff "has a sufficient interest in the outcome of the case to ensure vigorous advocacy" and that counsel is "competent, qualified, experienced and able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485, 490 (N.D. Ill. 2012), quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008).

Here, Plaintiffs and Class Counsel have and will fairly and adequately protect the interests of the Settlement Class. As set forth above, Plaintiffs and all Settlement Class Members suffered the same alleged injury, thus there are no conflicting claims at issue. Accordingly, the three named Plaintiffs are adequate representatives of the Settlement Class Members.

Furthermore, Class Counsel have extensive experience representing plaintiffs in BIPA class actions and complex litigation and are well qualified to represent the Settlement Class Members.[7] Accordingly, Class Counsel possess the ability, resources, commitment and experience necessary to adequately represent the Settlement Class Members.

### F.    Superiority

Rule 23(b)(3) allows for class certification where the requirements of Fed. R. Civ. P. 23(a) have

---

[7] A copy of Class Counsel's Firm resume is attached hereto and incorporated herein by reference as Exhibit I.

been met, and where the court finds that "questions of law or fact common to members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for resolving the controversy." Fed. R. Civ. P. 23(b)(3). It looks at: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

Here, all the Settlement Class Members' claims arise from the same alleged Maestro Defendants' policy of having non-union personnel check into and out of work by using biometric hand and/or finger scanning devices during specified periods of time. Given the relatively small economic harm suffered by everyone in the class, especially when considering the financial condition of the Maestro Defendants and the single eroding insurance policy with which to fund this Settlement, a class action is a far superior method of adjudicating this controversy. It would make no sense and would be totally impractical for each class member to individually pursue his own separate lawsuit. Furthermore, pursuing this case as a class action will not present managerial problems because the class will be certified for settlement purposes only. Fed. R. Civ. P. 23(b)(3)(D); *Stewart*, 2015 WL 5120817, at *4.

One issue to address here under the "superiority" element of Rule 23(b)(3)(B) is the pending Cook County Circuit Court action styled *McDonald v. Symphony Bronzeville Park, et al*, Cause No. 2017-CH-11311, a purported BIPA class action lawsuit against some of the SPAN entities and the alleged ownership interests thereof arising out of the same policies involving the use of hand and/or finger scanning biometric devices by SPAN personnel to check into and out of work. On April 17, 2024, Judge Thaddeus L. Wilson of the Cook County Circuit Court entered an Order formally staying the *McDonald* case pending the resolution of this case:

22

> The parties agree to stay this case, except for third-party discovery directed
> to entities not owned by Defendants in this case or the defendants in
> *Roberson*, pending class-wide settlement discussions in *Roberson, et al., v.*
> *Maestro Consulting Services, LLC*, Case No. 20-cv-895, pending in the
> United States District Court for the Southern District of Illinois (the
> *"Roberson* lawsuit"). If a class-wide settlement is executed in *Roberson*, the
> parties agree that this case shall remain stayed, except for third-party
> discovery directed to entities not owned by Defendants in this case or the
> defendants in *Roberson*, through final approval of the *Roberson* settlement.

A copy of the *McDonald* stay Order is attached hereto and incorporated herein by reference as Exhibit

H.  The represented *McDonald* Plaintiffs, like any other Settlement Class Member defined in the Settlement

Agreement, will receive their pro rata checks, via U.S. Mail, unless they "opt out." In that event, the *McDonald*

Plaintiffs' claims against the Released Parties in this Settlement Agreement would be terminated. Plaintiffs are

unaware of any other individual or class action claims arising out of the Maestro Defendants' biometric

timekeeping devices.

These factors weigh in favor of certification here. *Bhattacharya v. Capgemini N. Am., Inc.*, 324

F.R.D. 353, 366 (N.D. Ill. 2018). It is also desirable to concentrate the litigation of the claims in this

forum, as the case concerns a proposed class of individuals who scanned their fingerprints working for

employers throughout Illinois and the Court is familiar with the claims at issue. *See* Newberg on Class

Actions § 4:71 (5th ed.) (a class action is particularly appropriate in a particular forum where that court

has already issued preliminary rulings). Moreover, "[p]arallel litigation for each class member here would

entail the same discovery and require multiple courts to weigh the same factual and legal bases for

recovery. That would make no sense." *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016).

Finally, there should be no management issues here due to the predominance of common issues, "readily

available identity" of class members, and "the relative ease of administering the claims process." *Id.  See*

*also Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification,

a district court need not inquire whether the case, if tried, would present intractable management

problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

Accordingly, all the requirements of Rule 23 are satisfied here, and the Court should certify the subject Class for settlement purposes.

## V.    COUNSEL FOR PLAINTIFF SHOULD BE APPOINTED AS CLASS COUNSEL

Pursuant to Rule 23, a court certifying a class "must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In doing so, the Court must consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv); (B)-(E).

Here, Class Counsel have thoroughly investigated and identified the claims at issue in the lawsuit. As set forth above, Class Counsel have extensive experience handling class actions and complex litigation, including other matters under BIPA. [Exhibit I]. Class Counsel also possess the requisite knowledge and resources to adequately represent the Settlement Class Members in connection with this Settlement Agreement. The Court should therefore appoint John J. Driscoll; The Driscoll Firm, P.C.; and The Driscoll Firm, LLC as Class Counsel.

## VI.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

Plaintiffs incorporate by reference as if fully set forth herein Section IV, *supra*.

Rule 23(e) requires that a court make two findings before granting preliminary approval of a proposed class action settlement:

> (B) *Grounds for a Decision to Give Notice*. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:
>
> (i) approve the proposal under Rule 23(e)(2); and
>
> (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

In determining whether a proposed class action settlement may be approved under Rule 23(e)(2), the Court must consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D).  The fact that the parties have reached a settlement is a relevant consideration in the class-certification analysis. *Stull*, 2015 WL 13631334, at *2, citing *Smith v. Spring Communications Co.,* 387 F.3d 612, 614 (7th Cir. 2004).

"In considering these factors, a court must bear in mind that '[f]ederal courts naturally favor the settlement of class action litigation.'" *Chambers v. Together Credit Union*, 2021 U.S. Dist. LEXIS 92150, *5 (S.D. Ill. May 14, 2021) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)).

Here, as set forth above, Plaintiffs have shown that the Court will likely be able to certify the Class for purposes of judgment on the proposal. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). Moreover, because Plaintiffs and Class Counsel have adequately represented the Settlement Class; the Agreement was negotiated at arm's-length with the guidance of an experienced mediator; it provides substantial monetary relief and avoids the risks associated with continued litigation, especially considering the dismal financial status of the Maestro Defendants and the very limited eroding insurance policy with which to pay on all claims; and treats Settlement Class Members equitably relative to each other, the Rule 23(e)(2) factors are met. Accordingly, preliminary approval of the Agreement is warranted.

### A.    The Class Representatives and Class Counsel have adequately represented the Settlement Class

As set forth above, the named Plaintiffs and Class Counsel have adequately represented the

Settlement Class and thus satisfy Rule 23(e)(2)(A). The "focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. Courts "may consider a number of factors when evaluating the adequacy of representation, including the 'nature and amount of discovery,' which 'may indicate whether counsel negotiating on behalf of the class had an adequate information base.'" Fed. R. Civ. P. 23(e)(2)(A) Advisory Committee's Notes to 2018 amendment. In *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018), in finding that adequacy of representation under Rule 23(e)(2)(A) favored approval, the court relied on the "significant time and resources in this litigation" that class counsel invested, that they "litigated this case intensively," and their extensive experience in class action litigation. *Id.* at *13.

Here, the performance of the three named Plaintiffs and Class Counsel have been more than adequate, and the extensive time and resources they have invested, including relating to written and deposition discovery, have ensured that Class Counsel had an "adequate information base" in negotiating this Settlement. *See* Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. The three named Plaintiffs, as the Class Representatives, have stayed involved in nearly every aspect of the case, including assisting their attorneys to investigate the BIPA claims, searching for and providing documents, assisting in responding to written discovery, conferring with counsel throughout the litigation, preparing for and presenting themselves at their respective depositions, and reviewing and approving the Settlement Agreement before signing it. At each step, Plaintiffs have continued to act in the best interests of the Settlement Class and have adequately represented them.

Furthermore, as addressed above, Class Counsel have engaged in extensive discovery as to the Maestro Defendants and SPAN, serving sets of Interrogatories; Requests for Production of Documents; and Requests for Admissions. Class counsel have conducted multiple meet and confer conferences and exchanged multiple discovery-related correspondence with the Maestro Defendants' counsel. They received and

analyzed hundreds of pages of documents from Maestro/Symphony and third parties acting on their behalf, both when the case was in state court and in this Court, which they relied upon in negotiating the Settlement Agreement. Finally, Class Counsel engaged the services of a preeminent computer science consulting expert who advised them on many of the nuances and intricacies of collecting, capturing, and/or storing biometric identifiers under BIPA.

Thus, Class Counsel have worked diligently to obtain the required information base to negotiate this Settlement Agreement. The significant work they put into investigation and discovery to obtain this information base, along with their extensive experience in BIPA class actions, supports a finding that adequacy of representation under Rule 23(e)(2)(A) is satisfied.

### B.    The Settlement was negotiated at arm's length under the supervision of an experienced mediator

Initially, the fact that the settlement was reached with the assistance of a respected and experienced third-party mediator, the Honorable Wayne Anderson (Ret.), supports a finding that the settlement was negotiated at arm's length and that there was nothing improper in connection with the negotiations. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (relying on fact that "settlement was proposed by an experienced third-party mediator after an arm's-length negotiation"); *Snyder v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 167471, *12 (N.D. Ill. Sep. 28, 2018) (relying on the parties' use of independent mediators and "no indication of any side deals"). Here, the parties agreed in principle to the terms of a settlement proposed by Judge Andersen that were subsequently memorialized in the Term Sheet and Settlement and Release Agreement, with no side deals. [Exhibits A; F].

Courts also look to whether the settlement came about after the parties have vigorously litigated the case, including through discovery and motion practice. *See Wong*, 773 F.3d at 864 ("the parties contentiously litigated a motion to dismiss"); *Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS

115729, *42 (N.D. Ill. Aug. 29, 2016) (parties "vigorously defended their positions throughout the

litigation . . . and engaged in discovery"); *Young v. Rolling in the Dough, Inc.*, 2020 U.S. Dist. LEXIS

35941, *9 (N.D. Ill. Feb. 26, 2020) (settlement agreed to after extensive discovery). That is certainly the

case here. As set forth above, and since the original complaint was filed in December 2017, the parties

engaged in significant discovery and extensive motion practice, including extensive motion practice on the

motions to dismiss in both state and federal courts, and including two journeys to the Fifth District

Appellate Court when the case was still in state court. Additionally, there is no evidence of (nor was there

any) collusion or unfairness that would support a finding that this factor is not satisfied. *See Wright*, 2016

U.S. Dist. LEXIS 115729 at *42 (relying on the fact that nothing in the record showed any sort of

unfairness or collusion). Furthermore, the Settlement Agreement does not provide for the reversion of

unclaimed amounts. *See Snyder*, 2018 U.S. Dist. LEXIS 167471 at *12 (relying on the lack of any

provision in which unclaimed amounts revert to the defendant in finding this factor satisfied).

Accordingly, the Settlement Agreement was the result of arms-length negotiations between the

parties, and Rule 23(e)(2)(B) supports granting preliminary approval.

### C.    The relief provided to Settlement Class Members is adequate

Each of the Rule 23(e)(2)(C) subfactors supports a finding that the relief provided to the

Settlement Class is adequate.

### 1.    The costs, risks, and delay of trial and appeal

The relief provided to the Settlement Class Members, considering the costs, risks, and delay of

trial and appeal, supports the granting of preliminary approval. *See* Rule 23(e)(2)(C)(i). Based on the

Settlement Amount of $2,800,000.00, which is restricted because of the impending divestiture and

closure of all SPAN facilities and the availability of but one eroding insurance policy with which to fund

it, this Settlement provides immediate relief for the Settlement Class. Under this Settlement, even after

deducting for expected attorney's fees, costs, and service awards, and assuming *all* 12,141 Class

Members participate, each Settlement Class Member would be expected to receive a payment of approximately $128. This amount is in-line with other BIPA settlements between employees and employers who use biometric fingerprinting and/or hand scanning equipment, and, in contrast to many, provides for automatic payments to the Settlement Class rather than requiring a claims-process for all. *See, e.g.*, *Bryant v. Compass Grp. USA, Inc.*, No. 19-cv-06622 (N.D. Ill.), ECF Dkt. No. 123 at 1, 9 ($6.8 million fund for 66,159 class members, amounting to approximately $69 per class member after deducting for fees, costs, and service award; actual payment of $413.75 after "impressive" 16.97% claims rate); *Neals v. Partech, Inc.* No. 1:19-cv- 05660 (N.D. Ill.), ECF Dkt. No. 136 at 1, 7, 8 ($790,000 fund for 3,560 class members, amounting to approximately $143 per class member after deducting for 35% fees and $5,000 Service Award; actual payment of $650 after receiving a "remarkable 20.5% claims rate"); *Figueroa v. Kronos Inc.*, No. 19-cv-01306 (N.D. Ill.), ECF Dkt. No. 377 at 1, 7, 8 ($15,276,227 fund for 81,910 class members, amounting to approximately $124 per class member after deducting for fees and service award; actual payment of $445 after receiving "excellent" claims rate of 26.78%); *Prelipceanu v. Jumio* (Cook County) (settlement fund of $7 million for 260,000 class members, amounting to approximately $27 per class member; actual payment of $275 per class member after claims process). Here, there are approximately 12,141 Settlement Class Members who qualify for relief without the need to file a claim.

Moreover, the Settlement "allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation," which would likely have included a contested class certification proceeding "followed by an inevitable appeal" under Rule 23(f) and a motion for summary judgment. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Furthermore, an appeal would likely have followed any trial in the case.

Although Plaintiffs feel strongly about their ability to successfully litigate their case absent a settlement, as this Court is aware from having adjudicated this case for several years, there are several

contested issues on which Plaintiffs would have to prevail were litigation to continue. Throughout discovery the Maestro Defendants have denied that they possessed, collected, captured, and/or otherwise obtained biometric identifiers of any Settlement Class Members, and have argued that any such data was possessed, collected, captured, and/or otherwise obtained by others, if there were any biometric devices used at all. They have also asserted 27 affirmative defenses. [Doc. No. 130, pp. 154-161]. Thus, as the court stated in *Hale* when addressing the vigorous defenses that the defendant had raised throughout the case, "[r]egardless of the outcome of these proceedings, there can be no question that they would have added significant costs and delay. Moreover, absent this proposed resolution, and considering the strong likelihood of post-trial motions and appeals, the parties were unlikely to achieve a final disposition any time soon." 2018 U.S. Dist. LEXIS 210368 at *17. It therefore found that this factor "strongly favor[ed] final approval of the Settlement." *Id*.

Furthermore, were litigation to continue, it is expected that the Maestro Defendants would almost certainly oppose Plaintiffs' motion for class certification. In its Answer to the Second Amended Complaint, the Maestro/Symphony Defendants continually denied "that Plaintiffs can meet the requirements to certify a class" and that "Defendants deny that they violated BIPA." [Doc. 130, pp. 2; 4; 15]. Although Plaintiffs believe this case is well positioned for class certification based on the uniform conduct as to all Settlement Class Members, proceeding with a contested motion for class certification is certainly not without its risks.

Further supporting the adequacy of this Settlement Agreement is the size of the Settlement Fund in relation to the Maestro Defendants' financial condition. The Settlement Fund of $2,800,000.00 is funded singularly by insurance proceeds from an applicable insurance policy issued by Federal Insurance Company, part of the Chubb Group of Insurance Companies, which will be further eroded if this litigation continues. The Plaintiffs have also carefully investigated the financial solvency and "going concern" status of the facilities which comprise or comprised the Symphony Post Acute Network or SPAN and

have determined that Maestro Consulting Services and the SPAN are in fact winding down business operations through various divestitures and closures. Based on this investigation, which has been confirmed in writing by the Maestro Defendants' counsel in various Joint Status Reports submitted to this Court, almost the entire SPAN has ceased ongoing business operations, and the SPAN enterprise is in the process of "winding down" all business operations. "Defendants' eroding insurance policy [is] the only remaining asset in light of Defendants' wind down, divestitures, and closures." [Docs. 135; 136; 136-1; and 154]. This type of information can be considered by this Court. *See Swift v. Direct Buy, Inc.*, 2013 U.S. Dist. LEXIS 152618, *26-27 (N.D. Ind. Oct. 24, 2013) ("The financial condition of the defendant in class action settlement is a legitimate—if not entirely pragmatic—consideration, as the Eighth Circuit has held."). Although Plaintiffs could theoretically litigate the case for several more years and secure a higher judgment following trial, that is very unlikely to leave Settlement Class Members in a better position, given the likelihood that the limited insurance proceeds would be totally depleted by that time and that just as likely the Maestro Defendants would be unable to pay such a judgment.

Nor must a settlement "provide the class with the maximum possible damages in order to be reasonable." *Charvat v. Valente*, 2019 U.S. Dist. LEXIS 187225, *19-21 (N.D. Ill. Oct. 28, 2019) (approving settlement despite payout to individual class members not being near the statutory maximum under the TCPA; "the inability to pay every injured plaintiff the absolute statutory maximum does not reflect a failure of the settlement itself"); *see also Hale*, 2018 U.S. Dist. LEXIS 210368 at *18-19 ("It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (quoting *Van Lith v. iHeartMedia + Entm't, Inc.*, 2017 U.S. Dist. LEXIS 162838, *12 (E.D. Cal. Sept. 29, 2017)) (citations omitted). Thus, that the Settlement does not provide for a recovery in which each Settlement Class Member can obtain the maximum statutory recovery certainly does not mean the Settlement is not adequate.

31

Accordingly, based on the substantial and immediate relief available to Settlement Class Members under this Settlement Agreement compared to the costs, risks, and delay of further litigation, preliminary approval is appropriate.

### 2.    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims

The method of distributing relief to the class provided by the Settlement Agreement, including its method of processing class-member claims, also supports granting preliminary approval. *See* Rule 23(e)(2)(C)(ii). The Agreement and Notice provide that the persons identified as Settlement Class Members need not take *any* action to qualify for and receive their pro rata shares of the Net Settlement Fund, which is the Gross Settlement Fund less attorney's fees and costs, administration costs, and service awards, automatically, by direct checks, without having to submit a claim form or otherwise "opt in" to the Class. [Exhibit A, p. 13].

Direct payment without the need to submit a claim has been deemed the "best and most effective method of ensuring Class members receive the funds they are due." *See Chambers*, 2021 U.S. Dist. LEXIS 92150 at *6-7 ("The method of distributing the Net Settlement Fund is by direct payment, which is the best and most effective method of ensuring Class members receive the funds they are due and requires no claims to be submitted. Fed. R. Civ. P. 23(e)(2)(C)(ii)."). *See Hale*, 2018 U.S. Dist. LEXIS 210368 at *19-20 ("Under the terms of the proposed Settlement, settlement funds will be distributed automatically, with no need for a claim form, to the approximately 1.43 million class members whose contact information is known to the parties…").

### 3.    The terms of any proposed award of attorney's fees, including timing of payment

This factor analyzes the adequacy of the relief considering "the terms of any proposed award of attorney's fees, including the timing of the payment." *See* Rule 23(e)(2)(C)(iii). If this Court grants preliminary approval of the Settlement Agreement, and in conjunction with the filing of a motion for

final approval, the undersigned counsel will move the Court for a Fee Award of up to 39% of the Gross Settlement Fund plus reasonable litigation-related expenses, subject to the Court's approval. [Exhibit A, p. 14; Exhibit F, p. 5; Exhibit G, p. 5]. [NOTE: Need SDIL caselaw substantiating up to 39%].

As will be set forth further in Plaintiff's petition for attorney fees, one-third of a common fund as an attorney's fee award in a class settlement is reasonable and does not undermine the adequacy of the relief. *See Chambers*, 2021 U.S. Dist. LEXIS 92151 at *4 (finding attorney's fees of one-third of the settlement fund reasonable; "As numerous courts have recognized, '[t]he normal rate of compensation in the market [is] 33.33% of the common fund recovered' because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment.'") (quoting *George v. Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS 166816, *8 (N.D. Ill. June 26, 2012)). Moreover, "[t]his District is no exception and commonly awards a one-third fee in class action cases." *Chambers*, 2021 U.S. Dist. LEXIS 92151 at *4 (collecting cases). Thus, the attorneys' fee award in the Settlement supports preliminary approval.

### 4.        No agreements required to be identified under Rule 23(e)(3)

There are no agreements besides the Settlement Agreement made in connection with this proposed settlement. This factor is thus neutral. *See Hale*, 2018 U.S. Dist. LEXIS 210368 at *20. Accordingly, the Rule 23(e)(2)(C) factors support a finding that the relief provided to the Settlement Class through this proposed Settlement is adequate.

### D.        The proposed Settlement treats class members equitably relative to each other

The claims of the Settlement Class Members are nearly identical, as the Maestro Defendants allegedly violated BIPA in the same manner as to all such Class Members. Under the Settlement Agreement, the Net Settlement Fund will be divided equally among the Settlement Class Members who do not exclude themselves from the Settlement Class.  Settlement Class Members will receive their *pro*

*rata* shares of the Settlement Fund automatically, by direct checks, without having to submit a claim form or otherwise "opt in" to the Settlement Class. [Exhibit A, p. 13]. In *T.K. v. Bytedance Tech. Co., Ltd.*, 2022 U.S. Dist. LEXIS 65322 (N.D. Ill. Mar. 25, 2022), the court stated that "[g]enerally, a settlement that provides for pro rata shares to each class member" will meet the standard of treating class members equitably relative to each other. *Id.* at *42. That is true here. *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "characteristically assured by straightforward pro rata distribution of the limited fund"). Further, each Settlement Class Member will release the same BIPA claims against the Maestro Defendants.

Finally, this subfactor will involve a review of proposed $10,000.00 Service Awards to each of the three named Plaintiffs in this case. Each of them assisted the undersigned counsel in early investigation of facts and circumstances; responded to detailed written discovery; and produced themselves for depositions. In *Bytedance*, the court recognized that "[b]ecause class representatives do more work and take more risks than the average class member, service awards to named class members will generally not 'raise a red flag.'" 2022 U.S. Dist. LEXIS 65322 at *42 (internal quotation omitted). The court added "[w]ithout the involvement of the named Plaintiffs, the other class members would gain nothing," and thus the "gap between the proposed service awards and the average distribution" to class members did not "render treatment of class members inequitable." *Id.* at *43. Here, as set forth above, the three named Plaintiffs' active involvement and work on the case helped lead to the Settlement, and the provision of the requested $10,000 Service Awards to the three named Plaintiffs appropriately reflects that work and is consistent with the equitable treatment of class members.

Accordingly, the Settlement Agreement treats each member of the Settlement Class equitably, and Rule 23(e)(2)(D) supports granting preliminary approval.

## VII.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTIFICATION

Under Rule 23, for any "class proposed to be certified for purposes of settlement under Rule

23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule further provides that such "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. Additionally, the notice must, in plain language, state the nature of the action; the class definition; the class claims, issues, or defenses; that class members may enter an appearance through an attorney; that the court will exclude class members who so request; the time and manner for requesting exclusion; and the binding effect of a class judgment on the class members. *Id*. Moreover, Rule 23(e)(1)(B) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." And "[d]ue process requires that the method of providing notice be reasonably calculated to reach interested parties" although it "does not require that each class member actually receive notice." *Breslow v. Prudential-Bache Props.*, 1995 U.S. Dist. LEXIS 13617, *1 (N.D. Ill. Sep. 13, 1995).

Here, the proposed Notice of Proposed Class Action Settlement Agreement is comprehensive, provides the best notice practicable under the circumstances, and complies with all requirements of Rule 23 and Due Process. [Exhibit G]. Within 21 days after the Court enters the Preliminary Approval Order, the Maestro Defendants must have provided the Settlement Administrator with the last known names, and, if available, addresses, phone numbers, and Social Security numbers of Settlement Class Members. [Exhibit A, pp. 18-19]. In turn, within 14 days after receipt of that information, the Settlement Administrator shall have sent the Court-approved Notice of Proposed Class Action Settlement to each of the known Settlement Class Members by First Class U.S. Mail. Prior to mailing, the Administrator shall run the Class Members' addresses through the U.S. Postal Service's National Change of Address database and mail the Notice using the most current mailing address information.  For any Class Member whose Notice is returned as undeliverable without a forwarding address, the Administrator shall promptly conduct a firm level skip trace and re-send the Notice to the address (if any) determined by the skip trace.

[Exhibit A, pp. 18-19]. Such mailed notice satisfies Rule 23 and Due Process. *See Mullins*, 795 F.3d at 665 ("When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail.").

Accordingly, the proposed Notice is the best practicable notice under the circumstances. *See also* Newberg on Class Actions § 22:91 ("The notice of the Proposed Settlement…need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.  Courts have consistently recognized that due process does not require that every class member receive  actual notice so long as the court reasonably selected a means likely to apprize interested parties."). Furthermore,  the  Notice documents  are  written  in  plain,  easily understood  language  that satisfies the requirements of Rule 23. To the extent this Court disagrees, it may of course modify the language in its discretion.

Finally, to ensure comprehensive notice, each mailed Notice will direct Class Members to a Settlement Website containing links to the Settlement Notice, the Settlement Agreement, the Fee Application, the Claim Form, a page for completing and submitting the Claim Form online, contact information for Class Counsel and the Settlement Administrator, applicable deadlines, and orders of the Court pertaining to the settlement. [Exhibit G]. The mailed Notice sent to everyone also provides email addresses and phone numbers for both Class Counsel and the Settlement Administrator to whom Class Members may send inquiries or receive additional information.

The proposed Notice provides direct notice in the best practicable manner and fully apprises Class Members of their rights, thereby complying with Rule 23 and Due Process. Thus, the Court should approve the proposed Notice Plan. [Exhibit G].

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval and enter the proposed Preliminary Approval Order directing notice to Class Members and scheduling a

final Fairness Hearing, and for such further relief as the Court deems just and proper.


Dated: June 21, 2024                    Respectfully submitted,


                                        John J. Driscoll, IL# 6276464
                                        1311 Avenida Ponce de Leon
                                        Suite 501
                                        San Juan, Puerto Rico 00907
                                        john@jjlegal.com

                                        Paul W. Johnson, IL# 6193774
                                        211 North Broadway
                                        Suite 4050
                                        St. Louis, Missouri 63102
                                        paul@thedriscollfirm.com
                                        *Attorneys for Plaintiffs*