**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAROYA ROBERSON, et al., individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>MAESTRO CONSULTING SERVICES, LLC, Individually and d/b/a SYMPHONY POST ACUTE NETWORK, et al.<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 3:20-cv-895<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**THE DRISCOLL FIRM, P.C.**

Paul W. Johnson #6193774
The Driscoll Firm, PC
211 N. Broadway, Ste 4050
St. Louis, MO 63102
Phone: (314) 932-3232
Fax: (314) 932-3233
paul@thedriscollfirm.com

*Attorney for Plaintiffs*

# **TABLE OF CONTENTS**

I.  INTRODUCTION……………………………………………………………………1

II.  FACTUAL AND PROCEDURAL BACKGROUND…………………………….....3

    A.  SUMMARY OF SETTLEMENT TERMS……………………………………….4

        1.  The Settlement Class…………………………………………………….....4

        2.  The Settlement Amount and Allocation…………………………..………5

        3.  Release………………………………………………………………….….6

        4.  Class Representative Service Awards…………………………………….6

        5.  Attorneys' Fees and Litigation-Related Expenses………….…………...6

        6.  Settlement Administration……………………………………………….7

        7.  Exclusion and Objection Procedures…………………………………….7

    B.  THE NOTICE REQUIREMENTS OF RULE 23(c)(2)(B) WERE MET………7

    C.  THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED…..8

    1.  The Settlement is Fair, Reasonable, and Adequate…………………………….9

        i.  The Settlement is Substantial Under the Circumstances………………10

        ii.  Litigation Through Trial Would be Complex and Costly……………...12

        iii.  Competent Counsel for All Parties Endorse This Agreement………….13

        iv.  Discovery Has Advanced Far Enough to Resolve this Case……………14

    2.  All That Has Happened Since Preliminary Approval Points to Final Approval..15

    D.  CONCLUSION……………………………………………………………………...15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                          **Page(s)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,*
    No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) ....................... 11, 12

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*
    616 F.2d 305, 325 (7th Cir. 1980) .................................................................................. 16

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*
    100 F.3d 1041, 1043 (1st Cir. 1996) ........................................................................... 16, 17

*Donovan v. Estate of Fitzsimmons,*
    778 F.2d 298, 309 (7th Cir. 1985) .................................................................................. 15

*EEOC v. Hiram Walker & Sons, Inc.,*
    768 F.2d 884, 889 (7th Cir. 1985) .................................................................................. 12

*Eubank v. Pella Corp.,*
    753 F.3d 718, 723 (7th Cir. 2014) .................................................................................. 12

*Felzen v. Andreas,*
    134 F.3d 873 (7th Cir. 1998) .......................................................................................... 11

*Seiden v. Nicholson,*
72 F.R.D. 201, 208 (N.D. Ill. 1976) .................................................................................... 15

*Gautreaux v. Pierce,*
690 F.2d 616, 634 (7th Cir. 1982) ...................................................................................... 16

*Goldsmith v. Tech Sols. Co.,*
    No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) .............................. 15

*In re Mexico Money Transfer Litig.,*
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................................................ 14

*Isby v. Bayh,*
    75 F.3d 1191, 1196 (7th Cir. 1996) ................................................................................ 11

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,*
    834 F.2d 677, 682 (7th Cir. 1987) .................................................................................. 14

*McDonald v. Symphony of Bronzeville Park, LLC,*
    Cause No.: 2017-CH-11311, in the Cook County Circuit Court ..................................... 7

*Mirfasihi v. Fleet Mortgage Corp.*,
    356 F.3d 781, 785 (7th Cir. 2004) ................................................................................12

*Newberg of Class Actions ("Newberg")*,
    §11.41 at 11-88 (4th ed. 2002) .....................................................................................16

*Patterson v. Stovall*,
    528 F.2d 108, 114 (7th Cir. 1976) ................................................................................11

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ........................................................................................16

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277, 284 (7th Cir. 2002) ................................................................................15

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ....................................................................13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646, 653 (7th Cir. 2006) ................................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96, 116 (2d Cir. 2005) ...................................................................................11

*Williams v. Quinn*,
    748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) .................................................................... 13

*Young v. Rolling in the Dough, Inc.*,
    No. 1:17-CV-07825, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020) .......................11

**Statutes & Rules**

740 ILCS 14/1 ............................................................................................................................ 4

Rule 23 .....................................................................................................................................15

Plaintiffs, Saroya Roberson, Olabisi Bodunde, and Nicholle Headley, individually and on behalf of a class of individuals (collectively referred to hereinafter as "Class Plaintiffs" or "Class Members"), through their undersigned attorneys, move for Final Approval of Class Action Settlement, and state in support as follows:

## I. INTRODUCTION

Class Plaintiffs, on behalf of all Class Members, present this Unopposed Motion and Memorandum in Support of Final Approval of Class Action Settlement. As is discussed herein, the proposed Settlement Agreement (Dkt. 177-1), already preliminarily approved by this Court, is fair, reasonable, and adequate, and final approval is indicated. (Dkt. 178, p. 2, Sections A and B). This Court has preliminarily approved the Notice of Proposed Class Action Settlement, (Doc. 177-7), and provisionally certified a proposed Settlement Class for settlement purposes only as follows:

> All persons who were non-union persons at the time they used a finger or hand scan timekeeping device at one of the following Symphony Facilities located in Illinois from August 17, 2012 to present but did not execute a release and receive notice pursuant to the Illinois Biometric Information Privacy Act on or before their first date of use, including at the locations identified in paragraph 6(n) of the Settlement Agreement (Doc. 177-1, pp. 8-9; Dkt. 178, p. 2, Section C).

The Class Action Settlement settles claims alleging that Maestro Consulting Services, LLC and various Symphony Post Acute Network facilities ("Defendants") violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, et seq. by: (1) failing to inform individuals in writing that they would be collecting, storing, and using biometric identifiers and data; (2) failing to inform individuals in writing of the specific purpose and length of time for which their biometric identifiers and data would be collected, stored, and used; (3) failing to obtain individuals' written release and/or consent for the collection, use, storage, and dissemination of

1

their biometric data; and (4) failing to develop and adhere to a publicly-available retention schedule and guidelines for permanently destroying individuals' biometric data. (Dkt. 54, ¶¶ 1-43; 48-62; 177, pp. 9-14; 177-1, pp. 10-17).

The Parties' settlement of this action is "fair, reasonable, and adequate" under the governing legal standards and satisfies all criteria for final approval. (Dkt. 178, p. 2, Section C). The Parties respectfully request that this Court: (1) grant Final Approval of the proposed Class Action Settlement and Release Agreement ("Settlement and Release Agreement") previously filed as Dkt. 177-1, including the release of claims as set forth therein; and (2) enter the Proposed Final Approval Order, attached hereto as Exhibit 1.

The Court preliminarily approved the Parties' Settlement and Release Agreement on August 5, 2024, (Dkt.178), including the appointment of Analytics Consulting, LLC ("Analytics") as the Settlement Administrator, (Dkt. 177-1, p. 10), and the Notice of Proposed Class Action Settlement (Dkt. 177-7). Since that time, the Class Members have been notified of the terms of the Settlement, including the monetary relief, the allocation, and their right to object to or opt out of it. Of the 11,638 Class Members for whom Analytics obtained proper addresses, it delivered the Notice to 10,223, or 87.84%, of them. (*See* Exhibit 2, Settlement Administrator Declaration (hereinafter "SAD"), ¶¶ 5-9; *see also* Ex. 2-A to SAD ("Notice of Proposed Class Action Settlement," similar to Dkt. 177-7, but reflects the *actual* Notice sent to the Settlement Class Members).[1]

After September 9, 2024, Analytics established and continues to maintain a toll-free telephone number for Class Members to use if they had any questions concerning the Settlement.

---

[1] The Federal Judicial Center, Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide, at p. 3 (2010) provides that notice reaching at least 70% of the class is "reasonable.").

This included an interactive voice recording for pre-recorded answers to "frequently asked questions" and live call center agents available for such calls during normal business hours. Analytics also established a dedicated website established solely for this settlement administration which gives Class Members access to important dates and deadlines; answers to "frequently asked questions;" and relevant case documents. (SAD, ¶¶ 10-15).

Class Members could opt out of the Settlement or object to the proposed Settlement Agreement by October 24, 2024. According to Analytics, none of the Class Members has opted out of or raised objections to the proposed Settlement Agreement. (SAD, ¶¶ 16-17).

## II.   FACTUAL AND PROCEDURAL BACKGROUND LEADING TO SETTLEMENT

As set forth in greater detail in the Declaration of Class Counsel (hereinafter "DCC") in support of Plaintiffs' Unopposed Motion for Final Approval of Attorneys' Fees, Service Awards, and Administrative Fees, (Dkt. 182), and Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, (Dkt. 177), this protracted litigation has taken a long and winding road. Since this class action lawsuit was filed in the St. Clair County Circuit Court on December 8, 2017, the Parties have: (1) engaged in extensive written discovery in both the state and federal courts, including numerous meet and confer conferences and motion to compel practice; (2) appealed, fully briefed, and argued two separate legal issues to the Illinois Fifth District Court of Appeals; (3) had this case removed to this federal court; (4) fully briefed federal question jurisdiction issues; (5) been stayed for lengthy periods of time pending the outcome of several seminal BIPA appellate decisions; (6) taken the three representative plaintiffs' depositions; and (7) preliminarily settled this matter on February 22, 2024, with the able assistance of JAMS Mediation, Arbitration and ADR Services and the Honorable Wayne Andersen. (DCC, Exhibit A; Dkt. 177, pp. 5-9). Plaintiffs

filed an unopposed Motion for Preliminary Approval of Class Action Settlement on June 26, 2024. (Dkt. 177). The Court granted Plaintiffs' Motion on August 5, 2024. (Dkt. 178).

Simultaneously with the litigating of this case, The Edelson Firm of Chicago, Illinois, was litigating a very similar class action lawsuit against several of the Symphony Post-Acute Network facilities, *McDonald v. Symphony of Bronzeville Park, LLC,* Cause No.: 2017-CH-11311, in the Cook County Circuit Court. When settlement negotiations became advanced in late 2023, The Edelson Firm joined the mediation process with the parties and Retired Judge Wayne R. Andersen of JAMS Mediation, Arbitration and ADR services. The settlement was finalized thereafter. (DCC, ¶¶ 14-17).

### A. SUMMARY OF SETTLEMENT TERMS

#### 1. The Settlement Class

The proposed Settlement Agreement would establish a Settlement Class for settlement purposes only defined as follows:

> All persons who were non-union persons at the time they used a finger or hand scan timekeeping device at one of the following Symphony Facilities located in Illinois from August 17, 2012 to present but did not execute a release and receive notice pursuant to the Illinois Biometric Information Privacy Act on or before their first date of use, including at the locations identified in paragraph 6(n) of the Settlement Agreement.

(Dkt. 177-1, p. 9; 178, p. 2, Section C).

The Class List compiled and provided by Defendants contained records for 12,141 possible Settlement Class Members. As referenced above, Analytics mailed the Notice of Class Action Settlement to 10,223 out of 11,638 Class Members for whom it had or obtained appropriate addresses, or 87.84%. Those Class Members were not required to file any claim and will automatically receive a settlement payment. There were no requests for exclusions and no objections to the Settlement

4

Agreement. (SAD, ¶¶ 5-9; (Dkt. 177-1, p. 11).

### 2. The Settlement Amount and Allocation

The Settlement Agreement establishes a Gross Settlement Amount of $2,800,000.00. (Dkt. No. 177-1, pp. 5; 11). The Settlement Administrator shall establish a Qualified Settlement Fund ("QSF") pursuant to Section 1.468B-1, *et seq.* of the Treasury Regulations. This QSF will be established as of the Effective Date of the Settlement Agreement. The Gross Settlement Amount, less any Attorneys' Fee Award; Service Awards; and approved Administrative Expenses, is the Net Settlement Fund. For the first-round *pro rata* distribution payments, the Net Settlement Fund shall be divided equally among the Settlement Class Members who do not exclude themselves from or opt out of the Settlement Class. Settlement Class Members shall receive their *pro rata* shares of the Settlement Fund automatically, by direct checks, without having to submit a claim form or otherwise "opt in" to the Settlement Class. The first-round payment shall be issued within forty-five (45) days following final approval of the settlement by the Court. (Dkt. No. 177-1, pp. 12-13; 16].

Following expiration of the first-round payment (75 days after issuance), a second-round *pro rata* distribution in an amount equal to or less than the first payment shall be issued to the Settlement Class Members who timely cashed their first-round checks. (Dkt. 177-1, p. 16). Following expiration of the second payment (75 days after issuance), any remaining amount of the Net Settlement Fund shall be distributed to a *cy pres* that is agreed upon by the Parties within 90 days thereafter. (Dkt. No. 177-1, pp. 12-13; 16].

### 3. Release

In exchange for the relief described above, Settlement Class Members who do not exclude themselves will provide Defendants and the other Released Parties a full release of all Released

Claims, including BIPA claims, arising out of, related to, or connected with the alleged scan, capture, collection, storage, possession, transmission, dissemination, disclosure, and/or other use of biometric identifiers and/or biometric information in connection with biometric timekeeping systems used by Defendants. (Dkt. 177-1, pp. 4-10; 16-17).

### 4. Class Representative Service Awards

Class Counsel has moved for, and the Court has preliminarily approved, the designation of the three named Plaintiffs as Class Representatives, and to award each a Service Award in the amount of $10,000. (DCC, ¶¶ 24-26; Dkt. 177, pp. 12; 15-16; 34; 178, p. 2, Sections D and F).

### 5. Attorneys' Fees and Litigation-Related Expenses

Class Counsel preliminarily requested, and the Court preliminarily approved, an award of attorneys' fees of 39% of the Gross Settlement amount of $2,800,000.00. As Class Counsel explained in the DCC, however, in preparation of the instant Motion and review of the case law as well as a review of the detailed time records submitted by The Edelson Firm, as well as Chatham & Baricevic's involvement in the many years of this litigation, Class Counsel has slightly modified its attorneys' fee request to seek 40% of the common fund procured for the class in light of those facts and law, respectfully, which is consistent with the original contracts of representation. (DCC, ¶¶ 6-8; 14-22).

Class Counsel also preliminarily requested, and the Court preliminarily approved the recoupment of litigation expenses. Those litigation-related expenses total $68,186.85. (*See*, DCC, ¶ 23; Exhibit B thereto).

### 6. Settlement Administration

The Parties retained Analytics Consulting, LLC ("Analytics"), an experienced class action claims administrator, as the Settlement Administrator. (Dkt. 177-1, p. 10; 177-7; SAD, ¶¶

6

1-4). Analytics ultimately sent the approved Notice of Class Action Settlement Agreement to 87.84% of the Settlement Class. (*Id.*, ¶ 9).

Analytics is seeking $49,190.00 in administrative fees, which Class Counsel believes is reasonable. (SAD, ¶ 18; DCC, ¶ 19).

### 7. Exclusion and Objection Procedures

The Class Notice advised the Class Members that they could submit a request for exclusion from or objection to the Settlement Agreement postmarked by October 24, 2024. (SAD, ¶¶ 16-17). Analytics confirmed there were no requests for exclusions from the Settlement Class or objections to the Settlement Agreement. (*Id.*, ¶¶ 16-17).

### B. THE NOTICE REQUIREMENTS OF RULE 23(c)(2)(B) HAVE BEEN SATISFIED

Under Rule 23(c)(2)(B), notice must provide:

> [T]he best notice that is practicable under circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgement on members under Rule 23(c)(3).

As set forth above and demonstrated by the thoroughness of the Notice and the successful efforts to provide the Notice and online access to as many Class Members as possible, the Parties' effort to effectuate notice by mail to the Class Members meets the requirements of Rule 23(c)(2)(B). (*See* SAD, ¶¶ 5-9 and Exhibit A thereto, the actual mailed Notice).

### C. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFFS' BIPA CLAIMS

A proposed class action settlement may be finally approved if, after allowing absent class members an opportunity to opt out of the class, to object to the settlement, and to participate in the final approval hearing, the Court finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Having already preliminarily found that the Settlement Agreement is "fair, reasonable, and adequate," (Dkt. 178), nothing has occurred since the entry of the Court's Order to change or alter that conclusion in any way. In fact, just the opposite is true. As mentioned above, there were no requests for exclusions from or objections to the Settlement Agreement; this is an unopposed Motion; and 87.84% of Class Members for whom the Settlement Administrator found an address received the Notice of Class Action Settlement and Release Agreement. (*See* Exhibit 2, SAD, ¶¶ 5-9; 16-17 and Exhibit 2-A).

A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012), citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). "In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Young v. Rolling in the Dough, Inc.*, No. 1:17-CV-07825, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020). As set forth in detail below, the proposed settlement is fair, reasonable, and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of BIPA. Accordingly, it should be approved.

1. **The Settlement is Fair, Reasonable, and Adequate**

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

    i.    **The Settlement Amount is Substantial Considering the Circumstances of This Case**

The Settlement is substantial considering that Defendants' agreement to settle this case for $2,800,000.00 includes *all* available assets of the Defendants. Maestro and the Symphony Post-Acute Network facilities once owned by Defendants are going into divesture and closure

proceedings, and the $2,800,000 in "eroding[2]" insurance coverage is the only available asset with which to fund this Settlement. (DCC, ¶ 13; Dkt. 146). All Settlement Class Members who were mailed the Notice of Class Action Settlement (10,223 Class Members) are guaranteed an equal share of the net Settlement Fund. After deducting attorneys' fees and costs, settlement administration expenses, and service awards to the Class Representatives, the Settlement Payment amounts to approximately $108.84 for each Class Member.

In evaluating the strength of a plaintiff's case on the merits balanced against the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200. Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. While Plaintiffs believe they would prevail on the merits of all their BIPA claims, the financial restrictions temper any enthusiasm

---

[2] It is Class Counsel's understanding that Defendants' attorneys' fees and litigation expenses are also being funded by the singular insurance policy which is funding the Settlement Agreement, and thus *any* legal activity on this matter further erodes bottom-line payouts to the Settlement Class. (DCC, ¶ 13).

10

to go forward. Beyond the obvious financial restrictions on ultimate financial recovery, Plaintiffs would have to overcome Defendant's many anticipated defenses. If the Parties were to proceed with litigation, Plaintiffs would be required to prevail on class certification and on motions for summary judgment, all of which would be highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Settlement Class Members to receive significant payments now, instead of years from now or never. *Id*. at 582.

It is an unavoidable fact that BIPA cases are largely cases of first impression, and the risks and delays that would necessarily accompany briefing the arguments in both the trial and appellate courts were considered here. This Settlement Agreement—providing monetary relief without delay and without further erosion of the singular insurance policy funding it—is highly beneficial for the Settlement Class. When considering the potential hurdles faced in obtaining recovery through continued litigation juxtaposed with the already eroding "cap" on ultimate financial recovery even if successful, the Class Action Settlement Agreement is well deserving of this Court's final approval. Considering the "cap" on ultimate possible recovery and the continuing eroding nature of the source of the settlement funding, the Class Action Settlement Agreement provides guaranteed monetary benefits now. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by

the beneficiaries were totally inadequate").

### ii. Litigation Through Trial and Appeals Would Be Complex, Costly, and Long

The second factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement, which also weighs in favor of final approval. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000). "As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). Here, the Settlement allows Settlement Class Members to receive immediate relief, avoiding lengthy and costly additional litigation which would in short order deplete all available money to fund it.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). What lies ahead would be years of litigation at every phase of this case. Although Class Counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled, as demonstrated above.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits.

If litigation were to continue, extensive class discovery would be required to establish liability and damages, resulting in numerous depositions, a fully briefed motion for Rule 23 class certification, potential decertification proceedings, and summary judgment practice on liability—all of which would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. On the other hand, "[s]ettlement allows the class to avoid inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. Again, although Plaintiffs believe in the strength of their claims—a risk that Defendants appreciated considering the Settlement it agreed to—further litigation poses risks on both sides. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. Accordingly, this factor weighs in favor of final approval.

### iii. Competent Counsel for All Parties Endorse This Agreement

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980)); *see also Isby*, 75 F.3d at 1200. However, they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, there was absolutely no collusion here. *See Isby*, 75 F.3d at 1200. Once the stay was lifted and following the completion of written discovery the representative plaintiffs' depositions, the Parties exchanged pre-mediation submissions, participated in mediation with retired Judge Wayne Andersen, and continued arms-length negotiations with the assistance of Judge Andersen throughout the following months. (*See* DCC and Exhibit A thereto). In short, it took the Parties

considerable effort to reach the detailed terms of this Settlement now before the Court. (*See id.*)

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." *Newberg of Class Actions ("Newberg")*, Alba Conte & Herbert B. Newbert, §11.41 at 11-88 (4th ed. 2002); *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions, particularly BIPA class actions, and are familiar with the strengths and weaknesses of the claims and defenses. (DCC, ¶¶ 1-17). Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel could make, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement. (*Id*. at ¶¶ 11-14 and Exhibit A thereto). Simply put, Class Counsel believes that the Settlement is in the best interests of the Settlement Class. And a recovery for the Settlement Class now is preferable to years of litigation and inevitable appeals with no guarantee of recovery, given the eroding nature of the only available asset with which to fund the settlement, the insurance policy. This factor therefore weighs strongly in favor of final approval.

    **iv.**     **Discovery Has Advanced Far Enough to Allow the Parties to Resolve This Case**

The litigation period of this case involved extensive research, analysis, investigation, the completion of written requests for document production, interrogatories, and requests for admissions, the taking of depositions of the representative (and now Class) Plaintiffs, and a mediation process which continued for months. (DCC, ¶¶ 11-18 and Exhibit A thereto). The litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the Settlement. Indeed, further depositions, class certification, further dispositive motion practice,

and trial preparation were the immediate tasks at hand. Given the significant amount of time and resources spent by the Parties advancing the lawsuit, this factor favors Final Approval.

### 2. Everything That Happened Since the Court's Preliminary Approval Order of August 5, 2024, Points to an Appropriate Final Approval Order

Since the Court's Preliminary Approval Order of August 5, 2024, the Parties' approved Settlement Administrator, Analytics, has timely and successfully mailed out the approved Notice of Proposed Class Action Settlement to 10,223 Settlement Class Members, or 88% if the Settlement Class (SAD, ¶ 9). There were no opt outs and no objections. (SAD, ¶¶ 16-17). Analytics has been discharging its duties as the Settlement Administrator efficiently and effectively pursuant to the Class Action Settlement and Release Agreement, and all without a hitch. (DCC, ¶¶ 19-20).

### D. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Final Approval of Class Action Settlement, and enter the Proposed Final Approval Order, attached as Exhibit 1.

Dated: November 6, 2024.

                                            */s/ Paul W. Johnson*
                                            Paul W. Johnson #6193774
                                            The Driscoll Firm, PC
                                            211 N. Broadway, Ste 4050
                                            St. Louis, MO 63102
                                            Phone: (314) 932-3232
                                            Fax: (314) 932-3233
                                            paul@thedriscollfirm.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of this document was filed on this 6th day of November 2024 and that service was made on parties of record through its e-filing service.

*/s/ Tiffany L. Kelly*